MORGAN, LEWIS & BOCKIUS LLP
(A Pennsylvania Limited Liability Partnership)
502 Carnegie Center
Princeton, New Jersey 08540-7814
Richard G. Rosenblatt
Joseph A. Nuccio
Phone: (609) 919-6600
Fax: (609) 919-6701
*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIANE VACCARO,<br><br>Plaintiff,<br>v.<br><br>AMAZON.COM.DEDC, LLC,<br><br>Defendant. | Civil Action No. 3:18-11852 (FLW) (TJB)<br><br>**Oral Argument Requested**<br><br><br>**Electronically Filed**<br><br><br>**Motion Day: December 16, 2019** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF'S FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ........................................................................1

II.    STATEMENT OF ALLEGED FACTS ........................................3

III.   ARGUMENT..............................................................................7

    A.     The Applicable Legal Standard..........................................7

    B.     The New Jersey Wage and Hour Law Follows And Is
          Interpreted Consistently With Federal Law. .......................9

    C.     Plaintiff's Claims Fail Because Passing Through Security
          Screening Is Not Work She Was Hired To Perform. .........13

    D.     Plaintiff's Claims Fail Because Passing Through Security
          Screening Involves No Exertion. .......................................20

    E.     Plaintiff's Second Cause of Action For Alleged Unpaid Meal
          Time Also Fails Under The "Predominant Benefit" Test. ................24

IV.    CONCLUSION..........................................................................26

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<small>CASES</small>

*Abarca v. KC Consulting Group*,
 2018 WL 2215516 (D.N.J. May 14, 2018).......................................................10

*Adair v. ConAgra Foods, Inc.*,
 728 F.3d 849 (8th Cir. 2013) .........................................................................15

*Albanese v. Bergen County, New Jersey*,
 991 F. Supp. 410 (D.N.J. 1998) ......................................................................21

*Am. Trucking Ass'ns v. Smith*,
 496 U.S. 167 (1990)........................................................................................22

*Anderson v. Mt. Clemens Pottery Co.*,
 328 U.S. 680 (1946)..................................................................................13, 21

*Armour & Co. v. Wantock*,
 323 U.S. 126 (1944)........................................................................................21

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).....................................................................................8, 9

*Babcock v. Butler County*,
 806 F.3d 153 (3d Cir. 2015) .............................................................21, 24, 26

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)..........................................................................................8

*Brown v. Apothaker & Assocs., P.C.*,
 2018 WL 1605148 (D.N.J. Apr. 3, 2018)........................................................10

*Cannon v. Vineland Hous. Auth.*,
 627 F. Supp. 2d 171 (D.N.J. 2008)..................................................................10

*Cetel v. Kirwan Fin. Group, Inc.*,
 460 F.3d 494 (3d Cir. 2006) ...........................................................................10

*Clark v. Bally's Park Place, Inc.*,
 298 F.R.D. 188 (D.N.J. 2014).........................................................................24

*Crisostomo v. Exclusive Detailing, Inc.*,
 2010 WL 2640183 (D.N.J. June 28, 2010).......................................................11

# TABLE OF AUTHORITIES

**Page(s)**

*De Ascencio v. Tyson Foods, Inc.*,
500 F.3d 361 (3d Cir. 2007) ...............................................................24

*Garcia v. Freedom Mortg. Corp.*,
790 F. Supp. 2d 283 (D.N.J. 2011) ....................................................11

*GATX Terminals Corp. v. New Jersey Dep't of Envtl. Protection*,
86 N.J. 46 (1981) .................................................................................9

*Hishon v. King & Spalding*,
467 U.S. 69 (1984).............................................................................7, 8

*IBP, Inc. v. Alvarez*,
546 U.S. 21 (2005)..............................................................................14

*In re: Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act
(FLSA) and Wage and Hour Litigation*,
2016 WL 1268296 (Mar. 31, 2016),
*aff'd on other grounds*, 852 F.3d 601 (6th Cir. 2017)........................22

*Integrity Staffing Solutions, Inc. v. Busk*,
135 S.Ct. 513 (2014)....................................................................passim

*Interchange State Bank v. Veglia*,
286 N.J. Super. 164, 668 A.2d 465 (N.J. Super. App. Div. 1995) .....10

*Joseph v. Caesar's Entertainment Corp.*,
2011 WL 2975433 (D.N.J. July 21, 2011) .........................................10

*Karanjawala v. Associated Humane Soc's, Inc.*,
2010 WL 4025911 (N.J. App. Div. Aug. 20, 2010) .....................11, 16

*Marx v. Friendly Ice Cream Corp.*,
380 N.J. Super. 302 (App. Div. Aug. 31, 2005).................................10

*Nicholl-Kenner v. Lawrenceville Urology, P.A.*,
2012 WL 1898615 (D.N.J. May 23, 2012).........................................11

*Nieves v. Top Notch Granite & Marble LLC*,
2011 WL 2937352 (D.N.J. July 19, 2011) .........................................10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Reich v. IBP, Inc.*,
38 F.3d 1123 (10th Cir. 1994) ...........................................................................23

*Reich v. N.Y.C. Transit Auth.*,
45 F.3d 646 (2d Cir. 1995) .........................................................................14, 23

*Reinhold v. U.S. Post Office*,
250 F. App'x 465 (3d Cir. 2007) ........................................................................7

*Shalala v. Ill. Council on Long Term Care, Inc.*,
529 U.S. 1 (2000)................................................................................................22

*State v. Ingram*,
230 N.J. 190 (2017) ..............................................................................................9

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,
321 U.S. 590 (1944)............................................................................................21

*Tilbury v. Aames Home Loan*,
199 F. App'x 122 (3d Cir. 2006) .........................................................................9

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016).......................................................................................14

*Usery v. Allegheny County Institution Dist.*,
544 F.2d 148 (3d Cir. 1976) ..............................................................................17

*Vance v. Amazon.com, Inc.*,
852 F.3d 601 (6th Cir. 2017) .......................................................................19, 20

*Wang v. Chapei LLC*,
2019 WL 3281617 (D.N.J. July 19, 2019) ........................................................10

*Young v. Speziale*,
2010 WL 2326541 (D.N.J. June 7, 2010)............................................................7

*Zahl v. New Jersey Department of Law and Public Safety*,
2009 WL 806540 (D.N.J. Mar. 27, 2009) ...........................................................9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**STATUTES**

Fair Labor Standards Act ("FLSA")
    29 U.S.C. §201 et seq. ...................................................................passim

29 U.S.C. §251 et seq.................................................................13, 14, 15

New Jersey Wage and Hour Law ("NJWHL")
    N.J.S.A. 34:11-56a et seq. ...........................................................passim

**OTHER AUTHORITIES**

29 C.F.R. §§ 553.221(b), (c) and (d) .......................................................16

29 C.F.R. § 785.11 ...................................................................................12

29 C.F.R. §§ 785.14-17 ...........................................................................12

29 C.F.R. § 785.19(b) ..............................................................................25

29 C.F.R. § 785.48 ...................................................................................19

29 C.F.R. § 788.223 .................................................................................16

29 C.F.R. § 790.5(a) .................................................................................15

Federal Rule of Civil Procedure 12(b)(6) ................................................7

Federal Rule of Civil Procedure 12(c)..................................................1, 7

N.J.A.C. 12:56-2.1 ...................................................................................12

N.J.A.C. 12:56-5.2 .......................................................................15, 16, 17

N.J.A.C. 12:56-5.6 ..............................................................12, 16, 17, 23

N.J.A.C. 12:56-5.8 ...................................................................................19

Defendant Amazon.com.dedc, LLC ("Amazon" or "Defendant") submits this Memorandum of Law in Support of its Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), for dismissal with prejudice of the First Amended Complaint ("FAC") filed by Diane Vaccaro ("Plaintiff").

## I.    **<u>INTRODUCTION</u>**

Like the federal Fair Labor Standards Act ("FLSA"), the New Jersey Wage and Hour Law ("NJWHL") requires New Jersey employers to pay overtime premium pay to employees who work more than 40 hours in a workweek. *See* N.J. Stat. Ann. § 34:11-56a4(b). To apply either statute, it is necessary to determine what time qualifies as work part of the workweek.

In this case, the primary question is whether Plaintiff and similarly situated employees are engaged in work, within the meaning of the NJWHL, during the time they spend proceeding through security to leave an Amazon fulfillment center at day's end. Unsurprisingly, Plaintiff is not proceeding under the FLSA because the Supreme Court has held that such time does ***not*** qualify as work under the FLSA. *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014). In *Busk*, the Court concluded that time spent passing through security screening at Amazon fulfillment centers is not working time under the FLSA because employees were not employed to undergo security screenings and the security process was "not 'integral and indispensable' to the employees' duties as warehouse workers." *Id.* at 518.

1

New Jersey law does not support a different result.  On the contrary, courts widely hold that New Jersey law generally tracks analogous federal law and that the NJWHL in particular tracks the FLSA and judicial decisions interpreting it.  In the face of overwhelming authority demonstrating that courts interpret the NJWHL consistently with the FLSA, however, Plaintiff contends that this Court, for some reason, should interpret the NJWHL in a manner diametrically opposite to how courts construe the FLSA.  Plaintiff is wrong for at least three reasons.

*First*, the NJWHL adheres to the current federal definition of "work," including the FLSA's requirement that time spent after one's shift ends is not compensable unless the post-shift or "postliminary" activity is integral and indispensable to the performance of a principal activity that the employee is employed to perform.  As *Busk* concluded, walking through security to leave an Amazon fulfillment center is not integral and indispensable to such a principal activity, and Plaintiff cannot explain why that same rule does not apply under the NJWHL.

*Second*, even if there were some reason to conclude that the NJWHL rejects the "integral and indispensable" test – and there is none – time spent passing through security screening would not qualify as working time under the NJWHL because it requires no exertion.  Exertion is the *sine qua non* of work that is not integral and

indispensable to a principal activity – with the sole exception of employees "engaged to wait," which is inapplicable here.

*Third*, Plaintiff's novel meal break claim fails not only because passing through security is not work, but also because meal breaks are not compensable under the NJWHL unless the employee is primarily engaged in work-related duties during their break – the so-called "predominant benefit" test. Plaintiff does not allege that Amazon *required* her to engage in work-related duties or even to pass through security screening when taking a meal break – indeed, she was fully able to take her meals in any one of seven on-site break rooms and areas that she could access without passing through security. Instead, Plaintiff claims only that she had to pass through screening *if she wished to leave Amazon premises* during a meal break. But nowhere does the NJWHL suggest that an employee's meal break time must be compensated simply because the employee claims to be restricted in his or her ability to *leave the premises* during a meal break. That time is compensable if, and only if, the employee must perform work-related activities during a meal break.

Accordingly, and as set forth more fully below, the Court should enter judgment against Plaintiff's claims in their entirety with prejudice.

## II.   <u>STATEMENT OF ALLEGED FACTS</u>

The crux of Plaintiff's first cause of action – that time spent passing through security screening must count toward overtime (FAC ¶¶ 46-50) – is that she was

required to pass through a security screening after clocking out at the end of each shift at the Amazon fulfillment center where she worked (the "Robbinsville Fulfillment Center").  FAC ¶¶ 32-33; Defendant's Answer and Affirmative Defenses ("Answer") ¶ 17.  Plaintiff alleges this security screening included "walking through a metal detector" and "placing personal items on a conveyer belt" to be "scanned via x-ray."  FAC ¶ 34.  Plaintiff further alleges that "if Defendant determines that [a worker] require[s] additional scrutiny," they undergo "secondary screening" which "involves reporting to the secondary screening area so that a security guard can search them."  FAC ¶ 35.  What Plaintiff's FAC does not explain, and cannot refute, is that:

- After clocking out at the end of their shift, Amazon employees such as Plaintiff are free to engage in personal activities, such as talking to colleagues, waiting for carpool colleagues, using a break room, using on-site phones provided by Amazon, using on-site computers and electronic entertainment devices provided by Amazon, going to lockers, or using the restroom either before or after walking through security.  Furthermore, fulfillment center employee shift schedules are staggered such that, for any given shift end, only a portion of fulfillment center employees will be clocking out.  Answer ¶ 33.

- Amazon provides all fulfillment center employees with on-site lockers outside the secured area where employees can leave their personal belongings that

4

could set off the metal detectors, and explicitly instructs employees to do so. *Id.* at ¶ 34.

- It is undisputed – and indisputable – that workers passing through security screening choose from among multiple screening lanes, each with its own metal detector. One of those lanes is an "express lane" where employees who leave their personal belongings in Amazon-provided lockers and who do not wear or carry bags or items that could set off the metal detector are able to pass through screening without stopping or even breaking stride. *Id.* Other lanes are "disbursement lanes" where employees who do not wear or carry bags, but who choose to wear or carry into the secured area items that could set off the metal detector, may slide such items down a slanted ramp adjacent to (not underneath) the metal detector and pick them up again after walking through the detector – again without stopping or breaking stride. *Id.* Only those employees who choose to carry bags into the secured area place those bags and other personal items for scanning via x-ray while the employee walks through screening. *Id.*

- The only situation where Amazon would "determine[] that [employees] require additional scrutiny," as Plaintiff alleges, is when an employee sets off a metal detector. In such situations, the "secondary screening area" to which the employee "reports" is only a few feet away from the security lanes; and

5

the "search" conducted by security is limited to a security guard's passing a metal-detecting wand over the employee.  During this secondary screening, other employees continue to pass through the security lanes.  *Id.* at ¶ 35.

As to Plaintiff's second cause of action – that she should be paid for all time spent taking meal breaks (FAC ¶¶ 52-53) – she does so despite *admitting* that Amazon required her to take a 30-minute unpaid meal break each day.  (FAC ¶ 39). She contends that "[t]o leave Defendant's premises during a meal break," she had to pass through the same security screening that she would pass through after her shift (FAC ¶ 41).  But, somewhat contradictorily, she also avers that because of such screening, she was "unable to leave" the facility and "engage in [her] own pursuits during meal breaks" because of the screenings, "the vastness of Defendant's parking lot, and the remoteness of Defendant's facilities."  FAC ¶ 42.  Again, Plaintiff's FAC does not explain or refute the following undisputed facts:

- Amazon provides on-site break room facilities where Plaintiff and other employees can take their meal breaks without having to pass through security screening.  The Robbinsville Fulfillment Center has five break rooms (four of which are inside the secured area) and three other areas designated for breaks (all within the secured area), each with refrigerators, microwaves, food and drink, and other break room facilities and/or services.  Any employee may, if

he or she so chooses, take meal breaks using the internal break rooms and, in fact, many employees do so.  Answer ¶ 41.

- Neither Plaintiff nor the putative class members she seeks to represent are required to perform any work-related activities during their meal break periods.  *Id.* ¶ 39.  Indeed, Plaintiff's FAC contains no allegations that Amazon ever required her to perform any work-related tasks during her 30-minute meal break.  In fact, as alleged, Amazon required her to take her 30-minute break.  *Id.*  Stated differently, while Plaintiff claims not to have had time to run personal errands or take lunch at an eatery in downtown Robbinsville, her 30-minute break was used exclusively for her own purposes (not that of Amazon), even if not her preferred purpose on certain days.

## III.   ARGUMENT

### A.    The Applicable Legal Standard

The courts analyze Rule 12(c) motions for judgment on the pleadings using the same standard as for Rule 12(b)(6) motions.  *Young v. Speziale*, 2010 WL 2326541, at *1 (D.N.J. June 7, 2010) (citing *Reinhold v. U.S. Post Office*, 250 F. App'x 465, 466 n.1 (3d Cir. 2007)).  Rule 12(b)(6) requires a court to dismiss a complaint if, accepting the well-pleaded facts as true, the plaintiff fails to plead sufficient facts to support the relief sought.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  If it appears from the face of the complaint that a plaintiff can

prove no set of facts that would entitle him to relief, a court should dismiss the complaint. *Id.* Although a court does not analyze the probability of actual proof of the complaint's allegations on a motion to dismiss, a plaintiff still must allege enough factual matter (taken as true) to suggest the required elements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). In reaffirming the *Twombly* "plausibility" standard, the Supreme Court made clear that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). When a plaintiff's own allegations fail to state a claim, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (quotations and citations omitted).

The Court is not bound by "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and the Court need not credit a Plaintiff's "bald assertions," or "legal conclusions." *Iqbal*, 556 U.S. at 678. "[A] plaintiff's obligation to provide the 'grounds' for his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." *Twombly*, 550 U.S. at 558 (internal citations omitted); *see also Iqbal*, 556 U.S. at 678. In addition, "[w]hile legal conclusions can

8

provide the framework of a complaint, they must be **supported by factual allegations**." *Iqbal*, 556 U.S. at 679 (emphasis added).

When deciding a Rule 12 motion, "a court may examine the facts as alleged in the pleadings as well as matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case." *Tilbury v. Aames Home Loan*, 199 F. App'x 122, 125 (3d Cir. 2006) (quotation omitted).

## B.   The New Jersey Wage and Hour Law Follows And Is Interpreted Consistently With Federal Law.

In pursuing her claim under state law only, Plaintiff asks this court to find a sharp break between the NJWHL and the FLSA on whether security screening time is compensable work.  But no such break exists.  Rather, as relevant here, the NJWHL mirrors the FLSA and is construed in accordance therewith.

The general rule in New Jersey is that when a state law is "similar" to or "patterned on" an analogous federal law, New Jersey courts will look to federal case law.  *See*, *e.g.*, *GATX Terminals Corp. v. N.J. Dep't of Envtl. Prot.*, 86 N.J. 46, 53 (1981) ("look[ing] to the analogous federal statute and regulations thereunder for guidance" where portions of state law and regulations "borrow[] from" or "were patterned on" the "similar federal provision[s]"); *State v. Ingram*, 230 N.J. 190, 205 (2017) (giving "careful consideration to federal case law that interprets" federal law which analogous New Jersey law "in many respects follows"); *see also Zahl v. N.J. Jersey Dep't of Law & Pub. Safety*, 2009 WL 806540, at *5 (D.N.J. Mar. 27, 2009)

("[t]his Court looks to federal law to interpret [New Jersey statutes] where state law

is silent") (citing *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 510 (3d Cir.

2006)); *Interchange State Bank v. Veglia*, 286 N.J. Super. 164, 668 A.2d 465, 472

(N.J. Super. App. Div. 1995) ("parallel federal case law is an appropriate reference

source").

That principle applies with full force to claims under the NJWHL, which "is

patterned on the federal Fair Labor Standards Act." *Marx v. Friendly Ice Cream

Corp.*, 380 N.J. Super. 302, 378 (App. Div. Aug. 31, 2005).  As Plaintiff's own

counsel has argued, "the NJWHL is modeled on [the] FLSA and incorporates, both

explicitly and through judicial interpretation, the FLSA's methods of proof and

interpretation."  *Joseph v. Caesar's Entm't Corp.*, 2011 WL 2975433, at *7 n.5

(D.N.J. July 21, 2011) (citing *Cannon v. Vineland Hous. Auth.*, 627 F. Supp. 2d 171,

176 n.4 (D.N.J. 2008)).  In particular, "[t]he FLSA and NJWHL employ the same

test for overtime claims."  *Wang v. Chapei LLC*, 2019 WL 3281617, at *7 (D.N.J.

July 19, 2019).  There is accordingly an overwhelming judicial consensus that "[t]he

NJWHL mirrors its federal counterpart" and is analogous to the FLSA.  *Abarca v.

KC Consulting Group*, 2018 WL 2215516, at *4 (D.N.J. May 14, 2018); *see also,

e.g., Brown v. Apothaker & Assocs., P.C.*, 2018 WL 1605148, at *2 (D.N.J. Apr. 3,

2018) (finding that the NJWHL is analogous to the FLSA and therefore

"interpretations construing [the] FLSA are applicable"); *Nieves v. Top Notch

10

*Granite & Marble LLC*, 2011 WL 2937352, at \*3 (D.N.J. July 19, 2011) (same);
*Crisostomo v. Exclusive Detailing, Inc.*, 2010 WL 2640183, at \*5 (D.N.J. June 28,
2010) (same); *Nicholl-Kenner v. Lawrenceville Urology, P.A.*, 2012 WL 1898615,
at \*2 n.1 (D.N.J. May 23, 2012) ("The NJWHL is patterned after the FLSA, and
New Jersey courts look to the FLSA for guidance") (quoting *Garcia v. Freedom
Mortg. Corp.*, 790 F. Supp. 2d 283, 288 n.7 (D.N.J. 2011); *Karanjawala v.
Associated Humane Soc'ys, Inc.*, 2010 WL 4025911, at \*4 (N.J. App. Div. Aug. 20,
2010) (affirming trial court's application of FLSA analysis to NJWHL overtime
claims).

There is a simple basis for these many decisions. There is nothing contained
in the NJWHL, its implementing regulations, its legislative history, or any public
policy that suggests that the New Jersey legislature intended its definition of "work,"
"work week," and "hours worked" to depart from the same terms in the FLSA, the
very law after which the NJWHL was modeled. If the legislature so intended, there
would assuredly be some trace of that intent found somewhere. But there is no such
trace in the NJWHL itself or in the history before or after its enactment in 1966. *See*
N.J. Stat. Ann. § 34:11-56a *et seq.*

On the contrary, the NJWHL repeatedly shows a legislative intention of
mirroring the FLSA. The section concerning minimum wage and overtime
obligations not only cites the FLSA but also uses virtually identical language to

require payment of overtime compensation when an employee's hours worked exceed forty in any given workweek. *Compare* N.J. Stat. Ann. § 34:11-56a4 ("[e]very employer shall pay to each of his employees … 1 1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week"), *with* 29 U.S.C. § 207(a)(1) ("[n]o employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [those hours] at a rate not less than one and one-half times the [regular hourly] rate at which he is employed"). New Jersey further mirrors the FLSA in defining the concepts of "employ," "employee," and "suffered or permitted to work," *compare* N.J. Stat. Ann. § 34:11-56a1, *and* N.J. Admin. Code § 12:56-2.1, *with* 29 U.S.C. § 203(g), *and* 29 C.F.R. § 785.11, as well as "on-call" and "waiting" time, *compare* N.J. Admin. Code § 12:56-5.6, *with* 29 C.F.R. §§ 785.14-17. These are but some of the many ways that the NJWHL mirrors the FLSA, justifying courts' firmly established practice of construing the two in tandem.

Because the NJWHL and the FLSA are substantially similar on the subjects of "work," "work week," and "hours worked," New Jersey courts will appropriately look to federal law to determine whether particular time qualifies as working time and thus counts towards the employer's compensation obligations. Under federal

law, it is clear that Plaintiff's claims fail and the act of passing through security is not "work" for which the employer bears compensatory responsibility.

**C.** **Plaintiff's Claims Fail Because Passing Through Security Screening Is Not Work She Was Hired To Perform.**

Plaintiff's first insuperable problem, given that the NJWHL tracks the FLSA, is that the Supreme Court has already held Amazon security screenings not to be work under the FLSA. *Busk*, 135 S. Ct. at 518; *see also id.* at 520 (Sotomayor, J., concurring) (agreeing with the majority that "undergoing security screenings [is] not itself work of consequence that the employees perform[] for their employer.").

In *Busk*, the Supreme Court explained that Congress amended the FLSA through the Portal-to-Portal Act of 1947 because Congress disagreed with the way that the Supreme Court had interpreted the FLSA. *Id.* at 516-17 (majority opinion); *see also* 29 U.S.C. § 251(a). In particular, Congress disagreed with the Supreme Court's interpretations of the statutorily undefined terms "work" and "workweek": "the FLSA did not define 'work' or 'workweek,' and [the Supreme] Court interpreted those terms broadly." *Busk*, 135 S. Ct. at 516. The final straw came in *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 691-93 (1946), where the Court concluded that "preliminary activities" such as changing clothes and preparing equipment and the work area were "clearly work." Congress "swiftly" corrected the Court. *Busk*, 135 S. Ct. at 516. In the statute's opening lines, Congress explained that, "if such interpretations 'were permitted to stand,' " the results for the national

13

economy would be disastrous.  *Id.* at 516-17 (quoting 29 U.S.C. § 251(a)).  Congress

rejected those interpretations, and it did so retroactively, extinguishing live claims

in pending litigation.  29 U.S.C. § 252(a).

The only possible conclusion, is that the Portal-to-Portal Act repudiated

*Anderson*'s overly broad definition of "work."  But rather than merely rejecting

*Anderson*'s categorization of "preliminary" activities as work, the Portal-to-Portal

Act carved out "postliminary" activities as well, distinguishing both from the

employees "principal" activities.  See *id.* § 254(a).  As the statute itself and weight

of judicial authority attest, this clarifying amendment affirmatively changed the

federal definition of "work."  *See* 29 U.S.C. § 254(d) (explaining that preliminary

and postliminary activities should be included "in determining the time for which an

employer employs an employee" only if such activities are compensable by contract

or custom); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1042 (2016)

(explaining that Section 254(d) "clarified that compensable work does not include

. . . 'preliminary or postliminary activities'" (quoting 29 U.S.C. § 254(d))); *IBP, Inc.*

*v. Alvarez*, 546 U.S. 21, 28 (2005) (recognizing that the Portal-to-Portal Act changed

the Supreme Court's "earlier descriptions of the terms 'work' and 'workweek'"

insofar as "preliminary or postliminary" activities were concerned); *Reich* v. *N.Y.C.*

*Transit Auth.*, 45 F.3d 646, 649 (2d Cir. 1995) ("The Portal-to-Portal Act . . .

represented an attempt by Congress to delineate certain activities which did not

constitute work, and therefore did not require compensation." (emphasis added));

*Adair* v. *ConAgra Foods, Inc.*, 728 F.3d 849, 851 (8th Cir. 2013) (explaining that

section 254 "excludes from the workday time spent 'walking, riding, or traveling to

and from the actual place of performance of the principal activity or activities which

[an] employee is employed to perform,' and time spent performing 'activities which

are preliminary to or postliminary to said principal activity or activities'" (quoting

29 U.S.C. § 254(a)) (emphasis added)).[1]

The current federal definition of "work" accordingly reflects the Portal-to-

Portal Act's exclusions for preliminary and postliminary activities.  That means that

*Busk*'s conclusion that Amazon security screenings are postliminary activities and

not integral and indispensable to employees' principal activities holds in any state

that follows the federal definition of "work."   Because every available indication

confirms that New Jersey follows federal law on this point, Plaintiff's claims fail

just as in *Busk*.

In arguing otherwise, Plaintiff attempts to rely upon a state regulation, N.J.

Admin. Code § 12:56-5.2, which states that "[a]ll the time the employee is required

to be at his or her place of work or on duty shall be counted as hours worked."  The

---

[1]    The U.S. Department of Labor has long held the same view.  Just six months
after the Portal-to-Portal Act's enactment, it explained that under federal "law
as changed by" the Portal-to-Portal Act, "preliminary" and "postliminary"
activities are "excluded in computing time worked" unless they are
"compensable by a contract, custom, or practice."  29 C.F.R. § 790.5(a).

FAC thus asserts the legal conclusion that, "[p]ursuant to the NJWHL, all the time an employee is required to be at his or her place of work shall be counted as hours worked."  FAC ¶ 48.

But this regulation in no way suggests a departure by the NJWHL from federal law.  On the contrary, the New Jersey Appellate Division has specifically recognized that this regulation is *modeled on* equivalent FLSA regulations.  *Karanjawala*, 2010 WL 4025911, at *4 (affirming trial court's "not[ing] the similarity between the applicable regulations in the New Jersey Administrative Code, N.J.A.C. 12:56-5.2 and N.J.A.C. 12:56-5.6, and 29 C.F.R. §§ 553.221(b), (c) and (d)").  Specifically, 29 C.F.R. § 553.221(b), much like N.J. Admin. Code § 12:56-5.2, states that "[c]ompensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer."  In a similar vein, 29 C.F.R. § 778.223 states that, "as a general rule the term 'hours worked' will include: (a) All time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace and (b) all time during which an employee is suffered or permitted to work whether or not he is required to do so."  As *Busk* shows, however, even with such regulations, security screening time is not counted as worktime under federal law.

16

In fact, the most notable difference between the New Jersey regulation and these two federal regulations is that while both include time during which the employee is required to be "[a]t his or her place of work" or, equivalently, "at a prescribed workplace," the New Jersey regulation does ***not*** include all time required to be spent on the employer's premises.  That was no oversight, since New Jersey's governing regulations clearly differentiate between an employee's being "on the employer's premises," *see* N.J. Admin. Code § 12:56-5.6 (addressing on-call time), and being "required to be at his or her place of work," *see* N.J. Admin. Code § 12:56-5.2 (addressing computation of working time).  If the state agency had wished to include time "on the employer's premises" in section 12:56-5.2's discussion of how to compute time worked, it clearly knew how to do so.  Regardless of whether security screening time might count in some circumstances as time during which employees are required to be on their employer's premises, they would not qualify as work under New Jersey law because the security screening area is not the employees' individual place of work.  Whether under New Jersey law or federal law, "place of work" is best understood as meaning the area within the employer's facility where the employee performs work duties – *not* the entire facility.  *See Usery v. Allegheny Cty. Inst. Dist.*, 544 F.2d 148, 151 (3d Cir. 1976) (identifying, in action under Equal Pay Act amendments to the FLSA, the "place of work" for beauticians and barbers working in a hospital as certain designated areas within the hospital,

rather than the entire hospital facility).   The security screening lanes near the facility's exits are clearly not where the employees perform their work duties.

In addition to ignoring that the terms are used differently and in separate regulations, Plaintiff's efforts to conflate "place of work" with "employer's premises" would also risk absurd results – and it speaks volumes that, to counsel's knowledge, no one else has brought a claim seeking compensation for security clearance time in the fifty-two years since the enactment of the NJWHL.  Consider time spent by employees who work on the top floors of an office building.  They often must wait in crowded elevator banks for an elevator at the beginning and end of the day to get to and from work.  They even sometimes must wait for another elevator if one is too crowded.  If time spent waiting to walk through security screening counted as time during which the employee was required to be on the employer's premises, presumably time spent waiting for an elevator would so qualify too.  But no one has ever suggested that elevator-waiting time is compensable under the NJWHL or the FLSA.  Similarly, there is no question that time spent walking to and clocking in at (or clocking out and walking from) a time clock at work is not compensable, despite such walking/clocking time still being no less required to be on the premises of the employer.   Otherwise state and federal regulations would not expressly permit employers to track hours worked through time clock use, which does not take account of such walking or clocking time.

*Compare* N.J. Admin. Code § 12:56-5.8, *with* 29 C.F.R. § 785.48.  Plaintiff cannot explain why being on the premises of the employer should be treated any differently for the passive activity of passing through a security screening apparatus.

Rather than permit Plaintiff to proceed, this Court should follow the model of the Sixth Circuit Court of Appeals in affirming dismissal of similar claims under Kentucky law in *Vance v. Amazon.com, Inc.*, 852 F.3d 601 (6th Cir. 2017).  In *Vance*, as here, the plaintiffs sought overtime pay for time spent passing through security screening at Amazon fulfillment centers – arguing that state law deviated from the FLSA.  They attempted to distinguish *Busk* by arguing that Kentucky wage and hour law did not explicitly and affirmatively incorporate the federal Portal-to-Portal Act. *Vance*, 852 F.3d at 607-610.  The Sixth Circuit recognized, however, that Kentucky's wage and hour law (like the NJWHL) is an "analogue to the Fair Labor Standards Act."  *Id.* at 610.  Applying the same principle of statutory construction that governs under New Jersey law, the court noted that when a state statute is "similar to a Federal Act, its language will normally be interpreted consistent with federal law," absent some "distinct structural difference" between the two and "clear indication that the [state legislature] … deliberately rejected" such federal law and interpretation.  *Id.* at 610, 612-13 (internal quotations omitted).  Accordingly, *Vance* held that, because Kentucky overtime regulations were "substantially similar to their federal equivalents" and "there is no state case law on point," Kentucky courts would

"rel[y] on federal decisions to aid in their application [of state law]," and it therefore concluded that Kentucky wage and hour law incorporated the Portal-to-Portal Act amendments to the FLSA. *Id.* at 615. The "state legislature's failure to explicitly incorporate certain Portal-to-Portal Act terms" was immaterial because state law evinced no "*affirmative departure* from the FLSA." *Id.* at 611.

As explained *supra*, Section II.B, New Jersey courts apply the same principles of statutory construction on which the Sixth Circuit relied in *Vance*:  when a state statute is analogous or similar to federal law, look to federal interpretation absent some clear and explicit structural difference. The same analytical approach used in *Vance* under Kentucky law applies equally here as to New Jersey law, and compels the same result:  judgment against Plaintiff's claims.

## D. Plaintiff's Claims Fail Because Passing Through Security Screening Involves No Exertion.

Plaintiff's claims also fail for an independent reason. Even if *Busk* were somehow irrelevant under the NJWHL, time spent passing through security would still not be "work" that must be counted toward overtime because Plaintiff does not and cannot plead that the activity of passing through security requires exertion. Even before the Portal-to-Portal Act, activities could not qualify as "work" unless they involved exertion (absent one specific exception in which employees were "engaged to wait" or remain on call for the employer's convenience). For this reason too, Plaintiff's claims should be dismissed.

The basic legal definition of work comes from the Supreme Court's judicial interpretation in *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944): "***physical or mental exertion*** (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." (Emphasis supplied) (most recently reaffirmed in *Busk*, 135 S.Ct. at 517); *see also Babcock v. Butler County*, 806 F.3d 153, 160 (3d Cir. 2015) (citing *Tennessee Coal* definition of work); *Albanese v. Bergen County, New Jersey*, 991 F. Supp. 410, 418 (D.N.J. 1998) (same).

The only exception to this definition is the so-called "engaged to wait" scenario – as opposed to time spent "waiting to be engaged," which remains non-compensable. Specifically, in *Armour & Co. v. Wantock*, 323 U.S. 126 (1944), the Supreme Court identified the engaged-to-wait scenario – or "refraining from other activity [as] a factor of instant readiness to serve," *id.* at 133 – as a "limitation or variation" of the general exertion requirement (which that same Court announced a mere nine months earlier in *Tennessee Coal*). While *Armour* provides "[t]hat inactive duty *may be* duty," *Armour*, 323 U.S. at 124 (emphasis added), "may" is far different than "is." Nor did the Supreme Court in *Armour* remotely suggest that it had overruled *Tennessee Coal* (decided only 9 months earlier) without saying it was doing so, especially where subsequent decisions have repeatedly reaffirmed *Tennessee Coal*'s exertion requirement time and time again. *See, e.g.*, *Anderson*,

328 U.S. at 691-93 (citing and applying this *Tennessee Coal* exertion requirement, even after *Armour*).[2]

In entering judgment on the pleadings against the plaintiffs in *Vance*, Judge Hale of the Western District of Kentucky recognized that the engaged-to-wait exception does not swallow the long-established rule that exertion is generally required.  Specifically, Judge Hale observed:

> Though the Court agrees that there certainly are jobs where waiting is an integral part of the work, the Court disagrees that this case presents such a job.  Jobs like firefighting and stenography have necessary down periods.  And so, workers who have those types of jobs are compensated to wait:  They are paid to be on call so that, when the primary tasks they are paid to do arise, they will be available to do the work that needs to be done.  Here, though, the workers are not being paid to wait around for their next task.  These workers have already completed their tasks for the day—the jobs they are paid for—and are just waiting to go home.

*In re: Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act (FLSA) and Wage and Hour Litigation*, 2016 WL 1268296, at *3 (Mar. 31, 2016), *aff'd on other grounds*, 852 F.3d 601.

New Jersey regulations are on all fours with federal law on this point.  For example, New Jersey's regulation addressing "on-call time" expressly distinguishes between an "engaged to wait" scenario – where the on-call employee is "not really

---

[2]      *See*, *e.g.*, *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) (the Court "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*"); *Am. Trucking Ass'ns v. Smith*, 496 U.S. 167, 190 (1990) (refusing to "*sub silentio* overrul[e]" precedent).

free to use the intervening periods effectively for their own benefit" and thus must be compensated for their waiting time – and a "waiting to be engaged" scenario, which is not compensable.  N.J. Admin. Code § 12:56-5.6.  The employee who is "engaged to wait" is merely an *exception* to that general rule requiring exertion, on the theory that they are paid to wait to spring into activity.  That exception does not apply here.

The fact is that everyone must walk out of the fulfillment center at the end of the shift.  Those employees who heed Amazon's instruction to leave in their lockers all bags and personal belongings that may set off the metal detector can walk through screening without breaking stride by using the express lanes.  Those employees who leave bags in a locker but choose to carry or wear personal belongings that may set off the metal detector can still walk through screening without breaking stride by using the disbursement lanes and sliding those personal items down the slanted ramp outside the detectors.  Those employees who choose to bring a bag through security may have to send their bag through x-ray screening, and those employees who set off a metal detector may have to pause briefly as a security guard waves a metal detecting wand over their person.  But none of these employees do anything that could fairly be considered "exertion."  *See, e.g.*, *Reich v. IBP, Inc.*, 38 F.3d 1123, 1125-26 (10th Cir. 1994) (holding that donning and doffing safety glasses, ear plugs, and hard hats requires no exertion); *Reich v. N.Y.C. Transit Auth.*, 45 F.3d 646, 651

23

(2d Cir. 1995) (holding that police dog handlers' commutes with their police dogs "involved neither exertion nor loss of time").  Under a long line of cases, "exertion" remains the *sine qua non* of work, at least where the activities are not integral or indispensable to the principal activities that employees are employed to perform. Because the security screenings are not alleged to involve any exertion, this Court should dismiss Plaintiff's claims.[3]

### E.   Plaintiff's Second Cause of Action For Alleged Unpaid Meal Time Also Fails Under The "Predominant Benefit" Test.

Plaintiff's claim that the presence of security screening somehow renders her meal periods compensable also fails under the so-called "predominant benefit" test. Specifically, under the FLSA and New Jersey law, a meal period is compensable only if the employee "is primarily engaged in work-related duties" during it.  This is the test used both by the Third Circuit for federal law claims and by New Jersey courts for analogous NJWHL claims.  *Babcock*, 806 F.3d at 156 (adopting predominant benefit test for FLSA claims); *Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 200 n.8 (D.N.J. 2014) (court used predominant benefit test to assess whether unpaid breaks are non-compensable meal periods under NJWHL).

---

[3]   The Third Circuit has held that activities that are integral and indispensable to a principal activity qualify as work regardless of whether they require exertion. *See De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 372-73 (3d Cir. 2007).  That decision cannot help Plaintiff, however, because these "security screenings [are] ***not*** 'integral and indispensable' to the employees' duties as warehouse workers."  *Busk*, 574 U.S. at 35 (emphasis added).

24

Here, Plaintiff does not allege that Amazon required her to "primarily engage in work-related duties" during her meal break – or, indeed, that she was required to engage in *any* work-related duties.  On the contrary, she alleges that Amazon *required* her to *take* a 30-minute meal break.  FAC ¶ 39.  Moreover, it is undisputed that Plaintiff was able to take her meal breaks in on-site break room facilities provided by Amazon, completely free from all work responsibilities, *without* having to pass through security.  Answer ¶ 41.  She does not allege otherwise, nor could she.

That leaves Plaintiff to argue that her alleged "inability" to "leave Defendant's premises during a meal break" without passing through security – together with her conclusory allegations about the "vastness" of the fulfillment center parking lot and the "remoteness" of its location – somehow converts non-compensable meal break time into compensable time.  But there is simply no requirement under New Jersey law that an employee be free to leave an employer's premises during a meal break for that break to be non-compensable.  And the FLSA – which the NJWHL mirrors – makes clear in its regulations that no such requirement exists:  "It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period."  29 C.F.R. § 785.19(b).

Adopting Plaintiff's theory here would, yet again, lead to absurd results.  There are many locations of employment that are located remote from downtown

areas where employees can shop or have lunch, but there is no authority whatsoever to suggest that in such circumstances employers must provide compensation for all time employees spend on the premises, even when they are free from work. Indeed, New Jersey, the Garden State, has many farms where it is impossible for employees to use their 30 minutes to run personal errands. Similarly, consider construction sites and many other locations (like courthouses) that may not allow for the running of personal errands. Under these circumstances, no one suggests that the predominant benefit test requires an employer to tack on 30 minutes of time each and every day of work. And that is because that is not the law. *See Babcock*, 806 F.3d at 158 (finding meal breaks non-compensable even where employees were not able to leave facility without express managerial permission and even then had to remain in close proximity to emergency response equipment and be on call to respond to emergencies).

Because Plaintiff does not allege that Amazon required her to primarily engage in work-related duties during her meal breaks, they are not compensable under the NJWHL and her second cause of action fails.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court enter judgment against Plaintiff's FAC in its entirety.

Dated:  November 14, 2019   Respectfully submitted,

           MORGAN, LEWIS & BOCKIUS LLP

           *s/ Joseph A. Nuccio*
           Richard G. Rosenblatt
           Joseph A. Nuccio
           502 Carnegie Center
           Princeton, New Jersey 08540
           Telephone: (609) 919-6600
           Facsimile: (609) 919-6701
           richard.rosenblatt@morganlewis.com
           joseph.nuccio@morganlewis.com
           *Attorneys for Defendant*