**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIANE VACCARO, on behalf of herself and those similarly situated,<br><br>                          Plaintiff,<br><br>      v.<br><br>AMAZON.COM.DEDC, LLC,<br><br>                       Defendant. | Civ. Action No. 18-11852 (FLW)<br><br>**OPINION** |

**<u>WOLFSON, Chief Judge</u>:**

This is a putative class action brought by current and former employees against defendant Amazon.com.dedc, LLC ("Amazon"). The named plaintiff, Diane Vaccaro ("Plaintiff"), seeks compensation under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et seq*., for time spent undergoing mandatory post-shift security screenings at the Amazon facility where she works and for time spent on meal breaks. Presently before the Court is the motion brought by Amazon for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In its motion, Amazon principally relies upon the United States Supreme Court's decision in *Integrity Staffing Solutions, Inc. v. Busk (Busk I)*, 574 U.S. 27 (2014), which held that the same security screenings as are at issue in this case are not compensable under the federal Fair Labor Standard Act ("FLSA"). Amazon contends that the NJWHL should be interpreted in the same manner as the FLSA. Plaintiff counters that the plain language of the NJWHL and its regulations, together with state decisional law, compels a different result. Having considered the parties arguments, the Court finds that, as pleaded, the time spent undergoing mandatory post-shift

security screenings is compensable under the NJWHL, but time spent on meal breaks during the course of the workday is not compensable.  Accordingly, for the reasons set forth below, Amazon's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.     BACKGROUND

### A.     Factual Allegations

In the operative First Amended Complaint ("FAC"), Plaintiff alleges that she gained employment with Amazon as a "warehouse worker" beginning in June 2017.  (FAC ¶ 17, ECF No. 1-1.)  According to the FAC, at the end of each workday, Amazon requires Plaintiff to submit to a security screening.  (*Id*. ¶ 32.)  Specifically, Plaintiff alleges that she must wait among hundreds of other warehouse employees to pass through security after clocking out at the end of each shift. (*Id*. ¶ 33.)  Plaintiff further alleges that the security screening includes walking through a metal detector and placing personal items on a conveyer belt to be scanned via x-ray.  (*Id*. ¶ 34.) According to the FAC, if Amazon determines that additional scrutiny is necessary, Plaintiff must then submit to a mandatory "secondary screening," which involves reporting to the secondary screening area so that a security guard can search her.  (*Id*. ¶ 35.)  Plaintiff alleges that Amazon does not compensate her for the time it takes her to go through these security screenings.  (*Id*. ¶ 36.)

Plaintiff also alleges that Amazon requires her to take a 30-minute unpaid meal break during each workday.  (*Id*. ¶ 39.)  According to the FAC, Amazon requires Plaintiff to "clock out" at the beginning of each meal break and to "clock in" at the end of each meal break.  (*Id*. ¶ 40.) Plaintiff alleges that, before she may leave Amazon's "premises" for a meal break, Amazon requires her to go through the same security screening process as is required at the end of the workday.  (*Id*. ¶ 41.)  Plaintiff asserts that, due to these mandatory security screenings, the vastness

of Amazon's parking lots, and the remoteness of Amazon's facilities, Plaintiff is unable to leave her "plac[e] of work" or "engage in her own pursuits" during meal beaks.  (*Id.* ¶ 42.)

### B.   Plaintiff's Claims

Plaintiff asserts two separate claims in her complaint.  In Count One, Plaintiff claims that Amazon has violated the NJWHL by failing to count time spent passing through security screening at the end of each workday as "hours worked" for purposes of calculating wages.  (FAC ¶¶ 45-50).  In Count Two, Plaintiff claims that Amazon has similarly violated the NJWHL by failing to count time spent on meal breaks during the course of the workday as "hours worked" for purposes of calculating wages.  (FAC ¶¶ 51-53.)  As for relief, Plaintiff seeks, *inter alia*, damages from Amazon for uncompensated wages, as well as an order prohibiting Amazon from continuing its policy of not compensating its employees for time spent undergoing security screenings and on meal breaks.

## II.   <u>LEGAL STANDARD</u>

Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The applicable standard on a motion made pursuant to Rule 12(c) is similar to that applied on a motion to dismiss pursuant to Rule 12(b)(6).  *See Spruill v. Gillis*, 372 F.3d 218, 223 n. 2 (3d Cir.2004); *Newton v. Greenwich Twp.*, 2012 WL 3715947, at *2 (D.N.J. Aug. 27, 2012) ("The difference between a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) is only a matter of timing and the Court applies the same standard to a Rule 12(c) motion as it would to a Rule 12(b) (6) motion.") (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)).  Thus, when reviewing a motion made pursuant to Rule 12(c), a court "view[s] the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff."  *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir. 2004) (quoting

*Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief") (citation omitted). Furthermore, a motion for judgment on the pleadings "should not be granted 'unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law.'" *Mele*, 359 F.3d at 253 (quoting *Leamer*, 288 F.3d at 535)).

## III.   DISCUSSION

In *Integrity Staffing Solutions, Inc. v. Busk (Busk I)*, 574 U.S. 27 (2014), the Supreme Court held that the same post-shift security screenings as are at issue in this case are noncompensable "postliminary" activities under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as amended by the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.*  574 U.S. at 35.  Amazon argues that, since the NHWHL is "similar" to and "patterned" on the FLSA, the NJWHL should be interpreted in the same manner as federal law, such that the Supreme Court's ruling in *Busk I* is dispositive of Plaintiff's claims.  Amazon further argues that, even if *Busk I* does not govern this case, time spent undergoing security screenings and on meal breaks still does not constitute "work" that must be compensated under the NJWHL.  In response, Plaintiff argues that, though modeled after the FLSA, the NJWHL does not incorporate the Portal-to-Portal Act's exclusions regarding "postliminary" activities, and therefore, *Busk I* is inapplicable to Plaintiff's claims.  In addition, Plaintiff argues that that the plain language of the NJWHL and its regulations, together with state decisional law, require that time spent undergoing security screenings and on meals breaks to be compensated.  In particular, Plaintiff points to a New Jersey regulation, which mandates that an

employer count "all the time that an employee is required to be at his or her place of work" when computing "hours worked."  N.J.A.C. 12:56-5.2(a).

Neither the New Jersey Supreme Court nor any of New Jersey's lower courts has addressed whether time spent undergoing security screening is compensable under the NJWHL or whether the statute incorporates the federal Portal-to-Portal Act's exclusions regarding "postliminary" activities.  When presented with an issue of state law that has yet to be definitively interpreted by the New Jersey courts, "the role of a federal court ruling on a matter of state law . . . is to follow the precedents of the state's highest court and predict how that court would decide the issue presented."  *Camden County Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 541 (3d Cir. 2001).  "In making such a prediction," the district court must "consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would resolve the issue at hand." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) (citation omitted). Furthermore, under New Jersey law, when state statutes and regulations are "patterned" on federal statutes and regulations, "a court may look to the analogous federal statute and regulations thereunder for guidance."  *GATX Terminals Corp. v. New Jersey Dep't of Envtl. Prot.*, 86 N.J. 46, 53 (1981) (citation omitted); *see also Interchange State Bank v. Veglia,* 286 N.J. Super. 164, 177 (App. Div. 1995) (stating that when "there is no state decisional law . . . parallel federal case law is an appropriate reference source") (citation omitted).

Having examined the relevant language of the NJWHL and its regulations, and having considered analogous decisional law for guidance, I predict that the New Jersey Supreme Court would resolve the issues presented in this case as follows: *First*, time spent undergoing mandatory security screenings at the end of the workday constitutes "time the employee is required to be at

his or her place of work," and thus must be counted as "hours worked" when calculating wages; *second,* time spent on meal breaks during the course of the workday does not constitute time spent at the employee's "place of work," and, thus, is not required to be counted when calculating wages; and, *third,* the NJWHL does not incorporate the federal Portal-to-Portal Act, such that mandatory security screenings at the end of the workday are not excluded as "postliminary" activities.

### A.    Time spent undergoing security screenings at the end of the workday is compensable as "hours work" under the NJWHL.

In 1966, the New Jersey legislature enacted the NJWHL, which pertains to minimum wage standards in New Jersey.  The stated purpose of the law was "to establish a minimum wage level for workers in order to safeguard their health, efficiency, and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to their health, efficiency and well-being."  N.J.S.A. 34:11–56a.  To that end, the NJWHL authorizes the Commissioner of Labor to "make such administrative regulations as he shall deem appropriate to carry out the purposes of [the NJWHL] or necessary to prevent the circumvention or evasion thereof, and to safeguard the minimum wage rates [t]hereby established."  N.J.S.A. § 34:11-56a5.  The Commissioner, in turn, has promulgated the following regulation: "All the time the employee is required to be at his or her place of work or on duty shall be counted as hours worked."  N.J.A.C. 12:56-5.2(a).  In promulgating N.J.A.C. 12:56-5.2(a), the Commissioner did not define what constitutes an employee's "place of work," and the New Jersey Supreme Court has not yet addressed the meaning of the phrase.  Thus, it is the task of this Court to predict how the New Jersey Supreme Court would interpret that phrase.

The New Jersey Supreme Court has made clear that when interpreting a regulation, the "paramount goal" is to "determine[e] the intent of the drafter."  *US Bank, N.A. v. Hough*, 210 N.J. 187, 199 (2012) (citing *DiProspero v. Penn*, 183 N.J. 477, 492 (2005)).  In doing so, "it is not [the

court's] function to 'rewrite a plainly-written enactment,' or to presume that the drafter intended a meaning other than the one 'expressed by way of the plain language.'" *Id*. Rather, "[t]he regulation should be construed in accordance with the plain meaning of its language . . . and in a manner that makes sense when read in the context of the entire regulation." *Czar, Inc. v. Heath*, 398 N.J. Super. 133, 138 (App. Div. 2008) (citations omitted), *aff'd as modified*, 198 N.J. 195 (2009). Furthermore, "[o]nly when a fair 'reading of the enactment leads to more than one plausible interpretation' do[es] [the court] look to extrinsic evidence." *US Bank*, 210 N.J. at 199 (quoting *Bedford v. Riello*, 195 N.J. 210, 221-22 (2008)).

Plaintiff argues that the plain meaning of the phrase "time . . . required to be at his or her place of work" in N.J.A.C. 12:56-5.2(a), encompasses time spent undergoing mandatory security screenings at the Amazon facility where she works. In support of this argument, Plaintiff asserts that she is "required" by Amazon to pass through the security screenings at the end of each workday before exiting the facility, and that those lines are located in the same facility, *i.e.*, "place," where she performs her "work." Amazon, on the other hand, argues that "place of work" is best understood as meaning the specific area within the Amazon facility where Plaintiff performs work duties—not the entire facility. In the Court's view, both interpretations of "place of work" are plausible. Therefore, the Court will resort to other appropriate sources for guidance in discerning the meaning of the regulation.

As noted above, such guidance may be provided by looking to analogous federal statutes and regulations. *See GATX*, 86 N.J. 46, 53 (1981); *Interchange State Bank*, 286 N.J. Super. 164, 177 (App. Div. 1995). Both state and federal courts in New Jersey have acknowledged that the NJWHL is "patterned on the federal Fair Labor Standards Act," *Marx v. Friendly Ice Cream Corp.*, 380 N.J. Super. 302, 378 (App. Div. Aug. 31, 2005), and that "[t]he NJWHL mirrors its federal

counterpart," *Abarca v. KC Consulting Group*, 2018 WL 2215516, at \*4 (D.N.J. May 14, 2018).

*See also Hargrove v. Sleepy's*, LLC, 220 N.J. 289, 313 (2015) (stating that the FLSA "influenced

the adoption in 1966 of the [NJ]WHL to protect workers not covered by FLSA").  Thus, in this

instance, it is appropriate to look to federal law interpreting the FLSA for guidance.

Under the FLSA, the term "work" has been defined broadly by the U.S. Supreme Court as

any activity "controlled or required by the employer and pursued necessarily and primarily for the

benefit of the employer and his business."  *Tennessee Coal, Iron & R. Co. v. Muscoda Local No.*

*123*, 321 U.S. 590, 598  (1944).  Therefore, referring to the FLSA's definition of "work" for

guidance, the phrase "place of work" in N.J.A.C. 12:56-5.2(a) can fairly be read as any place where

the following two prongs are met: (1) an activity is performed that is *controlled or required* by the

employer; and (2) such activity serves to *primarily benefit* the employer.[1]

Here, both prongs are met with respect to the mandatory security screenings that Plaintiff

alleges she is required to undergo at the end of each workday.  Plaintiff alleges in the FAC that,

"[a]t the end of each workday," Amazon "required/requires [Plaintiff] to submit to a security

screening."  (FAC ¶ 32.)  Plaintiff further alleges that, "if [Amazon] determines that Plaintiff[]

require[s] additional scrutiny, Plaintiff[] must submit to a mandatory 'secondary screening.'"

---

[1]     In its motion papers, Amazon contends that an activity must further require "exertion" in order to
constitute "work."  In support of this contention, Amazon cites to *Tennessee Coal*, which, in addition to
providing the current definition of "work," held that, in order for an activity to be "work," it must involve
"physical or mental exertion (whether burdensome or not)."  321 U.S. at 598.  Plaintiff disputes that
"exertion" is an additional prong in the analysis.  Plaintiff cites to *Vance v. Amazon.com, Inc.*, 852 F.3d 601
(6th Cir. 2017), in which the Sixth Circuit observed that "[o]nly months after *Tennessee Coal*, the
[Supreme] Court expanded the definition further, 'clarif[ying] that "exertion" was not in fact necessary for
an activity to constitute "work" under the FLSA,' for 'an employer, if he chooses, may hire a man to do
nothing, or to do nothing but wait for something to happen.'"  852 F.3d. at 608.  In this case, regardless of
whether "exertion" is a requirement, the mandatory security screenings described in the FAC clearly do
involve physical exertion, *e.g.*, "walking through a metal detector" and "placing personal items on a
conveyor belt."  (FAC ¶ 34.)  *See also Integrity Staffing Sols., Inc. v. Busk*, 905 F.3d 387, 401-2 (6th Cir.
2018) (stating that "undergoing security screening clearly does involve exertion").

(FAC ¶ 35.)  It can reasonably be inferred from these allegations that Plaintiff may not leave the "control" of Amazon, and thereby complete her shift for the day, without undergoing the security screening, thus satisfying the first prong.  Indeed, construing these allegations "in the light most favorable to the plaintiff," *see Mele*, 359 F.3d at 253, Plaintiff does not appear to have a choice in the matter: at the end of the work day, it is necessary for her to undergo a mandatory security screening before she can physically exit Amazon's premises.  Moreover, there is no suggestion that the security screenings at the end of the workday benefit any person or entity other than Amazon.  Accordingly, as pleaded, time spent undergoing mandatory security screenings at the end of the workday must be counted towards "hours worked" under N.J.A.C. 12:56-5.2(a).[2]

## B.       The NJWHL does not incorporate the federal Portal-to-Portal Act.

Having concluded that time spent undergoing mandatory security screenings is "work" under the NJWHL, the issue remains whether the New Jersey legislature has nevertheless excluded this work as "postliminary" activities by incorporating provisions of the federal Portal-to-Portal Act.  As noted above, the Supreme Court has held that the same post-shift security screenings as are at issue in this case are noncompensable "postliminary" activities under the FLSA, as amended

---

[2]       In its motion papers, Amazon cites to "undisputed" factual averments in its Answer that appear to undermine Plaintiff's claim that she "must wait among . . . other warehouse employees to pass through security."  (FAC ¶  33.)  For example, Amazon cites to averments in its Answer that "express lanes" are available for employees "who leave their personal belongings in Amazon-provided lockers and who do not wear or carry bags or items that could set off the metal detector."  (Def. Opening Br. at 5, ECF No. 30-1 (citing Answer ¶ 34).)  According to Amazon, these employees "are able to pass through screening without stopping or even breaking stride."  (*Id.*)  These factual averments, if proven to be true, may serve to show that Amazon "requires" its employees to spend very little time on long security lines.  However, as this litigation is still in the pleading stage, Plaintiff has not yet had an opportunity to deny or otherwise dispute Amazon's factual averments.  *See* Fed. R. Civ. P. 7(a) (stating that, other than "a complaint and an answer . . . [n]o other pleading shall be allowed, except that the court may order a reply to an answer . . . .").  As a result, the Court assumes that Plaintiff denies the factual averments in Amazon's Answer for the purposes of the present motion and does not consider those averments in deciding the sufficiency of Plaintiff's claims.  *See* Fed. R. Civ. P. 8(b)(6) (stating that "if a responsive pleading is not required, an allegation is considered denied or avoided.").

by the Portal-to-Portal Act.  *See Busk I,* 574 U.S. at 35.  In *Busk I,* the Supreme Court explained that Congress amended the FLSA through the Portal-to-Portal Act of 1947, because Congress disagreed with the way that the Supreme Court had previously interpreted the FLSA.  *Id.* at 31-32. In particular, Congress disagreed with the Supreme Court's "expansive definitions" of the statutorily undefined terms "work" and "workweek."  *Id.* at 31.  The final straw for Congress came in *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 691-93 (1946), where the Supreme Court concluded that "the time spent walking from timeclocks to work benches" was found compensable under the FLSA.  *Busk I*, 574 U.S. at 31.  The Supreme Court's decisions "provoked a flood of litigation," including 1,500 FLSA actions filed within six months of the Supreme Court's ruling in *Anderson*.  *Id.* at 31-32.

"Congress responded swiftly."  *Id.* at 32. Finding the Supreme Court's expansive interpretations had "creat[ed] wholly unexpected liabilities" with the capacity to "bring about financial ruin of many employers," it enacted the Portal-to-Portal Act.  *Id.* (quoting 29 U.S.C. § 251(a)-(b)).  The Portal-to-Portal Act excluded two activities that the Supreme Court previously deemed compensable:

> (1)  walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2)  activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."

*Id.* at 32-33 (citing § 4, 61 Stat. 86–87 (codified at 29 U.S.C. § 254(a))).  Thus, following the enactment of the Portal-to-Portal Act, an employee's principal activities are compensable under

the FLSA, while activities that he or she engages in before or after his or her principal activities (*i.e.*, "preliminary" and "postliminary" activities) are not compensable.

Amazon argues that the NJWHL "adheres" to the Portal-to-Portal Act's exclusion of "preliminary" and "postliminary" activities, thereby barring Plaintiff's claims just as in *Internal Staffing*. In support of this argument, Amazon cites to *Vance v. Amazon.com, Inc.*, 852 F.3d 601 (6th Cir. 2017), in which the Sixth Circuit affirmed the dismissal of similar claims under Kentucky law. In *Vance*, as here, the plaintiffs sought overtime pay for time spent passing through security screenings at Amazon fulfillment centers—arguing that state law deviated from the FLSA. The plaintiffs attempted to distinguish *Busk I* by arguing that the Kentucky legislature had never enacted a Portal-to-Portal Act of its own and by noting that the Kentucky wage and hour statute contained no comparable exclusions from coverage. *Vance*, 852 F.3d at 607-611. The Sixth Circuit rejected those arguments, recognizing that the Kentucky wage and hour statute is an "analogue to the Fair Labor Standards Act." *Id*. at 610. Applying the principles of statutory construction that govern Kentucky law, the court in *Vance* noted that when a state statute is "similar to a Federal Act, its language will normally be interpreted consistent with federal law," absent some "distinct structural difference" between the two and "clear indication that the [state legislature] . . . deliberately rejected" such federal law and interpretation. *Id*. at 610, 612-13 (internal quotation marks and citations omitted). Accordingly, the court in *Vance* held that, because Kentucky overtime regulations were "substantially similar to their federal equivalents" and "there is no state case law on point," Kentucky courts would "rel[y] on federal decisions to aid in their application [of state law]." *Id*. at 615. As such, the court concluded that the Kentucky wage and hour statute incorporated the Portal-to-Portal Act amendments to the FLSA. *Id*. The "state legislature's failure to explicitly incorporate certain Portal-to-Portal Act terms" was

immaterial because the Kentucky wage and hour law evinced no "*affirmative departure* from the FLSA." *Id*. at 611 (emphasis in original).

In response, Plaintiff counters that the NJWHL does not incorporate the Portal-to-Portal Act's exclusions for "preliminary" and "postliminary" activities. In support of this argument, Plaintiff primarily relies upon a subsequent decision of the Sixth Circuit, *Integrity Staffing Sols., Inc. v. Busk (Busk II)*, 905 F.3d 387, 402 (6th Cir. 2018), which held that the Nevada and Arizona wage and hour statutes did not incorporate the Portal-to-Portal Act. In *Busk II*, the court found that "the Nevada legislature ha[d] chosen not to affirmatively adopt the law anywhere in the Nevada state code," *id*. at 404, and that ""there [was] nothing to suggest that the Arizona legislature intended to adopt the federal Portal-to-Portal Act into its Code," *id*. at 405. With respect to Nevada law, the court observed that because "the Nevada legislature expressly included references to federal regulations in multiple parts" of the statute, the legislature's "failure to adopt other" parts of federal law "was intentional." *Id*. at 403. At most, the court noted that Nevada law paralleled certain provisions of the FLSA, but not the Portal-to-Portal Act. *Id*. at 403-04. As for Arizona law, the court similarly found that "nothing in the Arizona code seems to parallel or incorporate the Portal-to-Portal Act," while noting that certain provisions of "Arizona law also seem[ed] inconsistent with the Portal-to-Portal Act." *Id*. at 404.

Turning to the language and structure of the statute at issue in this case, I find that the New Jersey legislature did not intend to incorporate the Portal-to-Portal Act's exclusions for "preliminary" and "postliminary" activities into the NJWHL. As with the Nevada wage and hour statute at issue in *Busk II*, the NJWHL and its regulations expressly refer to specific provisions of the FLSA and its regulations, *see, e.g.*, N.J.S.A. § 34:11-56a4 (citing to "Section 6 of the federal "Fair Labor Standards Act of 1938'"); N.J.A.C. 12:56-7.2(a) (citing to 29 C.F.R. Part 541), yet the

NJWHL and its regulations do not cite to the section of the FLSA that was amended by the Portal-to-Portal Act, *i.e.*, Section 7.  *Cf. Thomas v. Amazon.com Servs., Inc.*, 2020 WL 2572319, at *5 (N.D. Ohio May 21, 2020) (holding that Ohio law incorporated the Portal-to-Portal Act where statute at issue "expressly incorporate[ed] all of Section 7 of the FLSA, as amended").  Accordingly, like the Nevada legislature in *Busk II*, the fact that the New Jersey legislature "expressly adopted some federal regulations indicates that its failure to adopt others was intentional."  *Busk*, 905 F.3d at 403.

Moreover, several sections of the NJWHL and its regulations are "in direct conflict with" the Portal-to-Portal Act, as parts of the Arizona wage and hour statute were in *Busk II*.  *Id*. at 403.  For example, the NJWHL regulations require that employers pay employees for at least one hour on any day that the employee reports for duty by request of the employer, regardless of whether the employee performs any work.  *See* N.J.A.C 12:56-5.5.  The NJWHL regulations also include a provision regarding travel time, but limit its application to employees in specific occupations, including "mercantile occupations" and "laundry, cleaning and dyeing occupations."  *See* N.J.A.C. 12:57-3.7; N.J.A.C. 12:57-5.7.  As in *Busk II*, this is yet another indication that the Portal-to-Portal Act was not incorporated into the NJWHL and its regulations.  *See* 905 F.3d at 403.  Accordingly, I find that the NJWHL does not incorporate the federal Portal-to-Portal Act and, as such, time spent in mandatory security screenings at the end of the workday is compensable under the NJWHL.

### C.     Time spent on meal breaks during the course of the workday is not required to be counted as "hours work" under the NJWHL.

The Court does not reach the same conclusion with respect to time spent on meal breaks during the course of the workday.  Plaintiff asserts that she "has plausibly alleged that she . . . [is] unable to leave [her] place[] of work during meal breaks due to [Amazon]'s 'mandatory security

screenings, the vastness of [Amazon]'s parking lots, and the remoteness of [Amazon]'s facilities.'" (Pl. Opp. at 17 (quoting FAC at ¶¶ 40-41.)  However, unlike in the case of mandatory security screenings *at the end of the workday*, which are required to be taken in order to exit Amazon's premises and serve only to benefit Amazon, the act of undergoing a security check *during the course of the workday* is the consequence of an employee's choice to take his or her meal break outside of Amazon's premises and serves primarily to benefit the employee.  Indeed, the employee's choice to exit Amazon's premises in the middle of a work shift serves no benefit upon Amazon.  Because Plaintiff does not sufficiently allege that she is "required" to exit Amazon's premises (and thereby undergo a security screening) in order to take meal breaks, or that the consequences of such choice serves to primarily benefit Amazon, any time spent during her meal breaks is not time spent at the her "place of work."  *Cf. Babcock v. Butler Cty.*, 806 F.3d 153, 158 (3d Cir. 2015) (holding that, under the FLSA, employees were not entitled to compensation during meal breaks where employees—rather than their employer—"receive[d] the predominant benefit of the time in question").  Accordingly, time spent on meal breaks during the course of the workday is not required to be counted towards "hours worked" under N.J.A.C. 12:56-5.2(a).[3]

---

[3]     In her opposition brief, Plaintiff cites to three "opinion letters," which Plaintiff contends are from the New Jersey Department of Labor ("NJDOL") and "are to be regarded as 'official administrative interpretation[s]' and given deference." (Pl. Opp. Br. at 8.)  In the three opinion letters, which are over 30-years old and less than a page in length, the NJDOL states that it has been asked to address whether "unpaid lunch periods for employees who are not permitted to leave the [employer's] premises during their lunch period" are compensable under the NJWHL.  (*See* Decl. of  Matthew Miller, Ex. A.)  After citing to N.J.A.C. 12:56-5.2, the NJDOL advises in each letter that such "time would . . . be compensable."  (*Id.*)  The Court finds that these "opinion letters" are not entitled to any deference.  The letters are cursory and offer no supporting legal analysis; they are not on official letterhead or issued by agency counsel; two of the three letters are completely unsigned; and the letters provide little in the way of explanation for how the agency arrived at its interpretation of the regulation.  In short, the letters are wholly lacking in the "power to persuade," which is required for an agency interpretation to be given deference.  *See Big M, Inc. v. Tex. Roadhouse Holding, LLC*, 1 A.3d 718, 722 (N.J. App. Div. 2010) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *accord, e.g., Nutley Policemen's Benevolent Ass'n Local #33 v. Twp. of Nutley*, 16 A.3d 453, 457 (N.J. App. Div. 2011).

14

IV.    **CONCLUSION**

In summary, I find that, as pleaded, (1) time spent undergoing mandatory security screenings at the end of the workday must be counted as "hours worked" when calculating wages under the NJWHL; (2) the NJWHL does not incorporate the federal Portal-to-Portal Act, such that mandatory post-shift security screenings are not excluded as "postliminary" activities; and (3) time spent on meal breaks during the course of the workday is not required to be counted as "hours worked" under the NJWHL.  Accordingly, Amazon's motion for judgment on the pleadings is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's claim seeking compensation for time spent on meal breaks during the course of the workday (Count Two) is dismissed; however, this case will proceed on Plaintiff's claim seeking compensation for time spent undergoing mandatory security screenings at the end of the workday (Count One).  An appropriate Order accompanies this opinion.

DATED:  June 29, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

15