MORGAN, LEWIS & BOCKIUS LLP
(A Pennsylvania Limited Liability Partnership)
502 Carnegie Center
Princeton, New Jersey 08540-7814
Richard G. Rosenblatt
Joseph A. Nuccio
Phone: (609) 919-6600
Fax: (609) 919-6701
*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIANE VACCARO, | Civil Action No. 3:18-11852 (FLW) (TJB) |
| Plaintiff, | |
| v. | |
| AMAZON.COM.DEDC, LLC, | **Electronically Filed** |
| Defendant. | **Motion Day: December 7, 2020** |

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................... ii

II.     BACKGROUND .............................................................................3

III.    STANDARD OF REVIEW..............................................................4

IV.     ARGUMENT...................................................................................5

        A.      Courts widely recognize that time spent protecting employees'
                health and safety is not primarily for the employer's benefit. .............7

        B.      New Jersey has encouraged and now requires COVID
                screenings to protect employees and the broader public...................10

V.      CONCLUSION.............................................................................14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Armour & Co. v. Wantock*,
  323 U.S. 126 (1944) ................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................4

*Bonilla v. Baker Concrete Construction, Inc.*,
  487 F.3d 1340 (11th Cir. 2007) ..........................................13

*Farrell v. FedEx Ground Package Sys., Inc.*,
  2020 WL 6054530 (D.N.J. July 10, 2020) .........................6

*Gibbs v. City of New York*,
  87 F. Supp. 3d 482 (S.D.N.Y. 2015) .............................8, 10

*Gorman v. Consolidated Edison Corp.*,
  488 F.3d 586 (2d Cir. 2007) ................................................13

*Leone v. Mobil Oil Corp.*,
  523 F.3d 1153 (D.C. Cir. 1975) ...........................................9

*Makinen v. City of New York*,
  53 F. Supp. 3d 676 (S.D.N.Y. 2014) ...................................8

*Nieves v. Lyft, Inc.*,
  2018 WL 2441769 (D.N.J. May 31, 2018) ..........................4

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) .............................................11

*Singh v. City of New York*,
  524 F.3d 361 (2d Cir. 2008) .................................................7

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,
  321 U.S. 590 (1944) ............................................................1, 5

# <u>TABLE OF AUTHORITIES</u>

**Page**

*Wheat v. J.B. Hunt Transport, Inc.*,
2016 WL 1397673 (C.D. Cal. 2016) ....................................................................8

**STATUTES**

Fair Labor Standards Act ("FLSA")
29 U.S.C. §201 et seq. ...........................................................................5, 9, 10

New Jersey Wage and Hour Law ("NJWHL")
N.J.S.A. 34:11-56a et seq. ...........................................................................passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ................................................................4

Federal Rule of Civil Procedure 15(a)(2) ................................................................4

N.J.A.C. 12:56-5.1 ........................................................................................5

N.J.A.C. 12:56-5.2 ........................................................................................5

## I.   __INTRODUCTION__

Plaintiff Diane Vaccaro seeks leave to file a proposed Second Amended Complaint ("SAC") to add a claim that Defendant Amazon.com Services, LLC[1] ("Amazon") must pay employees for the short time they allegedly spend receiving COVID-19 screenings.  The Court should deny the motion because the proposed amendment is futile.  COVID screenings are not compensable because they are not "work" within the meaning of the New Jersey Wage and Hour Law ("NJWHL").

As this Court held in resolving Amazon's motion for judgment on the pleadings ("MJOP"), "work" under the NJWHL must primarily benefit the employer.  MJOP Op. at 8 (citing *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)).  COVID screenings do not satisfy that requirement and are completely unlike the security screenings that, according to this Court's review of the allegations in Plaintiff's First Amended Complaint ("FAC"), do not "benefit any person or entity other than Amazon." *Id.* at 9.[2]  On the contrary,

---

[1]    Amazon.com.dedc, LLC was merged into Amazon.com Services LLC and no longer exists.

[2]    As this Court is aware, *see* MJOP Op. at 9 n.2, Amazon disputes that time employees spend passing through a security screening apparatus is primarily for Amazon's benefit:  express lanes and Amazon-provided lockers allow employees to minimize any such time to a negligible amount, and if they reject that opportunity because they prefer to bring personal items into the workplace for their own convenience, their screening time is not compensable.  Amazon also respectfully disagrees with the Court's rejection of Amazon's other arguments.  But while reserving all rights to pursue these and other arguments

by attempting to prevent community transmission of a highly contagious and potentially deadly disease, COVID screenings predominantly protect the health of employees, their families, and the broader public.  Precisely for that reason, New Jersey law obligates Amazon to conduct daily, pre-shift health screenings of employees to prevent the presence of COVID-infected individuals in the workplace. Courts widely hold that time spent in screenings that protect employees' own health and safety or fulfill freestanding legal requirements are not primarily for the employer's benefit.  Those holdings make perfect sense, especially in the current public health crisis—and Plaintiff does not identify any authority upholding the viability of comparable claims.

Indeed, to undersigned counsel's knowledge, no court in the country has held that employers must pay extra compensation if they attempt to use workplace COVID screening to slow the spread of this dangerous disease.  And if a court so held, it would be incorrect.  The Court should reject Plaintiff's invitation to misapply the law and to create precedent that would fly in the face of public policy urging and even compelling employers to screen employees for COVID-19.

---

as the litigation unfolds, Amazon recognizes that there is no basis for relitigating these issues in the current procedural posture.  Even so, Plaintiff's motion is futile.

## II.   <u>BACKGROUND</u>

As this Court is aware, this dispute arises under the NJWHL.  Plaintiff worked at an Amazon fulfillment center in New Jersey.  FAC ¶ 8.  She alleged that Amazon required her to pass through a security screening after clocking out at the end of each shift and that such time counts as compensable work under the NJWHL.  FAC ¶¶ 32-33, 49.   Separately, she alleged that Amazon owed her compensation because leaving Amazon's premises during her meal breaks required undergoing security screening.  FAC ¶¶ 41-42, 52.

Amazon moved for judgment on the pleadings on both claims.  The Court denied the motion as to the post-shift security screenings claim on the ground that those screenings, as alleged, do not "benefit any person or entity other than Amazon" and are not excluded from the concept of work by virtue of the Portal-to-Portal Act. MJOP Op. at 9.  But the Court granted judgment to Amazon as to the meal break claim on the ground that time spent leaving Amazon's premises for lunch is spent "primarily to benefit the employee."  *Id.* at 14.

Plaintiff now moves to amend the FAC to add a new plaintiff and a new claim. Pl. Br. at 4.  The proposed SAC alleges that Amazon required the new plaintiff, Jennifer Chiu, and a putative class of similarly situated workers, to undergo pre-shift COVID screenings each day at their fulfillment center.  SAC ¶ 49.  The COVID screenings allegedly include taking employees' temperatures and asking whether

they have been exposed to anyone infected by COVID.  SAC ¶ 50.[3]  Amazon allegedly does not compensate employees for the time it takes to perform these alleged COVID screenings, and the proposed SAC claims that the NJWHL requires Amazon to do so.  SAC ¶ 61.

## III.   **STANDARD OF REVIEW**

Generally, a court should freely give leave to amend a complaint when justice so requires.  FED. R. CIV. P. 15(a)(2).  But contrary to Plaintiff's assertion that leave "may be denied only where there is a demonstrable showing of prejudice to an opposing party," Pl. Br. at 5, the parties agree that "a court may deny a plaintiff leave to amend for a variety of reasons, including undue delay, bad faith, dilatory motive, prejudice, and futility," *Nieves v. Lyft, Inc*., 2018 WL 2441769, at *8 (D.N.J. May 31, 2018) (Wolfson, C.J.); Pl. Br. at 6.  The last of those potential reasons is critical here:  a futile amendment "is one that fails to state a claim upon which relief could be granted."  *Nieves*, 2018 WL 2441769, at *8.  Both sides agree that in assessing the futility of a proposed amendment, courts should apply the standards of Rule 12(b)(6).  *Id.*; *see* Pl. Br. at 6.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a plausible claim for relief.  *Ashcroft v. Iqbal*,

---

[3]   Plaintiff's description of the COVID-19 screening process is largely inaccurate, but Amazon recognizes that Plaintiff's misstatements or misunderstandings must be assumed as true for the sake of this motion.

556 U.S. 662, 678 (2009).  A court must accept as true all well-pleaded factual allegations, but not legal conclusions.  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

## IV.  <u>ARGUMENT</u>

The Court should deny Plaintiffs' motion to add a COVID screening claim to this case as futile.  COVID screenings are not compensable because they are not "work" under this Court's interpretation of the NJWHL.

Regulations promulgated under the NJWHL require that employers compensate employees "for all hours worked."  N.J.A.C. 12:56-5.1.  According to these regulations, "hours worked" encompasses "[a]ll the time the employee is required to be at his or her place of work or on duty."  N.J.A.C. 12:56-5.2(a).  In ruling on Amazon's motion for judgment on the pleadings, the Court determined how to construe the regulatory phrase "place of work."  *See* MJOP Op. at 6.  Because neither the regulation nor the New Jersey Supreme Court had defined the term, the Court sought guidance in the federal Fair Labor Standards Act ("FLSA").  *Id.* at 6-8.  In particular, the Court construed the NJWHL in line with U.S. Supreme Court case law defining "work" as "any activity 'controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'"  *Id.* at 8 (quoting *Tenn. Coal*, 321 U.S. at 598).  Based on this FLSA test, the Court held that the NJWHL's concept of work requires both that: "(1) an activity

-5-

is performed that is *controlled or required* by the employer; and (2) such activity serves to *primarily benefit* the employer." *Id.* An activity must meet both of these requirements to qualify as compensable "hours worked" under the NJWHL. *Id.* at 9.[4]

In its Opinion, the Court concluded, based on Plaintiff's allegations, that post-shift security screenings meet the primary-benefit requirement but meal-break screenings do not. *Id.* at 9, 14. It is clear that pre-shift COVID screenings also fail to meet that requirement and are much closer in this respect to meal-break screenings than post-shift screenings. *Cf. Farrell v. FedEx Ground Package Sys., Inc.*, No. CV 19-19973 (FLW), 2020 WL 6054530, at *4 (D.N.J. July 10, 2020) (Wolfson, C.J.) (holding that the Court's NJWHL analysis in this case applies equally to pre-shift screenings and that pre-shift security screenings are compensable if "there is no suggestion" that the screening "benefits any person or entity other than the employer"). Rather than being primarily for Amazon's benefit, COVID screenings predominantly benefit employees' own health—and by extension the public health—by limiting community transmission of a dangerous disease.

---

[4]    Plaintiff ignores this Court's prior holding in insisting that the Court should treat all time that an employee is required to be on the employer's premises as within the NJWHL's definition of "work." Pl. Br. at 8. But the parties vigorously debated that issue in the judgment on the pleadings briefing. *See* Def. MJOP at 4-6. And instead of adopting Plaintiff's proposed definition, the Court squarely adopted the *Tennessee Coal* definition of "work" for NJWHL purposes. MJOP Op. at 8. The Court should not reverse course now.

That is precisely why the State of New Jersey requires "daily health checks of employees" to ensure they do not come to work infected with COVID.  Courts applying a "primary benefit" test in similar circumstances have widely rejected claims to compensation.  And that result is especially sensible in the current public health crisis.  This Court accordingly should deny Plaintiff's proposed amendment as futile.

**A.      Courts widely recognize that time spent protecting employees' health and safety is not primarily for the employer's benefit.**

Plaintiff asserts that COVID screenings primarily benefit Amazon because they help keep employees at work.  Pl. Br. at 9.  But Plaintiff cites no case law supporting this assertion—let alone in any circumstances remotely like the current pandemic.  Contrary to Plaintiff's claims, the health and safety benefits that employees receive from COVID screenings predominate over any economic benefits that Amazon receives.  "[W]hether time is spent predominately for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944); *Singh v. City of New York*, 524 F.3d 361, 367 (2d Cir. 2008) (same).  Numerous cases confirm that activities promoting worker health and safety are not "primarily" for an employer's benefit simply because they allow employees to continue contributing to the employer's operations.

In *Gibbs v. City of New York*, 87 F. Supp. 3d 482 (S.D.N.Y. 2015), for example, the court considered alcohol counseling and treatment sessions that were a condition of employment.  The court recognized that while an employer obviously derives a benefit from having sober employees, such generic and indirect benefits are "not the kinds of benefits that courts have recognized as decisive" under *Tennessee Coal*'s primary-benefit requirement.  *Id.* at 493.  At the same time, such treatment programs greatly benefit employees by helping alleviate possible alcohol dependency and preventing them from being fired, and that is in fact their purpose.  *Id.* at 495; *see also Makinen v. City of New York*, 53 F. Supp. 3d 676, 698-99 (S.D.N.Y. 2014) (holding that an employer-mandated alcohol treatment program was not "necessarily and primarily" for the employer's benefit because, among other reasons, the employees benefited from the treatment and were the "*intended beneficiaries of the treatment*").

The court reached a similar conclusion in *Wheat v. J.B. Hunt Transport, Inc.*, 2016 WL 1397673 (C.D. Cal. 2016).  There, a truck driver showed potential signs of sleep apnea, and consistent with federal regulations her employer required her to undergo sleep apnea testing and treatment.  *Id.* at *2.  The court rejected the plaintiff's argument that time she spent in sleep apnea testing constituted compensable work under the *Tennessee Coal* definition.  *Id.* at *3.  Among other problems, the plaintiff received the testing "primarily for her own benefit, not

Defendant's." *Id.* at *4. Although her employer did, of course, "benefit from employing healthy drivers who minimize the risk of road accidents," the court reasoned that "that benefit is incidental" because "[t]he intended and primary beneficiary of the sleep study" was the plaintiff herself. *Id.*

These recent district court rulings are consistent with longstanding appellate authority as well. Courts applying the *Tennessee Coal* test have long recognized "that furthering industrial safety benefits the employer." *Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1163 (D.C. Cir. 1975) (finding time employees spent inspecting the workplace for violations of Occupational Safety and Health Act ("OSHA") standards was not compensable "work"). But that type of benefit "does not require a finding that the activity is *primarily* for the employer's benefit." *Id.* On the contrary, "[m]any activities which may increase employee effectiveness and thus benefit the employer are not worktime activities under [the] FLSA" and, by extension, the *Tennessee Coal* definition of "work." *Id.*

Together, these cases show that activities meant to protect employee health and safety are not "primarily" for the employer's benefit simply because they may help enable employees to keep working productively for the employer. That conclusion applies with even greater force to COVID screenings on the jobsite. Unlike alcohol dependency, sleep apnea, or OSHA compliance, COVID is a highly infectious and dangerous disease that can easily spread through a community, if the

proper safety protocols are not in place.  *See* SAC ¶ 44 (noting that COVID is highly infectious).  Instead of simply requiring contagious employees to self-identify and not attend work, thereby placing the burden of screening on them, conducting workplace COVID screenings protects employees—as well as their families and the public—to a far greater degree.  Wage and hour law should not discourage employers from taking this type of proactive measure to protect their employees and the greater public.  And it doesn't.  Wage and hour law takes such "practical concerns" into account.  *Gibbs*, 87 F. Supp. 3d at 497 ("To hold that the FLSA requires an employer to compensate in the circumstances of this case would risk creating a material disincentive to the growing use of employee assistance programs[.]").  This Court should make it as easy as possible for employers to provide these screenings.  It should not hold that employers must pay extra to conduct these screenings and combat the spread of COVID-19.

### B.    New Jersey has encouraged and now requires COVID screenings to protect employees and the broader public.

In addition to relying on the authorities just discussed, the Court should take judicial notice of the fact that New Jersey law has encouraged—and, indeed, now *requires*—Amazon and other employers in the State to perform daily COVID screenings under executive orders from the Governor.  Since March 16, 2020, the Governor's executive orders have "requir[ed] every effort to reduce the rate of community spread of the disease" and encouraged employers to "adhere to …

guidelines" and "social mitigation strategies" from the Centers for Disease Control and Prevention ("CDC"), which include CDC recommendations to "employers to establish policies and practices" to mitigate such spread among and between employees.[5]  Those CDC guidelines have specifically included recommendations to "conduct[] daily in-person or virtual health checks (e.g., symptom and/or temperature screening) of employees" since at least May 6, 2020.[6]  And most recently, by New Jersey Executive Order No. 192 dated October 28, 2020,[7] the State now requires employers, before each shift, to "conduct daily health checks of employees, such as temperature screenings, visual symptom checking, self-assessment checklists, and/or health questionnaires, consistent with CDC guidance, including latest CDC guidance regarding COVID-19 symptoms."  *Id.* at 8.  Employers must also "immediately separate and send home employees who appear

---

[5]     *See* New Jersey Executive Order Nos. 104, 107 (available at https://nj.gov/ infobank/eo/056murphy/pdf/EO-104.pdf      and      https://nj.gov/infobank/eo/ 056murphy/pdf/EO-107.pdf).  Although not mentioned in the proposed SAC, the Court may take judicial notice of executive orders and CDC guidelines referenced herein because they are a matter of public record.  *See, e.g.*, *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[6]     *See* Interim Guidance for Businesses and Employers Responding to Coronavirus Disease 2019 (COVID-19), May 2020 (available at https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html).

[7]     The executive order is available at https://nj.gov/infobank/eo/056murphy/pdf/ EO-192.pdf.

to have symptoms, as defined by the CDC, consistent with COVID-19 illness upon arrival at work or who become sick during the day." *Id.* These executive orders and CDC guidelines heighten the futility of Plaintiff's new allegations.

In particular, these executive orders and CDC guidelines confirms that COVID screenings primarily protect employees and the public. The Governor explained that imposing these requirements is "necessary to ensure broad application of relevant health and safety standards to *protect workers across all industries.*" *Id.* at 2 (emphasis added). Especially "given the recent upticks in the rate of reported new cases across all counties in the State, the use of mandatory health and safety protocols for all industries can help guard against continuing spread and *ensure that New Jersey's workers feel safe* and supported at their places of work." *Id.* (emphasis added). New Jersey's employers must conduct COVID screenings and follow other safety requirements "*to protect employees,* customers, and all others who come into physical contact with [the employer's] operations." *Id.* at 3 (emphasis added). In short, the Governor stated—three times—that the purpose of employer-conducted COVID screenings is to protect employees and the public. These developments confirm that COVID screenings like Amazon's are not intended primarily to benefit employers like Amazon and therefore do not qualify as compensable work.[8]

---

[8]    Although the executive order did not take effect until November 5, 2020, its account of the purpose of COVID screenings—protecting employees and the public from infection—has applied ever since the pandemic began.

In addition, the case law underscores that where activities are legally obligatory because of public interests, those activities are not primarily for the employer's benefit and thus not compensable.  For instance, in *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007), the court ruled that time that airport construction workers spent in federally mandated airport security screenings was not compensable.  Although the case was governed by the Portal-to-Portal Act, it turned on the requirement that "the activity primarily benefit[] the employer," and its reasoning applies equally here:

> In this case, the screening was required by the [Federal Aviation Administration], and appellee had no discretion as to whether its employees would be screened.  *See* 49 C.F.R. § 1540.17; *see also* Civil Aviation Security Rules, 67 Fed.Reg. 8340 at 8354 (Feb. 22, 2002).  So although the screening was necessary for the employees to perform their work, appellee did not primarily—or even particularly—benefit from the security regime.

*Id.*; *see also Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 589 (2d Cir. 2007) (time spent by employees going through nuclear power plant security, required of all individuals entering plant (including visitors) to ensure security of facility, is non-compensable).  Here too, the fact that the New Jersey and federal governments have encouraged COVID screening throughout the period of time at issue—and, most recently, legally mandated it—precludes any inference that it primarily benefits Amazon, regardless of whether the screening is necessary for employees to perform their work.

-13-

## V.    <u>CONCLUSION</u>

For all these reasons, the court should deny the motion to amend the complaint

as futile.  Because COVID screenings are not primarily for Amazon's benefit, they

cannot qualify as "work" within the meaning of the NJWHL.


Dated:  November 23, 2020                    Respectfully submitted,

                                             MORGAN, LEWIS & BOCKIUS LLP

                                             *s/ Joseph A. Nuccio*
                                             Richard G. Rosenblatt
                                             Joseph A. Nuccio
                                             502 Carnegie Center
                                             Princeton, New Jersey 08540
                                             Telephone: (609) 919-6600
                                             Facsimile: (609) 919-6701
                                             richard.rosenblatt@morganlewis.com
                                             joseph.nuccio@morganlewis.com
                                             *Attorneys for Defendant*