## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIANE VACCARO, on behalf of herself and those similarly situated, | Civil Action No. 18-11852 (FLW) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| AMAZON.COM.DEDC, LLC, | |
| Defendant. | |

**BONGIOVANNI, United States Magistrate Judge**

Currently pending before the Court is named plaintiff Diane Vaccaro's ("Plaintiff's") motion to amend the pleadings. (Docket Entry No. 47). Defendant Amazon.com.dedc, LLC[1] ("Defendant") has opposed Plaintiff's motion on futility grounds. The Court has fully reviewed the arguments made in support of and in opposition to Plaintiff's motion. The Court considers Plaintiff's motion to amend without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Plaintiff's motion to amend is GRANTED.

## I.    BACKGROUND AND PROCEDURAL HISTORY

This is a putative class action brought by current and former employees against Defendant seeking compensation under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et seq.*, for time spent undergoing mandatory post-shift security screenings at Amazon facilities in New Jersey and for time spent on meal breaks. On May 11, 2015, Plaintiff filed the instant action in the Superior Court of New Jersey, Mercer County, and on July 19, 2018, Defendant removed the case to this Court. (Docket Entry No. 1).

---

[1] Amazon.com.dedc, LLC has merged into Amazon.com Services LLC and no longer exists. (Defendant's Brief in Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint, Docket Entry No. 50, at n.1).

On June 29, 2020, the District Court granted in part and denied in part Defendant's motion for judgment on the pleadings. (Docket Entry Nos. 42, 43). The District Court denied Defendant's motion with respect to the post-shift security screenings but dismissed Plaintiff's claim regarding unpaid meal breaks. (*Id.*)

The Initial Pretrial Conference was held on August 18, 2020, and the parties were directed to proceed with the first phase of a bifurcated discovery process. (Docket Entry No. 46).

Plaintiff now seeks leave to file a Second Amended Complaint ("SAC") to add an additional named plaintiff, Jennifer Chiu, and a claim that Defendant failed to pay Ms. Chiu and putative class members for pre-shift COVID-19 screenings at Defendant's warehouses or "fulfillment centers." (Plaintiff's Brief in Support of Plaintiff's Motion for Leave to File Second Amended Complaint ("Pl. Brief"), Ex. A, Docket Entry No. 47). Defendant opposes the motion, arguing that the amendments are futile because "COVID screenings are not compensable because they are not 'work'" under the NJWHL. (Defendant's Brief in Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint ("Def. Brief") at 1, Docket Entry No. 50).

## II.   THE PARTIES' ARGUMENTS

### A.  Plaintiff's Arguments

The SAC alleges that proposed named plaintiff Chiu was required to "submit to COVID-19 screenings on Defendant's premises prior to clocking in" that included having her temperature taken and answering questions "including but not limited to whether [she has] been in contact with any person infected by COVID-19." (Pl. Brief, Ex. A, ¶¶ 49-50). Chiu and other employees of Defendant who were and are subject to such screenings were/are not compensated for this time at a fulfillment center. (*Id.*, ¶¶ 51-52).

Plaintiff argues that the pre-shift COVID screenings fit the definition of "work" that applies to the NJWHL. (Pl. Brief at 4).  The NJWHL requires employers to pay for "[a]ll time the employee is required to be at his or her place of work or on duty."  N.J.A.C. 12:56-5.2(a).  The District Court interpreted the phrase "place of work" in its decision on Defendant's motion for judgment on the pleadings.  *Vaccaro v. Amazon.com.dedc, LLC*, CV 18-11852 (FLW), 2020 WL 3496973, at *3-6 (D.N.J. June 29, 2020) (Docket Entry No. 42, hereinafter "MJOP Opinion").  Noting the lack of guidance from NJWHL regulations or the New Jersey Supreme Court, the District Court looked to the Fair Labor Standards Act ("FLSA") and its regulations, finding that the phrase "place of work" means "any place where the following two prongs are met: (1) an activity is performed that is *controlled or required* by the employer; and (2) such activity serves to *primarily benefit* the employer."  (MJOP Opinion at 8) (emphasis in original).  NJWHL regulations also provide that "[w]hen employees are not required to remain on the employer's premises and are free to engage in their own pursuits . . . the hours shall not be considered hours worked."  N.J.A.C. 12:56-5.6.  Plaintiff argues that the adopted definition of "place of work" and the NJWHL regulation's requirement that employees be compensated when they are required to be at the employer's premises make the pre-shift COVID-19 screenings compensable work.  (Pl. Brief at 9).

With respect to the second prong of the definition of "place of work," Plaintiff argues that the COVID screenings also primarily benefit Defendant.  (Pl. Brief at 9).  Analogizing to the post-shift security screenings that the Court found were primarily for Defendant's benefit, Plaintiff asserts that Defendant implemented the screenings to keep the virus from spreading among employees of its fulfillment centers and resulting in high rates of absenteeism due to infection or exposure – or even the closure of those centers.  (*Id.*; Plaintiff's Reply Brief in Further Support of

Plaintiff's Motion for Leave to File a Second Amended Complaint ("Pl. Reply Brief") at 2, Docket Entry No. 51).  In fact, Plaintiff states, "Maintaining continued operations for Defendant is its singular motive; otherwise, if safety predominated, Defendant could most effectively keep its workers safe if it closed the facility during the pendency of the pandemic."  (Pl. Reply Brief at 2).

Plaintiff analogizes to the Supreme Court's decision in *Steiner v. Mitchell*, 350 U.S. 247 (1956), where the Court found that battery plant workers had to be paid for post-shift showers at their employer's premises because they were exposed to toxic chemicals including lead.  To protect the workers and their families, the workers were required shower, and this was compensable work. *See id.* at 249-53.  Plaintiff argues that if the post-shift showers were compensable where they protected the employees and families from exposure to toxic chemicals and were required by law to be provided, then the pre-shift COVID screenings required by Defendant should be compensable.  (Pl. Reply Brief at 4-5).

"At a minimum," Plaintiff argues that the proposed claim should survive at this stage of litigation and discovery should be permitted into who primarily benefits from the COVID-19 screenings.  (Pl. Reply Brief at 6).

**B. Defendant's Arguments**

Defendant argues that the pre-shift COVID-19 screenings are not "work" under the NJWHL because work must primarily benefit the employer; therefore, Plaintiff's proposed amendments to the First Amended Complaint are futile.  (Def. Brief at 1).  It distinguishes the post-shift security screenings that the MJOP Opinion found "do not 'benefit any person or entity other than Amazon." (*Id.*).  Instead, Defendant argues, the COVID screenings "predominantly" protect, employees, their families, and the general public.  (*Id.* at 2, 6).  The health and safety benefits of the screenings "predominate over" the economic benefits Amazon receives from

preventing absenteeism and keeping its facilities open.  (*Id.*at 7).  Defendant asserts, however, that "whether time is spent predominately for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case."  (*Id.*) (internal quotations and citations omitted).

On this main point of whether the COVID screenings primarily benefit Defendant, it analogizes to cases where courts found that time employees spent on employer-required alcohol and drug counseling and treatment or sleep apnea testing and treatment was not primarily for the employer's benefit.  Although employers do benefit from having workers who are not dependent on alcohol or drugs or suffering from untreated sleep apnea, courts did not find that they were the primary beneficiaries of these activities.  (Def. Brief at 8-9, citing *Wheat v. J.B. Hunt Transport, Inc.*, 2016 WL 1397673 (C.D. Cal. 2016); *Gibbs v. City of New York*, 87 F. Supp. 3d 482 (S.D.N.Y. 2015); *Makinen v. City of New York*, 53 F. Supp. 3d 676 (S.D.N.Y. 2014)).

In fact, Defendant relies on the fact that New Jersey law first encouraged and now requires daily COVID screenings to support its argument that COVID screenings do not primarily benefit the employer.  Defendant cites to the Governor's executive orders since March 16, 2020 encouraging employers to adhere to guidelines from the Centers for Disease Control and Prevention ("CDC"), including recommendations to conduct daily health checks to screen employees for fevers and other symptoms since at lease May 6, 2020.  By New Jersey Executive Order No. 192, dated October 28, 2020, New Jersey requires employers to "conduct daily health checks of employees, such as temperature screenings, visual symptom checking, self-assessment checklists, and/or health questionnaires, consistent with CDC guidance, including latest CDC guidance regarding COVID-19 symptoms."  (*Id.* at 10-11).  Employers are directed to send employees with symptoms home from work.  (*Id.* at 11-12).  Defendant cites statements from these executive orders to show how such screenings protect employees and the public.  (*Id.* at 12).

Defendant accordingly cites cases where time spent in legally-required screenings was not considered compensable work. (*Id.* at 13).

Defendant also argues that wage and hour laws do not and should not "discourage employers from taking this type of proactive measure" and potentially reduce efforts to prevent the spread of COVID-19. (*Id.* at 10). "[T]o undersigned counsel's knowledge, no court in the country has held that employers must pay extra compensation if they attempt to use workplace COVID screening to slow the spread of this dangerous disease." (*Id.* at 2).

## III.  ANALYSIS

### A.  Standard of Review

Pursuant to Rule 15(a)(2), leave to amend the pleadings is generally granted freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman*, 371 U.S. at 182; *see Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2002). However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). Here, the Court focuses on futility because that is the basis for Defendant's opposition to this motion.

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). To determine if an amendment is "insufficient on its face," the Court utilizes the motion to dismiss standard under Rule 12(b)(6)

(*see In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002); *Alvin*, 227 F.3d at 121) and considers only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the party's claims are based upon same.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

To determine if a complaint would survive a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the facts alleged in the pleading, draw all reasonable inferences in favor of the plaintiff, and determine if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The focus is not on "'whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Bell Atl. Corp.*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)).  Additionally, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

**B.  Discussion**

In the absence of guidance from New Jersey courts about whether time spent undergoing securities screenings is compensable or whether the NJWHL incorporates the federal Portal-to-Portal Act's exclusions regarding "post liminary" activities, the District Court predicted that the New Jersey Supreme Court would resolve the issues in Defendant's motion for judgment on the pleadings by holding that (1) time spent in the security screenings is "time the employee is required to be at his or her place of work" under the NJWHL and therefore compensable work; (2) the NJWHL does not incorporate the federal Portal-to-Portal Act and therefore "mandatory security screenings at the end of the workday are not excluded as 'postliminary' activities"; and (3) meal breaks during the workday are not time spent at the employee's "place of work" and therefore not compensable.  (MJOP Opinion, at 5-6).

Under the NJWHL regulations, "[a]ll the time the employee is required to be at his or her place of work or on duty shall be counted as hours worked."  N.J.A.C. 12:56-5.2(a).  In the absence of guidance on how to define the phrase "place of work," the Court looked to the FLSA to interpret the phrase because the NJWHL is patterned after the federal statute.  (*Id.* at 7-8).  Under the FLSA, the term "work" has been defined by the U.S. Supreme Court "as any activity 'controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'"  (*Id.* at 8, citing *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)).  The Court then used this definition to define "place of work" under N.J.A.C. 12:56-5.2(a) to mean "any place where the following two prongs are met: (1) an activity is performed that is *controlled or required* by the employer; and (2) such activity serves to *primarily benefit* the employer."  (*Id.*) (emphasis in original).

Under this definition, the Court found the mandatory security screenings to be compensable work since "there is no suggestion that the security screenings at the end of the workday benefit any person or entity other than Amazon."  (*Id.* at 9).

Congress amended the FLSA through the Portal-to-Portal Act of 1947 to narrow the Supreme Court's "expansive definitions" of the terms "work" and "workweek."  (*Id.* at 10).  The Portal-to-Portal Act excluded "activities which are preliminary to or postliminary to said principal activities [which such employee is employed to perform], which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."  (*Id.* at 10, citing 29 U.S.C. § 254(a)).  The District Court held, however, that "the New Jersey legislature did not intend to incorporate the Portal-to-Portal Act's exclusions for 'preliminary' and 'postliminary' activities into the NJWHL" because the NJWHL and its regulations do not cite Section 7 of the FLSA, which was amended by the Portal-to-Portal Act, and provisions in the NJWHL regulations conflict with the Portal-to-Portal Act.  (*Id.* at 12-13).  Therefore, the Portal-to-Portal Act's exclusion does not apply, and the mandatory security screenings are compensable under the NJWHL.  (*Id.* at 13).

With respect to the meal breaks, however, the Court found that they were not compensable work.  Employees are not required to leave their place of work for meal breaks (and go through a security screening).  A decision to do so "serves primarily to benefit the employee."  (*Id.* at 14).  Meal breaks benefit the employees, and any desire to leave the premises does not change that fact.  Therefore, the Court held that time spent on meal breaks during the workday is not considered "hours worked" under N.J.A.C. 12:56-5.2(a).  (*Id.*)

In this motion to amend, where it is clear that the mandatory pre-shift COVID-19 screenings are "controlled or required by the employer," the question is whether they "primarily benefit the employer" under the second prong of the Court's definition for "place of work" under N.J.A.C. 12:56-5.2(a).[2]  Plaintiff argues that the screenings primarily benefit Defendant since they will reduce absenteeism due to COVID spreading or required quarantines and prevent an entire facility from closing due to an outbreak.  Defendant argues that these screenings primarily benefit employees and the broader public by protecting them from the highly contagious virus, as shown by the Governor's encouragement and then requirement that it undertake such screenings based on CDC guidance.  Defendant admits, however, that the question of whether an activity is primarily for the employer's benefit or the employee's benefit "is a question dependent upon all the circumstances of the case."  (Def. Brief at 7, citing *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)).

As a result, Plaintiff is entitled to discovery on this issue, and the proposed amendment is not futile.

## IV.  CONCLUSION

For the reasons stated above, Plaintiff's motion to amend is GRANTED.  An appropriate Order follows.

Dated:  March 17, 2021

s/ Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] The issue is the same whether the screenings take place pre-shift or post-shift.  *See Farrell v. FedEx Ground Package System, Inc.*, 478 F.Supp.3d 536, 543 (D.N.J. 2020) (finding the "distinction [between pre-shift and post-shift screenings] does not make a meaningful difference").