MORGAN, LEWIS & BOCKIUS LLP
(A Pennsylvania Limited Liability Partnership)
502 Carnegie Center
Princeton, New Jersey 08540-7814
Richard G. Rosenblatt
Joseph A. Nuccio
Phone: (609) 919-6600
Fax: (609) 919-6701
*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIANE VACCARO and JENNIFER CHIU, | Civil Action No. 3:18-11852 (FLW) (TJB) |
| Plaintiffs, | **Oral Argument Requested** |
| v. | |
| AMAZON.COM.DEDC, LLC, | **Electronically Filed** |
| Defendant. | **Motion Day: December 6, 2021** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS............................4

    A. Plaintiff Worked As An Amazon Employee At Three Amazon Facilities Between 2016 And 2020. ...................................................4

    B. Plaintiff And Her Co-Workers Had Multiple Security Screening Options Permitting Them To Leave The Building With No Delay..................................................................................................5

    C. In 2020, Amazon Implemented COVID-19 Initiatives To Ensure Its Employees' Health And Safety, Including Temperature Checks (Which Take A Few Seconds)................................................7

    D. Plaintiff's Pay, Punch-In, And Entrance-And-Exit-Swipe Data Show She Suffered No Damages In 2020..........................................9

III. ARGUMENT.......................................................................................11

    A. The Applicable Legal Standard.........................................................11

    B. This Court's Prior Rule 12(c) Analysis (Based Solely On The Allegations Of The Complaint) Demonstrates That The Court Now Should Enter Judgment Against Plaintiff's Security Screening Claim. ..............................................................................12

    C. The Court Should Dismiss Plaintiff's Claim For Overtime Based On COVID-19 Temperature Checks For Multiple Reasons.............16

        a. *Plaintiff's overtime claim based on COVID-19 temperature checks fails because she suffered no damages.*...16

        b. *Even if Amazon had not already paid Plaintiff above and beyond any statutory requirement, her temperature screening claim would still fail because time passing through such screening is not compensable "work."*..............18

    D. Even if Plaintiff Had Alleged Facts Sufficient To Support Any Valid Claim Under The NJWHL, Her Claims Would Still Fail Under The *De Minimis* Doctrine.......................................................27

IV. CONCLUSION....................................................................................31

# TABLE OF AUTHORITIES

Page(s)

CASES

*Adeva v. Intertek USA, Inc.*,
  2010 WL 97991 (D.N.J. Jan. 11, 2010)............................................................11

*Albanese v. Bergen County, New Jersey*,
  991 F. Supp. 410 (D.N.J. 1998)..........................................................17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..........................................................11

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946)..........................................................28

*Armour & Co. v. Wantock*,
  323 U.S. 126 (1944)..........................................................21

*Bamonte v. City of Mesa*,
  598 F.3d 1217 (9th Cir. 2010) ..........................................................15

*Besler v. Bd. of Educ. of West Windsor-Plainsboro Regional Sch. Dist.*,
  201 N.J. 544 (2010) ..........................................................29

*Bonilla v. Baker Concrete Construction, Inc.*,
  487 F.3d 1340 (11th Cir. 2007) ..........................................................26-27

*Cazares v. Host Int'l, Inc.*,
  --- Fed. Appx. ----, 2021 WL 3667227 (9th Cir. Aug. 18, 2021)......................27

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..........................................................11

*Colosimo v. Flagship Resort Dev. Corp.*,
  2021 WL 1207484 (D.N.J. Mar. 31, 2021) ..........................................................17-18

*Conopco, Inc. v. McCreadie*,
  826 F. Supp. 855 (D.N.J. 1993)..........................................................16

*Falzo v. Cnty. of Essex*,
  2008 WL 2064811 (D.N.J. May 14, 2008)..........................................................17

## TABLE OF AUTHORITIES

**Page(s)**

*Farrell v. FedEx Ground Package Sys., Inc.*,
  2020 WL 6054530 (D.N.J. July 10, 2020) ........................................................19

*Genarie v. PRD Mgmt, Inc.*,
  2006 WL 436733 (D.N.J. Feb. 17, 2006) ..........................................................28

*Gibbs v. City of New York*,
  87 F. Supp. 3d 482 (S.D.N.Y. 2015) ...........................................................20, 22

*Gorman v. Consolidated Edison Corp.*,
  488 F.3d 586 (2d Cir. 2007) ..............................................................................27

*In the Matter of City of Newark*,
  --- A.3d ----, 2021 WL 4398457 (N.J. App. Div. Sept. 27, 2021).....................22

*Krys v. Aaron*,
  2015 WL 2412558 (D.N.J. May 20, 2015)..........................................................15

*Leone v. Mobil Oil Corp.*,
  523 F.2d 1153 (D.C. Cir. 1975)..........................................................................21

*Levias v. Pac. Mar. Ass'n*,
  760 F. Supp. 2d 1036 (W.D. Wash. 2011) .........................................................28

*Lindow v. United States*,
  738 F.2d 1057 (9th Cir. 1984) ............................................................................29

*Makinen v. City of New York*,
  53 F. Supp. 3d 676 (S.D.N.Y. 2014) ..................................................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)............................................................................................12

*Melletz v. Begelman & Orlow, PC*,
  2019 WL 2932644 (N.J. App. Div. July 9, 2019) ..............................................29

*Mitchell v. JCG Indus., Inc.*,
  745 F.3d 837 (7th Cir. 2014) ..............................................................................28

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) .............................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Reich v. Gateway Press, Inc.*,
   13 F.3d 685 (3d Cir. 1994) ....................................................................16

*Rosano v. Twp. of Teaneck*,
   2012 WL 13050594 (D.N.J. Dec. 28, 2012),
   *aff'd*, 754 F.3d 177 (3d Cir. 2014) ............................................... 15-17

*Schlichtman v. N.J. Highway Auth.*,
   243 N.J. Super. 464 (Law Div. 1990)........................................... 28-29

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,
   321 U.S. 590 (1944)........................................... 13, 15, 18, 20-21, 28

*Vance v. Amazon.com, Inc.*,
   852 F.3d 601 (6th Cir. 2017) .....................................................19, 20

*Wheat v. J.B. Hunt Transport, Inc.*,
   2016 WL 1397673 (C.D. Cal. 2016) .......................................... 20-21

*Williams v. Borough of W. Chester, Pa.*,
   891 F.2d 458 (3d Cir. 1989) ...............................................................12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**STATUTES**

Fair Labor Standards Act ("FLSA")
    29 U.S.C. §201 et seq. ..................................................................................2, 13

New Jersey Wage and Hour Law ("NJWHL")
    N.J.S.A. 34:11-56a et seq. ............................................................................passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(c).................................................... 2-3, 12, 15

Federal Rule of Civil Procedure 56 ...................................................................1, 11

N.J.A.C. 12:56-5.2 ...............................................................................................13

Defendant Amazon.com Services LLC[1] ("Amazon" or "Defendant") submits this Memorandum of Law in Support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, for dismissal with prejudice of all claims by Jennifer Chiu ("Plaintiff" or "Chiu") in the Second Amended Complaint ("AC").[2]

## I.   **INTRODUCTION**

There are two primary questions before this Court on summary judgment:

1.     Whether Plaintiff was engaged in compensable work, within the meaning of the New Jersey Wage and Hour Law ("NJWHL"), during her time passing through post-shift security to leave an Amazon fulfillment center at day's end?

2.     Whether Plaintiff was engaged in compensable work, again within the meaning of the NJWHL, during her time passing through a COVID-19 temperature check upon arrival at an Amazon fulfillment center at day's start?

As set forth in this motion, the record evidence confirms that the answer as to both questions is "no" as relates to Plaintiff.

In grappling with the first of these questions on Amazon's original Motion for Judgment on the Pleadings (before the COVID-19 temperature check claim was

---

[1]   Amazon.com.dedc, LLC was merged into Amazon.com Services LLC and no longer exists.

[2]   Amazon is separately and simultaneously moving, without opposition, for dismissal of Plaintiff Diane Vaccaro's claims based on her failure to cooperate in discovery.

added), this Court took guidance from the federal Fair Labor Standards Act ("FLSA") to conclude that the NJWHL's concept of compensable work requires two facts: (1) that an activity is performed that is *controlled or required* by the employer; and (2) that such activity serves to *primarily benefit* the employer. The record before the Court now shows that both Plaintiff's claims indisputably fail this standard and also fail for additional reasons described below.

As to Plaintiff's security screening claim, Amazon has presented undisputed evidence confirming the averments in its Answer (which the Court did not take into account on Amazon's Rule 12(c) Motion). Those proofs establish that Amazon has not "required" *anyone* to undergo any sort of delay while passing through post-shift security screening, and so this claim cannot satisfy part one of the Court's two-part test. Plaintiff admits that she and other Amazon workers used "express lanes" to pass under the security screening metal detectors without breaking stride. She admits that Amazon provided on-site lockers to her and all employees so that they could stow their personal belongings and thus use those express lanes, and that Amazon instructed her and other employees specifically to do so. She admits that passing through security screening was only a matter of a few seconds (even *if* there was a "line" going through the metal detectors) and that employees could and did linger within the facility after passing through security screening to, *e.g.*, access their lockers, use restrooms, or wait or use facilities provided in the on-site break room.

In deciding Amazon's Rule 12(c) Motion, this Court observed that these averments, if proven, would show that Amazon did *not* "require" any employees to spend any time in security screening beyond the time they would be taking anyway to walk out of the facility. The undisputed record now confirms all such facts. Accordingly, post-shift screening time for Plaintiff Chui is not compensable work under the NJWHL.

Plaintiff's temperature check overtime claim is even more flawed. As a threshold matter, Plaintiff has worked exactly *one* week since 2020 (when temperature checks began) where her hours exceeded or even came close to 40 hours for the week. So this temperature check overtime claim can succeed only if she was underpaid that one week. But it is further indisputable that the hours that Amazon paid her for that week encompass *all time she spent within the Amazon facility* – including, of necessity, the on-site temperature checks she claims were unpaid. She therefore has no damages and her claim fails at the threshold. But even if she could show any damages, her claim further fails because COVID-19 temperature checks do not "primarily benefit" Amazon under the second part of the Court's two-part test, but instead are primarily for the benefit of the public and its employees.

Finally, any time that Plaintiff spent in temperature or security screenings that could conceivably satisfy both parts of the two-part test would still be *de minimis* and thus non-compensable even if considered to be work. The undisputed facts and Plaintiff's own testimony show that any time that security or temperature screenings

3

unavoidably add to an employee's entrance or exit cannot realistically be tracked and is a few seconds at most. For this reason, too, Plaintiff's claims cannot succeed.

Accordingly, the Court should enter judgment against Plaintiff's claims in their entirety with prejudice.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.  Plaintiff Worked As An Amazon Employee At Three Amazon Facilities Between 2016 And 2020.

Plaintiff has had three stints as an Amazon employee working at three different Amazon Fulfillment Centers in New Jersey. She first worked at Amazon's Fulfillment Center in Robbinsville ("EWR4"[3]) from August 25, 2016 to April 18, 2017. Statement of Undisputed Material Facts ("Stmt.") ¶ 1.  Later, Plaintiff briefly worked for Amazon as a seasonal employee at its facility in Avenel ("EWR6") from February 1, 2019 until her employment there ended on March 23, 2019. Stmt. ¶ 2. Most recently, Plaintiff worked briefly for Amazon at its Fulfillment Center in Logan Township ("TEB3") between April 8, 2020 and May 23, 2020. Stmt. ¶ 3.

Plaintiff's job responsibilities included stowing and packing products and inventory counting. Stmt. ¶ 4. To perform her job duties, Plaintiff, like other Fulfillment Center associates, did not need to bring on to the warehouse floor any personal items and, therefore, she did not need to carry onto the warehouse floor a

---

[3]   Amazon generally identifies its Fulfillment Centers by reference to a proximate airport which, in this case, is located in Newark, New Jersey ("EWR").

bag or any objects that could set off a metal detector upon exiting the facility. Stmt. ¶ 5.

**B.    Plaintiff And Her Co-Workers Had Multiple Security Screening Options Permitting Them To Leave The Building With No Delay.**

Before April 2020 (when security screening at Amazon fulfillment centers was suspended because of COVID-19), individuals who exited Fulfillment Centers equipped with security screening[4] passed through security apparatus on the way out of the building. Stmt. ¶ 6. During Plaintiff's employment at EWR4, security screening there consisted of eight metal detectors arranged in a row, with employees able to choose which metal detector to use. Stmt. ¶ 8. Three of the metal detectors, designated "express lanes," are intended for and available to individuals not carrying metal objects and without bags or other personal belongings. *Id.* Plaintiff and others could and did pass through security in seconds using the express lanes, walking through without stopping. *Id.* Other metal detectors, called "divestment lanes," are positioned next to long sloped tables for individuals to slide metal items and other personal belongings while passing through screening, if they chose to bring any personal items into the secured area of the facility. Stmt. ¶ 9. Such employees could also walk through without stopping (if, for example, they were only sliding a set of keys down the table); or if they had a bag, a security guard would take only two to

---

[4]   The Avenel facility did not have security screening during Plaintiff's employment there. Stmt. ¶ 7.

three seconds to check it while the employee passed through the metal detector. *Id.* Finally, in March 2018 (toward the end of Plaintiff's employment at EWR4), one lane was equipped with an x-ray conveyor belt that workers could use if they had carried a bag onto the warehouse floor; the process of passing a bag through that belt added only about six seconds to the security screening. Stmt. ¶ 10.

Only if an individual triggered a metal detector (by passing through the metal detector while carrying or wearing metal items) would he or she undergo "secondary screening" – *i.e.*, stepping away from the metal detectors while a security guard uses a metal detector wand to check their person. Stmt. ¶ 11. Plaintiff triggered secondary screening only "once or twice," which were the only occasions where she waited even a few minutes so a guard could conduct the wanding process (during which wait other employees continued to pass through security screening). *Id.*[5] At all other times Plaintiff took only seconds to pass through security screening – two to three seconds when there was no one in front of her, and only an additional three to four seconds (for a total of five to seven seconds) even if there was a "line" with people in front of her also passing through screening. Stmt. ¶ 13. Plaintiff also observed other workers passing through security screening in the same amount of time – *i.e.*, five to seven seconds. Stmt. ¶ 14.

---

[5]   Plaintiff Chiu testified that on one of the occasions that she set off the alarm that it was because she forgot to leave her metal change in her locker, while she could not recall what happened the second time (if there was a second time). Stmt. ¶ 12.

Employees, including Plaintiff, could (and did) reduce the time spent passing through security screening by leaving bags and personal items that could set off the metal detectors in their lockers or cars. Plaintiff testified that employees did not have to bring personal items that could set off the metal detectors into the secure area of the Fulfillment Center and were instructed by Amazon not to do so. Stmt. ¶ 15. Furthermore, between the row of metal detectors and the entrance/exit turnstiles to the facility parking lot, there are banks of lockers where employees can and did leave personal belongings such as keys, phones and other metal objects before entering the secured area of the facility. Stmt. ¶ 16.

After clocking out at the end of their shift, Amazon employees like Plaintiff are free to engage in personal activities, such as talking to colleagues, waiting for carpool colleagues, using a break room, using on-site computers and electronic entertainment devices provided by Amazon, going to lockers, or using the restroom either before or after walking through security. Stmt. ¶ 17.

C.   **In 2020, Amazon Implemented COVID-19 Initiatives To Ensure Its Employees' Health And Safety, Including Temperature Checks (Which Take A Few Seconds).**

In response to the COVID-19 pandemic that began in 2020, Amazon implemented a wide variety of "COVID-related initiatives to keep employees safe" with the "top priority [of] ensuring the health and safety of [its] employees." Stmt. ¶ 18. These included investments in safety measures such as personal protective

equipment (including masks, gloves, and sanitizer), enhanced cleaning of Amazon facilities, process changes to promote social distancing (including stopping post-shift security screenings), higher wages, and developing COVID-19 testing capabilities. *Id.* All told, Amazon invested over $11.5 billion in these safety measures throughout 2020. *Id.*

Temperature checks are one of the many safety protocols Amazon implemented. *Id.* During the short period of time Plaintiff worked at TEB3 in 2020, employees entering the facility passed through temperature screening. Stmt. ¶ 19. Initially, this screening consisted of Amazon employees using a handheld forehead temperature scanner – a process that Plaintiff admits took only two to five seconds (consistent with screeners using such scanners being able to process at least approximately 30 associates every five minutes). Stmt. ¶ 20. During Plaintiff's employment, Amazon transitioned to an infrared screening process, which used a thermal camera to take entrants' temperature automatically as they entered the facility –a process that, like the forehead temperature scanner, took mere seconds (consistent with such cameras being able to process at least approximately 50 associates every five minutes). Stmt. ¶ 21. The temperature screening area was also equipped with masks so that an entrant with no mask could take one. Stmt. ¶ 22. The temperature screening process did not include any other steps. *Id.*

8

Plaintiff has admitted that, while the pre-shift temperature check took only a few seconds, her physical walking time from the facility entrance to on-site time clocks (not counting any additional time attributable to temperature checks) was itself two to three minutes, with an additional two minutes if there was a line at time clocks to clock in for her shift. Stmt. ¶ 23. Plaintiff also testified she preferred to arrive at the Logan Township facility well before her shift start time to store her personal belongings, use the restroom, and/or wait in the on-site break room before actually passing through the temperature check to clock in. Stmt. ¶ 24. Accordingly, any gap of more than a few seconds between Plaintiff's facility entry and clock-in times at Logan Township were due to Plaintiff's own voluntary actions and choices – not any purported delay from a temperature check.

**D.    Plaintiff's Pay, Punch-In, And Entrance-And-Exit-Swipe Data Show She Suffered No Damages In 2020.**

Plaintiff's only claims in this action are that Amazon did not pay her *overtime* she claims to have incurred as a result of passing through security screening (before 2020) and temperature checks (during 2020). *See* Second Amended Complaint, Counts I & III. During her brief 2020 employment, she worked only *one* week in which her hours exceeded, or were even remotely close to, the 40 hours needed to trigger overtime obligations: the week of April 26, 2020 to May 2, 2020. Stmt. ¶ 25. In that week, Plaintiff was paid for a total of 44.03 hours worked – 40 of those hours

paid at straight time, and the remaining 4.03 hours paid at *double* time (*i.e.*, 200% her regular rate rather than the 150% premium the law requires). Stmt. ¶ 26.

Amazon's entrance-and-exit swipe data, produced in discovery, shows when Plaintiff entered and exited the Logan Township facility.[6] *See* Stmt. ¶ 27. Comparing that data to Plaintiff's payroll data for the week of April 26, 2020 to May 2, 2020 proves that Plaintiff *received more pay than was required by law to cover all the time she spent within the facility that week, including at overtime rates for all hours over 40.* According to those records – which Plaintiff reviewed and the accuracy of which she confirmed she had no reason to dispute – the total number of hours that Plaintiff spent within the Logan Township facility during that week (which necessarily encompasses all time spent in temperature checks, as such checks occurred *inside* the Facility) was 43 hours and 35 minutes. *See* Stmt. ¶ 28. Plaintiff was already paid for *all* of that time – indeed, she was paid for 44.03 hours, almost an additional half hour on top of that time. And not only that, she already received *far more* than the legally required 150% overtime pay for the 4.03 hours beyond 40. *See* Stmt. ¶ 25. Rather, during the early stages of the COVID-19 pandemic, Amazon

---

[6]   Specifically, this data shows the dates and times when Plaintiff swiped her Amazon employee badge in order to move through the entrance/exit turnstiles of the Logan Township facility so that she could enter or leave the facility. *See* Stmt. ¶ 27.

paid double time (200%) of the regular hourly rate for all hours over 40 in a workweek.  *See* Stmt. ¶ 29.

## III.  <u>ARGUMENT</u>

### A.    <u>The Applicable Legal Standard.</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding summary judgment motions, "a court must construe all facts and inferences in the light most favorable to the nonmoving party," who "bears the burden of establishing that no genuine issue of material fact remains." *Adeva v. Intertek USA, Inc.*, No. 09-1096, 2010 WL 97991, at *1 (D.N.J. Jan. 11, 2010).

Where, as here, the defendant has met its initial burden, the plaintiff must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The inquiry, therefore, is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 259. To show a genuine issue of material fact for trial, the plaintiff must offer "more than a mere scintilla of evidence" and cannot rely solely

on unsupported assertions, conclusory allegations, or suspicions. *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). If the evidence "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial[,]'" and the court should grant the defendant's motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As demonstrated below, Plaintiff cannot establish any genuine issue of material fact as to either her security screening claim (because, as a matter of law, passing under a metal detector does not transform her time walking out of the facility into compensable work time) or her temperature screening claim (because, as a matter of law, Plaintiff suffered no damages and passing a temperature screening check does not transform her time walking to a timeclock within the facility into compensable work time).

**B.    This Court's Prior Rule 12(c) Analysis (Based Solely On The Allegations Of The Complaint) Demonstrates That The Court Now Should Enter Judgment Against Plaintiff's Security Screening Claim.**

On November 14, 2019, Amazon moved to dismiss Plaintiff's security screening claims pursuant to FRCP 12(c), making various legal arguments as to why such time is not compensable work under New Jersey law. (Dkt. No. 36.) On June 29, 2020, this Court issued an Order and Opinion ("MJOP Op.") granting in part and denying in part that motion. (Dkt. No. 42.) In that Opinion, this Court analyzed how to construe the phrase "place of work" within the NJWHL's regulations, which state that "hours worked" encompasses "[a]ll the time the employee is required to be at

12

his or her place of work or on duty." N.J.A.C. 12:56-5.2(a); *see* MJOP Op. at 6. Because neither the regulation nor the New Jersey Supreme Court had defined the term, the Court sought guidance in the federal Fair Labor Standards Act ("FLSA"). MJOP Op. at 6-8. In particular, the Court construed the NJWHL in line with U.S. Supreme Court case law defining "work" as "any activity 'controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Id.* at 8 (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 598 (1944)). Based on this FLSA test, the Court held that the NJWHL's concept of work requires both that: "(1) an activity is performed that is *controlled or required* by the employer; and (2) such activity serves to *primarily benefit* the employer." *Id.* An activity must meet both of these requirements to qualify as compensable "hours worked" under the NJWHL. *Id.* at 9.

Applying the above analysis to Plaintiff's post-shift security screening claims on Amazon's Rule 12(c) motion, this Court then held that "*as pleaded*, time spent undergoing *mandatory* security screenings at the end of the workday must be counted towards 'hours worked' under N.J.A.C. 12:56-5.2(a)." *Id.* at 9 (emphasis supplied). In so ruling, however, the Court emphasized that "this litigation [was then] still in the pleading stage [and] Plaintiff ha[d] not yet had an opportunity to deny or otherwise dispute Amazon's factual averments" in its Answer, and so it "d[id] not consider those averments in deciding the sufficiency of Plaintiff's claims."

13

Nonetheless, this Court observed that Amazon's averments, "if proven to be true, may serve to show that Amazon 'requires' its employees to spend very little time on long security lines." *Id.* at 9 n.2.

Those averments *are the very same facts now shown to be undisputed*. Plaintiff admits the existence of "express lanes" that employees – including her – could and did use to "pass through screening without stopping or even breaking stride." *Id.* She admits that Amazon provided on-site lockers where employees could leave their personal belongings, thereby giving *all* employees the option to use those express lanes if they so chose. *Id.* Indeed, she further admits that the process of passing through security screening was only a matter of two to three seconds without needing to break stride – with only two to three additional seconds if there was a "line" ahead of her going through screening. *See supra*, Part II(B). The only delay Plaintiff ever claims she experienced was on "one or two" occasions when she triggered a metal detector, but she conceded that as far as she could remember that delay was due to her own actions, *e.g.*, mistakenly carrying loose change that could set off the metal detector – which, of course, was not for Amazon's benefit and not something Amazon controlled or required. *See id.* Rather, Amazon encouraged and instructed employees to not carry items through security (by, *e.g.*, stowing them in on-site lockers), to use an express lane if not carrying any such items, and to use a divestment lane if carrying something like keys or loose change for their own benefit

14

or convenience. *See id.* Accordingly, Amazon has shown (and Plaintiff cannot refute) that it did not "require" anyone to spend *any* additional time on-site in post-shift security screening beyond their normal walking time from time clock to facility exit and that any additional time voluntarily spent in such screening was not primarily for Amazon's benefit but rather due to the employee's personal decisions.[7]

Now that these undisputed facts are in the record, this case no longer hinges on the threadbare allegations of the complaint. Rather, the undisputed record evidence establishes exactly what Amazon originally averred: that Plaintiff could "leave [her] personal belongings in Amazon-provided lockers" and use "express lanes" to "pass through screening without stopping or even breaking stride." MJOP Op. at 9 n.2. As a result, the pleading standard that led the Court to partly deny Amazon's Rule 12(c) motion does not govern, and the Court should now grant Amazon's summary judgment motion as the legal standard the Court previously announced and undisputed evidence require. *See Krys v. Aaron*, No. 14-2098, 2015

---

[7] This result comports with decisions finding that an employee cannot convert non-compensable time into "compensable work" under the *Tennessee Coal* standard when the employee chooses to take non-required action that does not primarily benefit the employer. *See, e.g.*, *Bamonte v. City of Mesa*, 598 F.3d 1217, 1225-26 (9th Cir. 2010) (police officers' time donning and doffing uniforms is not compensable, even if conducted at the workplace, because officers had option to do so outside the workplace and their choice to don/doff at the workplace "inured to their own benefit, not to the benefit of the [employer]"); *Rosano v. Twp. of Teaneck*, 2012 WL 13050594, at *10-11 (D.N.J. Dec. 28, 2012), *aff'd on other grounds*, 754 F.3d 177 (3d Cir. 2014) (same).

WL 2412558, at *7 (D.N.J. May 20, 2015) ("Courts 'have long recognized the distinction between pre-discovery motions, based on an undeveloped record, and post-discovery motions for summary judgment' for purposes of applying the law of the case doctrine."); *Conopco, Inc. v. McCreadie*, 826 F. Supp. 855, 867 n.5 (D.N.J. 1993) ("[A] statement in the course of denying a motion to dismiss based solely on the face of the complaint is not binding as law of the case, which doctrine pertains only to issues actually decided or decided by implication.").[8]

### C.     The Court Should Dismiss Plaintiff's Claim For Overtime Based On COVID-19 Temperature Checks For Multiple Reasons.

#### a.     *Plaintiff's overtime claim based on COVID-19 temperature checks fails because she suffered no damages.*

Plaintiff's claim for unpaid overtime for time spent passing through temperature screening fails at the very first hurdle: the undisputed record shows Plaintiff suffered no damages even if the time were compensable (which it is not). It is well settled that an employee pursuing a wage claim bears the burden of establishing that she "has in fact performed work for which [she] was improperly compensated." *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994); *see also Rosano v. Twp. of Teaneck*, 754 F.3d 177, 189-90 (3d Cir. 2014) ("Because

---

[8]     Amazon also maintains, preserves, and does not waive its argument – previously set forth in its Rule 12(c) motion – that passing through security screening (and, furthermore, passing through COVID-19 temperature checks) is not "work" because it involves no exertion.  *See* Dkt. No. 30 at 20-24.

[Plaintiffs] had the burden of proving that they performed work for which they were not properly compensated, and failed to do so, the District Court properly granted summary judgment on their claim for overtime damages."); *Falzo v. Cnty. of Essex*, 2008 WL 2064811, at *4 (D.N.J. May 14, 2008) ("In order to receive compensation for actual overtime worked, Plaintiffs bear the burden of establishing that they performed work for which they were not compensated."); *Albanese v. Bergen Cnty.*, 991 F. Supp. 410, 423-24 (D.N.J. 1997) (same). Thus, absent a showing of damages resulting from undercompensated work, courts must enter judgment against a claim for unpaid overtime wages. *See, e.g.*, *Rosano*, 754 F.3d at 189-90; *Colosimo v. Flagship Resort Dev. Corp.*, No. CV 17-3969, 2021 WL 1207484, at *7 (D.N.J. Mar. 31, 2021) (granting summary judgment in defendant's favor on FLSA and NJWHL overtime claims because plaintiffs offered no evidence that they "had performed work for which they were not properly compensated").

Here, there can be no dispute that Plaintiff suffered no damages related to COVID-19 temperature screening. Plaintiff admits that she worked only one week in 2020 while the COVID-19 temperature screening process was in place and where her hours exceeded or were even close to the 40-hour minimum for overtime: the week of April 26 to May 2, 2020. For that week, Amazon paid her for 44.03 hours worked, and her 4.03 hours above 40 were paid at *double* time – 200% her regular rate rather than the 150% that the overtime laws require. But her entrance and exit

swipe data (which, again, Plaintiff does not and cannot dispute) shows that the total amount of time that Plaintiff spent within the facility – which necessarily includes every second she spent in the temperature check process – was 43 hours and 35 minutes. That means that Plaintiff received compensation for more time than she actually spent inside the fulfillment center, including greater-than-required overtime pay for the time beyond 40 hours. As Plaintiff could have no damages from temperature checks, the Court should enter judgment against Plaintiff on this claim even if the temperature screening somehow qualified as compensable work. *See, e.g.*, *Colosimo*, 2021 WL 1207484, at *7.

> b.   *Even if Amazon had not already paid Plaintiff above and beyond any statutory requirement, her temperature screening claim would still fail because time passing through such screening is not compensable "work."*

The second dispositive problem with this claim is that temperature screening is not compensable work. As discussed already, this Court has held that the NJWHL's concept of compensable work under the *Tennessee Coal* standard requires both that: "(1) an activity is performed that is *controlled or required* by the employer; and (2) such activity serves to *primarily benefit* the employer." MJOP Op. at 8. An activity must meet *both* requirements to qualify as compensable "hours worked" under the NJWHL. *Id.* at 9. This Court has also applied the same standard to pre-shift screenings, which satisfy the second prong of this analysis only if "there is *no suggestion*" that such screening "benefits *any* person or entity other than the

employer." *Farrell v. FedEx Ground Package Sys., Inc.*, No. CV 19-19973 (FLW), 2020 WL 6054530, at *4 (D.N.J. July 10, 2020) (Wolfson, C.J.) (emphasis added). Amazon's pre-shift COVID temperature screenings do not satisfy the "primarily benefits the employer" prong and therefore is not compensable work.[9]

> i. <u>Courts widely recognize that time spent protecting employees' health and safety – like the temperature checks here – is not primarily for the employer's benefit.</u>

Plaintiff will likely argue that COVID screenings "primarily benefit" Amazon because they help keep employees at work. But Plaintiff can cite no authority for this assertion – let alone from any circumstances remotely like the current pandemic. On the contrary, the case law establishes that the health and safety benefits that employees receive from COVID screenings predominate over any economic benefits that Amazon receives. Numerous cases confirm that activities promoting worker health and safety are not "primarily" for an employer's benefit simply because they allow employees to continue contributing to the employer's operations.

---

[9] On March 17, 2021, Magistrate Judge Bongiovanni granted Plaintiffs' Motion to Amend the Complaint to add the COVID temperature screening claim without resolving these legal questions, concluding instead that amendment was not futile under the Rule 12 standard of accepting all of Plaintiff's allegations as true and drawing all reasonable inferences in Plaintiff's favor. *See* Dkt. No. 53. That preliminary decision under a more lenient standard does not now bind or restrict this Court from finding Plaintiff's claim fails under the Rule 56 summary judgment standard.

In *Gibbs v. City of New York*, 87 F. Supp. 3d 482 (S.D.N.Y. 2015), for example, the court considered alcohol counseling and treatment sessions that were a condition of employment. The court recognized that while an employer obviously derives a benefit from having sober employees, such generic and indirect benefits are "not the kinds of benefits that courts have recognized as decisive" under *Tennessee Coal*'s primary-benefit requirement. *Id.* at 493. At the same time, such treatment programs greatly benefit employees by helping alleviate possible alcohol dependency and preventing them from being fired, and that is in fact their purpose. *Id.* at 495; *see also Makinen v. City of New York*, 53 F. Supp. 3d 676, 698-99 (S.D.N.Y. 2014) (holding that an employer-mandated alcohol treatment program was not "necessarily and primarily" for the employer's benefit because, among other reasons, the employees benefited from the treatment and were the "*intended beneficiaries of the treatment*").

The court reached a similar conclusion in *Wheat v. J.B. Hunt Transport, Inc.*, 2016 WL 1397673 (C.D. Cal. 2016). There, a truck driver showed potential signs of sleep apnea, and consistent with federal regulations her employer required her to undergo sleep apnea testing and treatment. *Id.* at *2. The court rejected the plaintiff's argument that time she spent in sleep apnea testing constituted compensable work under the *Tennessee Coal* definition. *Id.* at *3. Among other problems, the plaintiff received the testing "primarily for her own benefit, not Defendant's." *Id.* at *4.

20

Although her employer did, of course, "benefit from employing healthy drivers who minimize the risk of road accidents," the court reasoned that "that benefit is incidental" because "[t]he intended and primary beneficiary of the sleep study" was the plaintiff herself. *Id.*

These district court rulings are consistent with longstanding appellate authority as well. Courts applying the *Tennessee Coal* test have long recognized that while "furthering industrial safety benefits the employer," this type of benefit "does not require a finding that the activity is *primarily* for the employer's benefit." *Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1163 (D.C. Cir. 1975) (finding time employees spent inspecting the workplace for violations of Occupational Safety and Health Act ("OSHA") standards was not compensable "work"). On the contrary, "[m]any activities which may increase employee effectiveness and thus benefit the employer are not worktime activities under [the] FLSA" and, by extension, the *Tennessee Coal* definition of "work." *Id.*

These cases show that activities meant to protect employee health and safety are not "primarily" for the employer's benefit simply because they may help enable employees to keep working productively for the employer. That conclusion applies with even greater force to COVID screenings on the jobsite. Unlike alcohol dependency, sleep apnea, or OSHA compliance, COVID is a highly infectious and dangerous disease that can easily spread through a community, if the proper safety

21

protocols are not in place. *See* AC ¶ 44 (noting that COVID is highly infectious). As the New Jersey Appellate Division recently observed, "the COVID-19 pandemic is an extraordinary situation justifying extraordinary responses" that "has created an immediate and ongoing public health emergency that requires swift action" by employers to protect their employees. *See In the Matter of City of Newark*, --- A.3d ----, 2021 WL 4398457, at *3, *6-*7 (N.J. App. Div. Sept. 27, 2021) (finding the City of Newark has a "managerial prerogative to implement its COVID-19 vaccination mandate" in order to "protect the health and safety of all its employees"). Accordingly, there is a "clear national and state public policy to combat the health threats posed by COVID-19" that has been recognized by the state Supreme Court, the state Governor, and the President of the United States – a public policy in favor of "actions that we take as a society to protect the common good" from the ravages of COVID-19. *See id.* at *6, *8.

Instead of simply requiring contagious employees to self-identify and not attend work, thereby placing the burden of screening on them, conducting workplace COVID screenings protects employees – as well as their families and the public – to a far greater degree. Wage and hour law should not discourage employers from taking this type of proactive measure to protect their employees and the greater public. And it doesn't. Wage and hour law takes such "practical concerns" into account. *Gibbs*, 87 F. Supp. 3d at 497 ("To hold that the FLSA requires an employer

to compensate in the circumstances of this case would risk creating a material disincentive to the growing use of employee assistance programs[.]"). Consistent with the Appellate Division's recent observations, this Court should construe New Jersey law in a way that encourages employers to provide these screenings. It should not hold that employers must pay extra to conduct these screenings and combat the spread of COVID-19.

ii.   New Jersey has encouraged and now requires COVID screenings to protect employees and the broader public.

In addition to relying on the authorities just discussed, the Court should take judicial notice of the fact that federal law has encouraged temperature screening since the onset of the pandemic (as did New Jersey); and New Jersey law now *requires* Amazon and other employers in the State to perform daily COVID screenings under executive orders from the Governor. Since March 16, 2020, the Governor's executive orders have "requir[ed] every effort to reduce the rate of community spread of the disease" and encouraged employers to "adhere to … guidelines" and "social mitigation strategies" from the Centers for Disease Control and Prevention ("CDC"), which include CDC recommendations to "employers to establish policies and practices" to mitigate such spread among and between

employees.[10]   Those   CDC   guidelines   specifically   included   the   following recommendations:

- In its March 12, 2020 guidance, the CDC suggested that workplaces "[c]onsider regular health checks … of staff and visitors entering buildings (if feasible)," including temperature checks. *See* Nuccio Decl., Ex. K.

- On April 8, 2020, the CDC issued guidance recommending temperature checks as one condition for permitting critical infrastructure workers to continue work following a potential exposure to COVID-19.[11]

- On May 6, 2020, the CDC issued guidance recommending that workplaces "consider conducting daily health in-person or virtual

---

[10]   *See* New Jersey Executive Order Nos. 104, 107 (available at https://nj.gov/ infobank/eo/056murphy/pdf/EO-104.pdf   and   https://nj.gov/infobank/eo/ 056murphy/pdf/EO-107.pdf). The Court may take judicial notice of executive orders and CDC guidelines referenced herein because they are a matter of public record. *See, e.g.*, *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[11]   *See* Interim Guidance for Implementing Safety Practices for Critical Infrastructure Workers Who May Have Had Exposure to a Person with Suspected or   Confirmed   COVID-19   (updated   April   20,   2020),   available   at https://www.cdc.gov/coronavirus/2019-ncov/downloads/critical-workers-implementing-safety-practices.pdf (*see* Nuccio Decl., Ex. L).

health checks (e.g., symptom and/or temperature screening) of employees."[12]

More recently, by New Jersey Executive Order No. 192 dated October 28, 2020,[13] the State required employers, before each shift, to "conduct daily health checks of employees, such as temperature screenings, visual symptom checking, self-assessment checklists, and/or health questionnaires, consistent with CDC guidance, including latest CDC guidance regarding COVID-19 symptoms." *Id.* at 8. Employers must also "immediately separate and send home employees who appear to have symptoms, as defined by the CDC, consistent with COVID-19 illness upon arrival at work or who become sick during the day." *Id.* These executive orders and CDC guidelines heighten the futility of Plaintiff's claim.

In particular, these executive orders and CDC guidelines confirm that COVID screenings primarily protect employees and the public. The Governor explained that imposing these requirements is "necessary to ensure broad application of relevant health and safety standards to *protect workers across all industries*." *Id*. at 2 (emphasis added). Especially "given the recent upticks in the rate of reported new

---

[12] *See* Interim Guidance for Businesses and Employers Responding to Coronavirus Disease 2019 (COVID-19), May 2020 (available at https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html) (*see* Nuccio Decl. Ex. M).

[13] The executive order is available at https://nj.gov/infobank/eo/056murphy/pdf/EO-192.pdf.

cases across all counties in the State, the use of mandatory health and safety protocols for all industries can help guard against continuing spread and *ensure that New Jersey's workers feel safe* and supported at their places of work." *Id.* (emphasis added). New Jersey's employers must conduct COVID screenings and follow other safety requirements "*to protect employees*, customers, and all others who come into physical contact with [the employer's] operations." *Id.* at 3 (emphasis added). In short, the Governor stated – three times – that the purpose of employer-conducted COVID screenings is to protect employees and the public. These developments confirm that COVID screenings like Amazon's are not intended primarily to benefit employers like Amazon and therefore do not qualify as compensable work.[14]

In addition, the case law underscores that where activities are legally obligatory because of public interests, those activities are not primarily for the employer's benefit and thus not compensable. For instance, in *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007), the court ruled that time that airport construction workers spent in federally mandated airport security screenings was not compensable. Although the case was governed by the Portal-to-Portal Act, it turned on the requirement that "the activity primarily benefit[] the employer," and its reasoning applies equally here:

---

[14] Although the executive order did not take effect until November 5, 2020, its account of the purpose of COVID screenings—protecting employees and the public from infection—has applied ever since the pandemic began.

> In this case, the screening was required by the [Federal Aviation
> Administration], and appellee had no discretion as to whether its
> employees would be screened. *See* 49 C.F.R. § 1540.17; *see also* Civil
> Aviation Security Rules, 67 Fed.Reg. 8340 at 8354 (Feb. 22, 2002). So
> although the screening was necessary for the employees to perform
> their work, appellee did not primarily—or even particularly—benefit
> from the security regime.

*Id.*; *see also Cazares v. Host Int'l, Inc.*, --- Fed. Appx. ----, 2021 WL 3667227 (9th

Cir. Aug. 18, 2021) (time spent by employees going through airport security to reach

workstation in secured area of airport was not compensable under California law);

*Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 589 (2d Cir. 2007) (time spent

by employees going through nuclear power plant security, required of all individuals

entering plant (including visitors) to ensure security of facility, is non-compensable).

Here too, the fact that the New Jersey and federal governments have encouraged and

then mandated COVID screening precludes any inference that it *primarily* benefits

Amazon, regardless of whether the screening is necessary for employees to perform

their work.

### D.    Even if Plaintiff Had Alleged Facts Sufficient To Support Any Valid Claim Under The NJWHL, Her Security and COVID Screening Claims Would Still Fail Under The *De Minimis* Doctrine.

Finally, even if there were facts sufficient to support a claim under New Jersey

law for unpaid overtime for compensable work (which there are not), Plaintiff's

claims would still fail because her testimony demonstrates that any time spent going

through either security or temperature screening was *de minimis* as a matter of law and, therefore, not compensable.

To recover damages for uncompensated hours, an employee must show that the amount of such hours worked was not *de minimis*. *Genarie v. PRD Mgmt, Inc.*, 2006 WL 436733, at *13 (D.N.J. Feb. 17, 2006). This well-settled principle of wage-and-hour law extends back to *Anderson v. Mount Clemens Pottery Co.,* 328 U.S. 680, 692 (1946), where the Supreme Court concluded that "[i]t is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." The Court thus recognized, in keeping with the maxim *de minimis non curat lex*, that "it is appropriate to apply a *de minimis* doctrine so that insubstantial and insignificant periods of time spent in [otherwise compensable] activities need not be included in the statutory workweek." *Id.* at 693.[15]

---

[15] Although *Anderson* construed the FLSA, courts also apply the de minimis doctrine to claims under state wage-and-hour laws. *E.g.*, *Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 845 (7th Cir. 2014) (applying *de minimis* doctrine to Illinois law claims); *Levias v. Pac. Mar. Ass'n*, 760 F. Supp. 2d 1036, 1047, 1061 (W.D. Wash. 2011) (applying *de minimis* doctrine to Washington law claims). That is particularly appropriate here, with New Jersey law, as the Court has already concluded that New Jersey wage-and-hour incorporates the federal definition of compensable work from *Tennessee Coal*, which was also at issue in *Anderson*, 328 U.S. at 693. And numerous New Jersey state courts have also recognized and applied the "ancient doctrine" of *de minimis*, as "[a]ncient doctrines have survived in legal forums where they make common sense, serve the public at large, and at the same time do not disserve the ends of justice." *Schlichtman v. N.J. Highway Auth.*, 243 N.J. Super. 464, 471 (Law Div. 1990) (invoking *de minimis* doctrine to dismiss

To determine whether alleged uncompensated work time is *de minimis*, courts consider (i) the administrative difficulty of recording the additional time; (ii) the size of the claim in the aggregate; and (iii) whether the work was performed on a regular basis. *Genarie*, 2006 WL 436733, at *13. "There is no rigid rule or precise mathematical formula for applying the de minimis doctrine, but the size of the aggregate claim must be considered." *Id.* (citing *Lindow v. United States*, 738 F.2d 1057, 1062-64 (9th Cir. 1984)). "[C]ommon sense must be applied to the facts of each case." *Lindow*, 738 F.2d at 1062. Under *Lindow*, an additional daily period of up to approximately ten minutes, even if otherwise compensable, may be considered *de minimis*. *Id.*

Here, Plaintiff has admitted that the measure of time she claims to be at issue is a matter of *seconds*. Her security screening claim is not about the time between clock-outing out at a time clock and swipe-out at the exit of the building, nor is it about the time spent walking from the time clock to the security screening metal detectors. There is no dispute that time spent on post-clock-out voluntary activities like making use of the break room or talking to coworkers, as well as time spent

_____

claim relating to sale of parkway tokens); *see also Besler v. Bd. of Educ. of West Windsor-Plainsboro Regional Sch. Dist.*, 201 N.J. 544, 607 (2010) ("That time-honored doctrine – *de minimis non curat lex* … is comfortably part of New Jersey's jurisprudence") (Rivera-Soto, J., concurring in part) (citing cases); *Melletz v. Begelman & Orlow, PC*, 2019 WL 2932644, at *4 (N.J. App. Div. July 9, 2019) (invoking *de minimis* doctrine to affirm in part trial court's denying motion to enforce litigant's rights) (quoting *Schlichtman*, 243 N.J. Super. at 472).

simply walking out of the building, is not compensable. So the disputed time for the security screening claim is merely that incremental amount of additional time, if any, that employees have to spend going through the fastest screening option available to them. No other amount of time could possibly be for the employer's primary benefit, as opposed to the employee's convenience. Plaintiff cannot, for example, base a claim on the couple of instances where she experienced a longer security screening delay resulting from her own choices (*i.e.*, carrying an item that set off the metal detector, thus triggering secondary screening) that other workers were easily able to avoid (as, indeed, Plaintiff herself avoided on all other occasions).

Similarly, Plaintiff's temperature screening claim is not about her walking time between swipe-into the building and a temperature scanner, or her walking time between the temperature scanner and a timeclock, because those times are non-compensable by any measure. Rather, the only time at issue here would be the amount of time that a temperature check adds to the time spent in admittedly non-compensable activities. For both claims, however, Plaintiff has admitted that the unavoidable length added by either type of screening is, at most, only a few seconds – a quintessentially de minimis amount.

So even if the time spent passing through security screening or a temperature check were compensable (it is not), the time at issue here is *de minimis* and Amazon is entitled to judgment on Plaintiff's claims on this alternative ground.

IV.   **<u>CONCLUSION</u>**

For the foregoing reasons, Defendant respectfully requests that the Court grant

summary judgment in this matter and dismiss all of Plaintiff's claims with prejudice.


Dated: November 12, 2021       Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

<u>*s/ Joseph A. Nuccio*</u>
Richard G. Rosenblatt
Joseph A. Nuccio
502 Carnegie Center
Princeton, New Jersey 08540
Telephone: (609) 919-6600
Facsimile: (609) 919-6701
richard.rosenblatt@morganlewis.com
joseph.nuccio@morganlewis.com
*Attorneys for Defendant*

31