# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIANE VACCARO and JENNIFER CHIU, <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM.DEDC, LLC. <br><br> Defendant. | No.: 3:18-cv-11852-FLW-TJB |

## NAMED PLAINTIFF CHIU'S BRIEF IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Matthew D. Miller, Esq.
**SWARTZ SWIDLER, LLC**
1101 North Kings Highway
Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417
*Attorneys for Plaintiffs*

**Table of Contents**

I.    INTRODUCTION ................................................................................................................ 2

II.   FACTUAL BACKGROUND ............................................................................................. 3

III.  LEGAL STANDARD .......................................................................................................... 3

IV.   LEGAL ARGUMENT ......................................................................................................... 4
   A. The Security Screenings Are "Work" Under the NJWHL ...................................................... 4
      1. Plaintiff Engaged In "Work" When She Went Through The Security Screenings, Regardless Of The Time It Took Her To Do So. .......................................................................................... 4
      2. Plaintiff Engaged In "Work" When She Underwent Secondary Screenings. ........................ 9
   B. The NJWHL Does Not Provide A *De Minimis* Defense to Plaintiff's Claim for Unpaid Security Screenings .................................................................................................................... 10
      1. The NJWHL's plain language precludes a *de minimis* rule ............................................... 10
      2. Even if this this Court looks beyond the NJWHL's plain language, further analysis confirms that the *de minimis* rule should not be held to have been incorporated into the NJWHL. ........... 12
      3. Even if this this Court holds that the NJWHL incorporates the FLSA's *de minimis* exception, it is not a defense to Plaintiff's claim for unpaid security screening time. ............................. 15
   C. Plaintiff Withdraws Her Claims Under The NJWHL Arising From Her Employment With Defendant During 2020 ................................................................................................................ 18

V.    CONCLUSION .................................................................................................................. 18

## I.  INTRODUCTION

Named Plaintiff Chiu ("Plaintiff"), through undersigned counsel, submits her opposition to Defendant's Motion for Summary Judgment. In this case, Plaintiff seeks overtime wages under the New Jersey Wage and Hour Law ("NJWHL") for unpaid time spent between clocking out and clearing security screenings that Defendant required her to undergo after every shift before she could exit Defendant's fulfillment centers. Defendant argues that such time is not compensable work under the NJWHL, disregarding the standard for same that this Court already set.

In deciding Defendant's prior motion for judgment on the pleadings, this Court held that the meaning of "work" under the NJWHL was the same as under the FLSA, thus holding that an activity must meet a two-prong test to qualify as work under the NJWHL—the activity must be controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business. Applying this standard to Defendant's security screenings, the Court held that the activity satisfied both requirements. Now Defendant asks the Court to change its mind about one or both of the prongs—it is unclear—based only on the fact that the time Plaintiff usually spent going through a security screening was measured in seconds rather than minutes. As explained herein, under U.S. Supreme Court binding precedent regarding the FLSA's definition of "work," *Anderson v. Mount Clemens Pottery Co.*, the amount of time spent performing a activity has no bearing on whether it is "work." And so it must be under the NJWHL based on this Court's prior ruling.

The only relevance that the duration of the security screenings could have on the issue of liability in this matter depends on the existence of a *de minimis* defense in the NJWHL. However, as explained below, the NJWHL's regulations' plain text precludes a holding that the NJWHL incorporated the FLSA's *de minimis* defense. And to the extent there is any doubt, an analysis of

2

the NJWHL's purpose, time of its enactment, other provisions, and this Court's own holding that the NJWHL did not incorporate the FLSA's Portal-to-Portal Act exclusions to otherwise compensable hours worked makes it clear that the *de minimis* defense is not available to Defendant.

For the reasons set forth below, Plaintiff respectfully requests that Defendant's Motion be denied as to Plaintiff's claim for unpaid wages arising from the security screenings.[1]

## II.    FACTUAL BACKGROUND

Plaintiff's Response to Defendant's Statement of Material Facts (hereinafter "RSMF") and her Statement of Additional Material Facts (hereinafter "SAMF") is incorporated fully herein.

## III.   LEGAL STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "a court does not resolve factual disputes or make credibility determinations, and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995). Accordingly, at the summary judgment stage, the testimony of a plaintiff on its own can make out facts sufficient to withstand a summary judgment motion, particularly in the context of a discrimination claim. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990).

Further, the moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 154 (1970). Should the moving party

---

[1] Plaintiff, as explained herein, withdraws her claim for unpaid overtime wages arising from the temperature screenings, which she underwent during her employment in 2020.

3

appear to carry its initial burden, to prevent summary judgment the non-moving party need only ". . . set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

IV. **LEGAL ARGUMENT**

A. **The Security Screenings Are "Work" Under the NJWHL**

1. <u>Plaintiff Engaged In "Work" When She Went Through The Security Screenings, Regardless Of The Time It Took Her To Do So.</u>

The NJWHL requires employers to pay "each employee not less than 1 1/2 times such employee's regular hourly rate for each hour of working time in excess of 40 hours in any week." N.J.S.A. § 34:11-56a4. The NJWHL's regulations provide that "[e]mployees entitled to the benefits of the [NJWHL] shall be paid for all hours worked." N.J.A.C. § 12:56.5.1. The regulations define "hours worked" as "[a]ll the time the employee is required to be at his or her place of work or on duty." N.J.A.C. § 12:56-5.2(a).

In deciding Defendant's November 2019 Motion for Judgment on the Pleadings, this Court interpreted the meaning of N.J.A.C. § 12:56-5.2(a)'s phrase "place of work" as both Parties argued that its meaning was dispositive in their favor. Defendant had argued that it meant "the specific area within the Amazon facility where Plaintiff performs her duties." While Plaintiff argued that it meant Amazon's facility, which is the "place" where she worked and went through the unpaid security screenings.[2] *Vaccaro v. Amazon*, 2020 U.S. Dist. LEXIS 114526, at *9-10 (D.N.J. June 29, 2020) ("*Vacarro I*"). This Court found both interpretations "plausible," thus warranting review of "other appropriate sources for guidance in discerning the meaning of the regulation." *Id.* Finding the Fair Labor Standards Act ("FLSA") to be such an appropriate source, as it is analogous to the NJWHL, the Court noted that "the term 'work' has been defined broadly by the U.S. Supreme

---

[2] Plaintiff maintains, preserves, and does not waive this argument.

4

Court as any activity 'controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Id.* at *10-11 (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)). Concluding that the NJWHL's definition of "work" is the same as the FLSA's, the Court held that "the phrase 'place of work' … can fairly be read as any place where" work, as defined by the FLSA's two-prong test, takes place. *Id.* at *11.

This Court went on to hold that both prongs of the test for whether an activity is work were met with respect to the mandatory security screenings:

> It can reasonably be inferred … that Plaintiff may not leave the "control" of Amazon, and thereby complete her shift for the day, without undergoing the security screening, thus satisfying the first prong. … Moreover, there is no suggestion that the security screenings at the end of the workday benefit any person or entity other than Amazon. Accordingly, as pleaded, time spent undergoing mandatory security screenings at the end of the workday must be counted towards "hours worked" under N.J.A.C. 12:56-5.2(a).

*Id.* at *11-12.

Admittedly, the Court decided *Vaccaro I* on a pleading standard rather than the summary judgment standard applicable here. But Defendant does not explain how the factual record developed during discovery changes the answers to the questions posed by the two-prong test, instead clinging to a footnote in the Court's opinion declining to consider Defendant's own allegations at the pleading stage but noting, uncontroversially, that different facts than those alleged in the Complaint "may" lead to different results (as always).

Specifically, Defendant does attempt to argue that there are facts that show that it did not "require" Plaintiff to go through the security screenings or that it did not "control" Plaintiff during

5

the security screening process when Plaintiff went through an express lane.[3] Of course, Defendant both controlled and required Plaintiff to undergo the security screenings. After clocking out and before leaving the fulfillment center, Defendant required Plaintiff to go through a screening for the express purpose of determining whether she had stolen from her employer. RSMF ¶ 6-8; SAMF ¶ 6. At a minimum, the security screening involved Plaintiff choosing and entering one of multiple lanes leading through a metal detector (i.e. "express lanes). RSMF ¶ 8. Defendant's contracted security officers oversaw the process. SAMF ¶ 5. If Plaintiff triggered the metal detector, Defendant would require her to undergo a "secondary screening" for the express purpose of determining whether she had stolen from her employer. RSMF ¶ 11;SAMF ¶ 6. Plainly, this process, however short in duration, was both required and controlled by Defendant.

Nor does Defendant attempt to convince the Court to reconsider its conclusion that the security screenings primarily benefit Defendant, which should be compared with the nine (9) pages Defendant spent arguing why its temperature screenings primarily benefit its employees rather than Defendant. (ECF 67-1 at pp. 18-27). Defendant declined to do so because there is no straight-faced argument to be made that the above-described process is conducted for any person's benefit other than Defendant.

Instead of addressing the two-prong test set forth by this Court in *Vaccaro I*, Defendant goes all in on the fact that, when Plaintiff went through the express lane and did not trigger the metal detector, the security screening—walking down the lane[4] and through the metal detector

---

[3] Defendant does make these arguments as to the occasions when the time that Plaintiff spent in security screenings exceeded "normal walking time," such as when Plaintiff had to undergo secondary screenings. Plaintiff will address below why the additional activities a security screening might involve does not change its character as "work" under the NJWHL.

[4] Defendant's facts regarding the amount of time Plaintiff spent going through the security screening was carefully couched to exclude the time she spent walking from the time clock to the security screening lanes.

took only several seconds. This fact, Defendant argues, warrants summary judgment based on "the legal standard the Court previously announced" in *Vaccaro I*, presumably referring to Footnote 2 rather than the Court's holding that the two-prong test based on the FLSA definition of "work" applies. But Footnote 2 merely notes that *Defendant argued* that its alleged facts, if considered, would mandate a different result. *Vaccaro I*, 2020 U.S. Dist. LEXIS 114526, at *12 n. 2. The Court, while expressly stating that it did "not consider those averments" allowed that, if established, "may serve to show that Amazon 'requires' its employees to spend very little time in long security lines." Far from being a legal standard or an addendum to the Court's announcement of the two-prong definition of "work" under the NJWHL, this sentence may fairly be read to be a comment regarding the value of Plaintiff's claims (i.e., shorter time means less overtime damages).

In any event, the Footnote 2 is dicta, which must yield to the Court's actual holding. And in *Vaccaro I*, the Court held, as explained above, that "work" under the NJWHL means the same thing as it does under the FLSA. *Id.* at *10-12. And the Supreme Court has left no doubt that, under this definition, walking time is "work." In *Anderson v. Mount Clemens Pottery Co.*, the Supreme Court determined, *inter alia*, whether time an employee spent walking from a time clock to the area where he performed productive work prior to beginning of such work and the same activities in reverse after the completion of productive work was compensable under the FLSA. 328 U.S. 680, 691 (1946). The Court found that such time was compensable as "work":

> Such time was under the complete control of the employer, being dependent solely upon the physical arrangements which the employer made in the factory. … Without such walking on the part of the employees, the productive aims of the employer could not have been achieved. The employees' convenience and necessity, moreover, bore no relation whatever to this walking time; they walked on the employer's premises only because they were compelled to do so by the necessities of the employer's business. … It follows that the time spent in walking to work on the employer's premises, after the time clocks were punched, involved "physical or

7

> mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Work of that character must be included in the statutory workweek and compensated accordingly ….

*Id.*, 691-92 (internal citations omitted) (quoting *Tennessee Coal*, 321 U.S. at 598).

If mere walking on an employer's premises, so long as it meets the above standard (i.e., the two-prong test), is "work" under the FLSA, and thus the NJWHL, then walking down a specific lane and through a metal detector under the supervision of security guards must also be work. Moreover, the amount of time spent walking is not relevant to the determination of whether it is "work." The Supreme Court specifically addressed the scenario "[w]hen the matter in issue concerns only a **few seconds** or minutes of **work**," noting that its decision did not "preclude the application of a de minimis rule where the minimum walking time is such as to be negligible." *Id.* at 692 (emphasis added). Accordingly, the Supreme Court expressly considered even a "few seconds" of the walking at issue to be "work." *Id.* Whether an exception to the rule that all work must be compensated, such as the *de minimis* doctrine defeats Plaintiff's claim, which Plaintiff will address below, is a separate question from whether the activity is "work."

Defendant's own brief acknowledges that *Anderson* is as much a part of the meaning of "work" under the FLSA as *Tennessee Coal*. (ECF 67-1 at p. 28 n. 15 ("[T]he Court has already concluded that [the NJWHL] incorporates the federal definition of compensable work from *Tennessee Coal*, which was also at issue in *Anderson*.")

Accordingly, the Court should hold that Plaintiff's going through security screenings, no matter how quickly, was "work" under the NJWHL, and, therefore, Plaintiff's time spent in the place where she did such "work" is a "place of work" under N.J.A.C. § 12:56.5.1.

8

2.  <u>Plaintiff Engaged In "Work" When She Underwent Secondary Screenings.</u>

Based on the above analysis, there can be no doubt that undergoing a secondary screening, which was more involved and took Plaintiff between five and ten minutes to clear, is still "work" under the NJWHL despite Defendant's argument about Plaintiff's ability to avoid them. However, out of an abundance of caution, Plaintiff will specifically address whether secondary screenings constituted "work".

First, Defendant bizarrely frames the question of whether a secondary screening was required as a question of whether Plaintiff could avoid same by being careful not to have anything on her person that could set off the metal detector. Defendant's framing seeks to evade the essential questions posed by the two-prong test—is the activity required or controlled by Defendant and whom does it primarily benefit. These questions must be answered at the time the activity is taking place. At the time Plaintiff was undergoing the secondary screening, she was engaging in an activity required by Defendant that benefited only Defendant.

Defendant likens Plaintiff's alleged ability to completely control whether a secondary screening occurs[5] to an employee's ability to not unnecessarily inflate work hours. But that is inapposite outside of the Portal-to-Portal Act context, which is where this case resides. For example, if an employee is on their way to complete a final task before clocking out and, instead of walking directly to the task, they take an out-of-the-way route that adds five minutes to their hours worked, the employer is still on the hook for that time. The question of whether an employer must pay overtime wages for work it neither asked nor wanted an employee to perform has been

---

[5] Defendant ignores the fact that Plaintiff testified that on the second occasion when she underwent a secondary screening she testified she had nothing on her person that would have set off the metal detector.

9

answered in the affirmative repeatedly by courts deciding off-the-clock overtime cases. *E.g., Allen v. City of Chicago*, 865 F.3d 936, 938 (7th Cir. 2017) ("Employers must … pay for all work they know about, even if they did not ask for the work, even if they did not want the work done, and even if they had a rule against doing the work."); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008) (same). This is not a wage-and-hour issue, but rather a discipline issue. The solution to the problem of an employee who works unauthorized overtime and informs his or her employer of same is not to withhold their overtime wages but rather to discipline or terminate them for violating policies against working unauthorized overtime. *See Chao*, 514 F.3d at 291 (noting that if the employer "were serious about preventing unauthorized overtime, it could discipline [employees] who violate the rule.")

Accordingly, the secondary screenings also constitute "work" under NJWHL.

### B. The NJWHL Does Not Provide A *De Minimis* Defense to Plaintiff's Claim for Unpaid Security Screenings

However veiled, Defendant's primary argument is that the time Plaintiff spent in the security screenings is too short, too insignificant to warrant holding Amazon liable to pay under the NJWHL; that it is *de minimis*. Defendant does not provide any substantive support for its argument other than pointing out that some courts have held that some state's wage and hour laws have incorporated the FLSA's *de minimis* exception and that the *de minimis* doctrine exists in New Jersey state law jurisprudence. However, as provided herein, a detailed analysis demonstrates that the NJWHL does not have a *de minimis* exception to otherwise compensable work. And even if it did, it would not be a defense to Plaintiff's claim for unpaid security screening time.

#### 1. The NJWHL's plain language precludes a *de minimis* rule

In *Vaccaro*, This Court made clear a court's role in interpreting a regulation of a New Jersey statute:

10

> The New Jersey Supreme Court has made clear that when interpreting a regulation, the "paramount goal" is to "determine[e] the intent of the drafter." *US Bank, N.A. v. Hough*, 210 N.J. 187, 199 (2012) (citing *DiProspero v. Penn*, 183 N.J. 477, 492 (2005)). In doing so, "it is not [the court's] function to 'rewrite a plainly-written enactment,' or to presume that the drafter intended a meaning other than the one 'expressed by way of the plain language.'" *Id.* Rather, "[t]he regulation should be construed in accordance with the plain meaning of its language … and in a manner that makes sense when read in the context of the entire regulation." *Czar, Inc. v. Heath*, 398 N.J. Super. 133, 138 (App. Div. 2008) (citations omitted), *aff'd as modified*, 198 N.J. 195 (2009). Furthermore, "[o]nly when a fair 'reading of the enactment leads to more than one plausible interpretation' do[es] [the court] look to extrinsic evidence." *US Bank*, 210 N.J. at 199 (quoting *Bedford v. Riello*, 195 N.J. 210, 221-22 (2008)).

*Vaccaro I*, 2020 U.S. Dist. LEXIS 114526, at *9.

The NJWHL's regulation regarding payment for hours worked provides that "[e]mployees entitled to the benefits of the NJWHL shall be paid for **all** hours worked." N.J.A.C 12:56-5.1. The word "all" means, *inter alia*, "the whole amount" and "as much as possible" and "the greatest possible." *Webster's Third New International Dictionary* (1993 ed.). The FLSA's *de minimis* rule, which allows for *some* amounts of otherwise compensable hours worked to be excluded from hours worked, cannot be reconciled with this regulation's plan language requirement that employees be paid "for all hours worked." Notably, similar "all hours" terminology does not exist in the FLSA's minimum wage or overtime pay provisions. *See* 29 U.S.C. §§ 206(a), 207(a); *accord* 29 C.F.R. § 785.5.

This should bring an end to the analysis as "a fair reading of the enactment" does not lead to any other plausible interpretation. The FLSA's *de minimis* rule contradicts the NJWHL's unambiguous regulatory language and, as such, has no place in NJWHL litigation. *Accord Heimbach v. Amazon.com, Inc.*, 255 A.3d 191, 209 (Pa. 2021) (holding, in case involving Amazon security screenings, that the Pennsylvania Minimum Wage Act "plainly and unambiguously

11

requires payment for 'all hours worked,' signifying the legislature's intent that *any* portion of the hours worked by an employee does not constitute a mere trifle." (internal citation omitted; emphasis in original)); *Troester v. Starbucks Corp.*, 421 P.3d 1114, 1120 (Cal. 2018) (refusing to adopt *de minimis* rule because, *inter alia*, rule violates California Wage Order requiring employees to be paid for "any work" and "all hours worked").

    2. <u>Even if this this Court looks beyond the NJWHL's plain language, further analysis confirms that the *de minimis* rule should not be held to have been incorporated into the NJWHL.</u>

        a. ***The Court's role is to predict how the New Jersey Supreme Court would decide the question.***

Should the Court choose to look beyond the NJWHL's plain regulatory language, several principles of statutory construction should guide its analysis. As neither the New Jersey Supreme Court nor the Superior Court of New Jersey, Appellate Division, has addressed whether the NJWHL provides a *de minimis* exception, the role of this Court in ruling on a matter of New Jersey law "is to follow the precedents of the state's highest court and predict how that court would decide the issue presented." *Camden County Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 541 (3d Cir. 2001). "It is not the role of a federal court to expand or narrow state law in ways not foreshadowed by state precedent." *Id.* "In making such a prediction, we consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would resolve the issue at hand." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) (quotation marks and ellipsis omitted).

        b. ***The NJWHL's purpose and the timing of its enactment and amendments support holding there is no de minimis exception in the NJWHL.***

Understanding the purpose of the NJWHL will aid the process of predicting how the New Jersey Supreme Court will interpret it. The purpose of the NJWHL is to "protect employees from unfair wages and excessive hours." *In re Raymour & Flanigan Furniture*, 405 N.J. Super. 367, 376, 964 A.2d 830, 836 (App. Div. 2009) *quoting Keeley v. Loomis Fargo & Co.*, 183 F.3d 257, 259 (3d Cir. 1999); N.J.S.A. § 34:11-56a (the NJWHL is designed "to safeguard [workers'] health, efficiency, and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to their health, efficiency and well-being"). The NJWHL is a component of New Jersey's "social legislation designed to correct abuses in employment." *New Jersey State Hotel-Motel Ass'n v. Male*, 105 N.J. Super. 174, 177 (1969); *Kas Oriental Rugs, Inc v. Ellman.*, 407 N.J. Super. 538, 564 (App.Div.2009). "The remedial purpose of the [NJWHL] dictates that it should be given a **liberal construction**." *New Jersey Dep't of Labor v. Pepsi-Cola Co.*, 170 N.J. 59, 62 (2001) (emphasis added).

Moreover, while the FLSA "influenced the adoption in 1966 of the [NJ]WHL," the NJWHL is not a carbon copy of the FLSA. *Hargrove v. Sleepy's, LLC*, 220 N.J. at 313 (holding the fact that the FLSA influenced the NJWHL "does not require [the New Jersey Supreme Court] to jettison … a standard adopted by the [New Jersey Department of Labor]" that conflicted with FLSA jurisprudence). In fact, the New Jersey Supreme Court "assume[s]" that the NJWHL was adopted "to protect workers **not** covered by [the] FLSA." *Id.* (emphasis added).

Moreover, while courts may look to the FLSA to provide guidance on interpreting the NJWHL, this is premised on the New Jersey legislature having been aware of the analogous FLSA when drafting the NJWHL. *See GATX*, 86 N.J. 46, 53 (1981); *see also Hargrove v. Sleepy's, LLC*, 220 N.J. 289, 313 (2015) (stating that the FLSA "influenced the adoption in 1966 of the [NJ]WHL"). And yet, despite the FLSA's *de minimis* rule being well-established, having been

13

featured in the U.S. Supreme Court's 1946 *Anderson* opinion and later codified in the federal DOL's 1961 regulations, the New Jersey legislature and the Commissioner of Labor did not include it in the NJWHL and its regulations when the NJWHL was enacted in 1966. As this Court noted in *Vaccaro I*, "the fact that the New Jersey legislature expressly adopted some federal regulations indicates that its failure to adopt others was intentional." 2020 U.S. Dist. LEXIS 114526, at *17-18 (quotation marks omitted).

Furthermore, the NJWHL consistently provides broader protections to workers than the FLSA despite being modeled on same, as this Court demonstrated in *Vaccaro I*, where it held that "the New Jersey legislature did not intend to incorporate the Portal-to-Portal Act's exclusions for 'preliminary' and 'postliminary' activities into the NJWHL. *Vaccaro I*, 2020 U.S. Dist. LEXIS 114526, at *17. By way of further example, the NJWHL provides, *inter alia*: a higher minimum wage, a narrower overtime exemption for truck drivers, no overtime exemption for taxi drivers, and a broader definition of employee than the FLSA. *See* N.J.A.C. § 12:56-3.1 (setting minimum wage rate at $8.60 per hour); N.J.S.A. § 34:11-56a4 (providing that only drivers, helpers, loaders and mechanics working for trucking industry employers are exempt); *Yellow Cab Co. of Camden v. State Through Dir. of Wage and Hour Bureau*, 312 A.2d 870, 872 (App. Div. 1973) (holding NJWHL contains no overtime exemption for taxi drivers); *Hargrove*, 220 N.J. at 312 (holding the NJWHL's definition of employee is broader than the FLSA's definition).

A final example, which is particularly relevant here, is the NJWHL regulation that requires employers to pay employees for at least one hour on any day that the employee reports for duty by request of the employer, **regardless of whether the employee performs any work**. *See* N.J.A.C. 12:56-5.5. Neither the FLSA nor its regulations contain a provision that requires an employer to pay an employee up to an hour more than their actual hours worked. Given this regulation's

14

demonstration of the value that the NJWHL and its regulations place on an employee's time when it is taken up by her employer, it would be difficult to conclude that the NJWHL and its regulations implicitly adopted an exception to its express requirement that "hours worked" include "**all** the time the employee is required to be at his or place of work." N.J.A.C. § 12:56-5.2(a).

Accordingly, this Court should find that the New Jersey Supreme Court would hold there is no *de minimis* exception to the NJWHL's requirement to pay for all hours worked.

> 3. Even if this this Court holds that the NJWHL incorporates the FLSA's *de minimis* exception, it is not a defense to Plaintiff's claim for unpaid security screening time.

In 1961, the federal Department of Labor ("DOL") enacted a regulation describing the FLSA's *de minimis* rule. *See* 26 FR 195 (Jan. 11, 1961). As indicated below, the DOL takes a restrictive view of the doctrine:

> In recording working time under the [FLSA], insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are *de minimis*. (*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)) This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him. *See Glenn L. Martin Nebraska Co. v. Culkin*, 197 F.2d 981, 987 (C.A. 8, 1952), cert. denied, 344 U.S. 866 (1952), rehearing denied, 344 U.S. 888 (1952), holding that working time amounting to $1 of additional compensation a week is "not a trivial matter to a workingman," and was not *de minimis*; *Addison v. Huron Stevedoring Corp.*, 204 F.2d 88, 95 (C.A. 2, 1953), cert. denied 346 U.S. 877, holding that "To disregard workweeks for which less than a dollar is due will produce capricious and unfair results." *Hawkins v. E. I. du Pont de Nemours & Co.*, 12 W.H. Cases 448, 27 Labor Cases, para. 69,094 (E.D. Va., 1955), holding that 10 minutes a day is not de minimis.

15

29 C.F.R. 785.47; *see also* 26 FR 195 (Jan. 11, 1961).

After *Anderson*, U.S. Supreme Court would not address the FLSA's *de minimis* rule again until *Sandifer v. U.S. Steel Corp.* in 2014. There, the Court held that, under FLSA § 3(o), which makes certain washing and clothes-changing activities non-compensable when performed by unionized employees, the employees' FLSA claims were strictly limited to time spent putting on safety glasses, earplugs, and a respirator. *See* 571 U.S. 220, 226-33 (2014). The Court stated that the *de minimis* rule did not apply to claims arising under this section:

> We doubt that the *de minimis* doctrine can properly be applied to the present case. To be sure, *Anderson* included "putting on aprons and overalls" and "removing shirts" as activities to which "it is appropriate to apply a *de minimis* doctrine." *Id.*, at 692-693, 66 S. Ct. 1187, 90 L. Ed. 1515. It said that, however, in the context of determining what preliminary activities had to be counted as part of the gross workweek under §207(a) of the Fair Labor Standards Act. A *de minimis* doctrine does not fit comfortably within the statute at issue here, which, it can fairly be said, is *all about* trifles – the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs. Or to put it in the context of the present case, there is no more reason to *disregard* the minute or so necessary to put on glasses, earplugs, and respirators, than there is to *regard* the minute or so necessary to put on a snood. If the statute in question requires courts to select among trifles, *de minimis non curat lex* is not Latin for *close enough for government work.*

*Id.* at 234 (emphasis in original). In addition, the *Sandifer* Court recognized the restrictive nature of the DOL's *de minimis* regulation:

> We note, moreover, that even in that context, the current regulations of the Labor Department apply a stricter *de minimis* standard than *Anderson* expressed. They specify that "[a]n employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." 29 CFR § 785.47.

16

*Id.* at 234 n. 8.

Finally, the Third Circuit Court of Appeals addressed the FLSA's *de minimis* rule in a 2007 opinion entitled *De Asencio v. Tyson Foods, Inc.*, which involved poultry workers' FLSA claims seeking compensation for time spent "donning, doffing and washing" at the beginning and end of the shift. *See* 500 F.3d 361, 363 (3d Cir. 2007). The *De Asencio* Court cited favorably to the restrictive language in the DOL's *de minimis* regulation. *See id.* at 374 (quoting 29 C.F.R. § 785.47). The Court also listed three considerations that should be considered in applying any *de minimis* rule: "'(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work.'" *Id.* (quoting *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984)). Finally, the Court cited favorably to the following language: [W]e will consider the size of the aggregate claim. Courts have granted relief for claims that might have been minimal on a daily basis but, **when aggregated**, amounted to a substantial claim. *Id.* at 374-75 (quoting *Lindow*, 738 F.2d at 1063) (emphasis added).

Here, the facts easily satisfy the Third Circuit's test. First, there is no practical administrative difficulty involved. Recording the time involving the work at issue is a simple matter of switching the order of activities from clocking out and then going through a security screening to going through the security screening first and then clocking out. Plaintiff and her coworkers clocked out via the simple process of holding their ID badges up to the time clock. SAMF ¶¶ 1-2.

Second, the aggregate amount of compensable time at issue in this case, a class action, is substantial. The number of class members is in the thousands. On September 4, 2018, Defendant filed the Declaration of Peter Nickerson in support of its opposition to the motion to remand. (Ex. E). Nickerson's review of Defendant's payroll data for individuals employed as Fulfillment Center

17

Associates in New Jersey from May 11, 2016 through August 27, 2018 revealed that such individuals worked a total of 131,823 bi-weekly pay periods during which the employee worked at least 40 hours in each workweek. (Ex. E, Nickerson Decl. ¶ 7). Nickerson's review further revealed that in 184,588 additional bi-weekly pay periods, the employee worked at least 40 hours in one of the two workweeks. (*Id.* ¶ 8). The security screenings continued at every fulfillment center until at least April 2020 and have resumed at some fulfillment centers thereafter. Accordingly, the numbers in Nickerson's declaration are greatly understated. Even if measured in mere seconds, the aggregate total of the unpaid hours worked due to the violations is not *de minimis*. However, the time spent in secondary screenings by the class members, measured in minutes, must also be included.

Finally, there is no question that this work was regular; it occurred every single day as Plaintiff and her coworkers could not leave Defendant's fulfillment centers without going through a security screening.

Accordingly, even if the FLSA's *de minimis* doctrine is held to have been incorporated into the NJWHL, such as it is under *Sandifer*, it is not a defense to liability against Plaintiff's claim.

### C.   Plaintiff Withdraws Her Claims Under The NJWHL Arising From Her Employment With Defendant During 2020

Plaintiff withdraws her claim that Defendant failed to pay her overtime for temperature screenings or security screenings that took place during her employment in 2020 based on Defendant's payment of double time wages for overtime worked on-the-clock, which cover any unpaid wages resulting from screenings that occurred off-the-clock during this period.

Accordingly, the Court need not address Defendant's arguments with respect to same.

### V.   CONCLUSION

Plaintiff has established that Defendant failed to pay her for proper overtime wages for all hours worked more than 40 hours in a workweek under the NJWHL due to its policy of not paying her for time spent going through security screenings after clocking out. Accordingly, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment as to her claim for unpaid overtime wages for time spent in security screenings.

Respectfully Submitted,

*/s/ Matthew D. Miller*
Matthew D. Miller, Esq.
Joshua S. Boyette, Esq.
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Hwy. N., Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

Date: January 11, 2022