MORGAN, LEWIS & BOCKIUS LLP
(A Pennsylvania Limited Liability Partnership)
502 Carnegie Center
Princeton, New Jersey 08540-7814
Richard G. Rosenblatt
Joseph A. Nuccio
Phone: (609) 919-6600
Fax: (609) 919-6701
*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIANE VACCARO and JENNIFER CHIU, <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM.DEDC, LLC, <br><br> Defendant. | Civil Action No. 3:18-11852 (GC) (TJB) <br><br> **Oral Argument Requested** <br><br> **Electronically Filed** <br><br> **Motion Day: May 6, 2024** |

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

Page

I. ARGUMENT ........................................................................................................1

    A. The undisputed facts show that Plaintiff did not perform "work" within the meaning of the NJWHL. ......................................................1

        1. Plaintiff has identified no issue of fact as to whether employees are required to spend extra time in security screenings. ...................................................................................1

        2. Plaintiff's unpleaded claim that time spent walking from the clock to security is compensable is wrong as a matter of law. .............................................................................................7

    B. Plaintiff is incorrect that the *de minimis* doctrine does not apply under New Jersey law. ........................................................................10

        1. New Jersey law adheres to the common law *de minimis* doctrine. ..................................................................................10

        2. The undisputed facts show the *de minimis* rule requires summary judgment for Amazon. .............................................13

II. CONCLUSION ..................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. City of Chicago*,
 865 F.3d 936 (7th Cir. 2017) ................................................................................7

*Anderson v. Mt. Clemens Pottery Co.*,
 328 U.S. 680 (1946).................................................................................. 5, 7-8, 10

*Bamonte v. City of Mesa*,
 598 F.3d 1217 (9th Cir. 2010) ............................................................................ 5-6

*Bixler v. Cent. Penn. Teamsters Health & Welfare Fund*,
 12 F.3d 1292 (3d Cir. 1993) .................................................................................4

*Chao v. Gotham Registry, Inc.*,
 514 F.3d 280 (2d Cir. 2008) .................................................................................7

*Corbin v. Time Warner Entertainment-Advance/Newhouse P'ship*,
 821 F.3d 1069 (9th Cir. 2016) ............................................................................14

*De Asencio v. Tyson Foods, Inc.*,
 500 F.3d 361 (3d Cir. 2007) ...............................................................................14

*Genarie v. PRD Mgmt, Inc.*,
 2006 WL 436733 (D.N.J. Feb. 17, 2006) .....................................................13, 15

*Hargrove v. Sleepy's LLC*,
 220 N.J. 289 (2015) ........................................................................................ 12-13

*Huerta v. CSI Elec. Contractors*,
 544 P.3d 1118 (Cal. 2024) ................................................................................ 8-9

*Lamanna v. Kennedy*,
 130 N.J.L. 223 (Sup. Ct. 1943).........................................................................12

*Lindow v. United States*,
 738 F.2d 1057 (9th Cir. 1984) ........................................................................ 14-15

*Mitchell v. JCG Indus., Inc.*,
 745 F.3d 837 (7th Cir. 2014) .............................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

*Quality Mgmt. and Consulting Servs. v. SAR Orland Food Inc.*,
   2012 WL 2128327 (N.D. Ill. June 11, 2012) ...................................................... 14

*Rosano v. Twp. of Teaneck*,
   2012 WL 13050594 (D.N.J. Dec. 28, 2012),
   *aff'd*, 754 F.3d 177 (3d Cir. 2014) ...................................................................... 5

*Sandifer v. U.S. Steel Corp.*,
   571 U.S. 220 (2014) ........................................................................................... 13

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,
   321 U.S. 590 (1944) ......................................................................................... 6-7

*Tinder v. Pinkerton Security*,
   305 F.3d 728 (7th Cir. 2002) ............................................................................... 4

*Wagner v. Unison Admin. Servs., LLC*,
   2009 WL 891870 (W.D. Pa. Mar. 31, 2009) ....................................................... 4


**STATUTES**

Fair Labor Standards Act ("FLSA")
   29 U.S.C. §201 et seq. ................................................................................. 10-11

New Jersey Wage and Hour Law ("NJWHL")
   N.J.S.A. 34:11-56a et seq. ..........................................................................passim

**OTHER AUTHORITIES**

29 CFR § 778 ............................................................................................... 10-11

N.J.A.C. 12:56-5.1 et seq ............................................................................. 10-13

I.   **ARGUMENT**

Plaintiff identifies no disputed issue of material fact as to whether she performed compensable work, within the meaning of the New Jersey Wage and Hour Law ("NJWHL"), when passing through security after her shift. She did not. The summary judgment record is now developed and confirms what Amazon represented in moving for judgment on the pleadings. Plaintiff could – and normally did – walk out without any delay. If she spent extra time in security, that extra time was avoidable and resulted from her choices, such as the personal convenience of having certain items with her on the floor. Plaintiff therefore cannot meet the test this Court articulated to show she performed compensable work under the NJWHL.

Moreover, even if the Court were to hold that there was any disputed material fact regarding whether Plaintiff performed "work" when moving through security, the Court still should grant summary judgment because any compensable time would be *de minimis*. Plaintiff identifies no New Jersey law rejecting the *de minimis* doctrine, and there is no genuine dispute that the time here was *de minimis* as a matter of law. Amazon is entitled to summary judgment on Plaintiff's claims.

> A.   **The undisputed facts show that Plaintiff did not perform "work" within the meaning of the NJWHL.**
>
>> 1.   Plaintiff has identified no issue of fact as to whether employees are required to spend extra time in security screenings.

The Court should grant summary judgment because Plaintiff was not required

to spend time in security screenings beyond the time it would have taken to walk out the building. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Dkt. 100-1) ("Mot.") at 11-16. Extra time, if any, would have resulted from personal choices. *Id.* Plaintiff produced no evidence to dispute these points, and so has not met her summary judgment burden.

The Court's opinion at the pleadings stage, Dkt. 42 ("MJOP Opinion"), recognized the following test for "work" under the NJWHL: "(1) an activity is performed that is *controlled or required* by the employer; and (2) such activity serves to *primarily benefit* the employer." MJOP Op. at 8. Plaintiff acknowledges that this prior ruling was decided on a "pleading standard." Plaintiff's Brief in Opposition (Dkt. 107) ("Opp.") at 6. But Plaintiff incorrectly claims that Amazon "does not explain how the factual record developed during discovery changes the answers to the questions posed by the two-prong test," and notably omits through use of ellipses that this Court expressly based its earlier holding on Plaintiff's "allegations," which had to be construed "in the light most favorable to the plaintiff." Opp. at 6; MJOP Op. at 8.

The undisputed post-discovery evidence confirms that Plaintiff was free to use an express lane to exit under a magnetometer arch. And the express lane demanded no extra time or action from Plaintiff beyond what it would have taken to exit had there been no magnetometer under which to walk. Any time or action

2

beyond a normal walk through the express lane was caused by Plaintiff's decision to have the convenience of personal items on the floor. The record thus establishes the facts this Court declined to consider in the MJOP opinion based on the case then being "still in the pleading stage." MJOP Op. at 9 n.2. Judge Wolfson meant what she said when she stated that Amazon's "factual averments, if proven true," might "show that Amazon 'requires' its employees to spend very little time in security screening." *Id.* There would have been no need to state that in the MJOP Opinion unless Judge Wolfson anticipated that under her decision Amazon might be able to show with a developed factual record that time in security screening was not in fact required and therefore not "hours worked" under the legal standard announced.

Plaintiff admits "that employees did not have to bring personal items that could set off the metal detectors into the secure area of the Fulfillment Center and were instructed by Amazon not to do so." *Compare* Dkt. 100-2 ("Stmt."), ¶15, *with* Dkt. 107-1 ("Pl.'s Stmt."), ¶15. Amazon cited Plaintiff's testimony – and Plaintiff does not dispute – that she could walk through the express lane without stopping. Mot. at 5, 14; Stmt. ¶8; Pl.'s Stmt. ¶8. At most she disputes that she never had to slow her pace when using the express lane, Pl.'s Stmt. ¶8, but an allegedly slowed pace does not challenge the uncontested fact that Plaintiff "pass[ed] through security

3

in seconds using the express lanes, walking through without stopping." Stmt. ¶8.[1] Nor is there any evidence that any time spent in secondary screening resulted from anything other than Plaintiff's choices. Pl.'s Stmt. ¶15; *see also* Dkt. 100-4 at 106:2-6 (Plaintiff acknowledges she was "instructed by Amazon that by not bringing personal belongings into the facility area that [she] could then move through security faster"); Dkt. 100-7 at 111:8-17. Plaintiff's argument is not based on evidence.

But for Plaintiff's choice to bring items to the floor, she was free to walk out of the facility without breaking stride and with no more control by Amazon than if exiting while surveilled by a security guard or security cameras. It was her choice that determined whether she spent time in a secondary screening.[2] The Supreme

---

[1] To the extent Plaintiff tries to raise a fact dispute by claiming that Plaintiff "testified she had nothing on her person that would have set off the metal detector," Opp. at 9 n.5, this mischaracterizes her testimony. Plaintiff testified "I actually don't remember what I was even carrying" and that she believed she "had nothing in [her] pockets." Dkt. 100-4 at 103:21-104:4. Not recalling what set off the metal detector or stating she does not recall anything in her pockets does not create a triable issue for summary judgment. Plaintiff's testimony, even viewed in the light most favorable to her, was not a denial that she chose to have something, whether in her pocket or on her person (e.g., jewelry), that could have set off the metal detector. *See Bixler v. Cent. Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1301–02 (3d Cir. 1993) (failure to recall event does not create triable issue of fact); *see also Tinder v. Pinkerton Security*, 305 F.3d 728, 735–36 (7th Cir. 2002) (same); *Wagner v. Unison Admin. Servs., LLC*, Civ. Act. No. 07-1008, 2009 WL 891870, at *8 (W.D. Pa. Mar. 31, 2009) (same).

[2] Plaintiff makes no argument specific to screenings in the divestment or x-ray lanes, but any time spent in those screenings would also derive from her choices. And the evidence shows that Plaintiff only used the express lane, *see* Dkt. 100-4 at 99:18-101:8, so she has no evidence of engaging in compensable "work" by using the divestment or x-ray lane.

4

Court precedent on which Plaintiff herself relies holds that employees cannot inflate their compensable time through personal choices – such as an employee's choice to bring personal items on the warehouse floor and through security. In *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 692 (1946), employees who "took roundabout journeys and stopped off en route for purely personal reasons" were not entitled to compensation for that time, because "[i]t would be unfair and impractical to compensate them for doing that which they were not required to do." *See* Mot. at 17. Plaintiff's only response is to claim, incorrectly, that this limitation applies only in Portal-to-Portal Act cases. Opp. at 12. But it comes from *Anderson*, which preceded the Portal-to-Portal Act, as this Court has noted. MJOP Op. at 10.

Amazon's other cited cases reinforce that an employee's personal choice does not render the time here at issue compensable. Mot. at 14, n.7. Those cases turned on whether a plaintiff's donning and doffing gear at work was "work" if it was not required and the activity inured to the benefit of the employee not the employer. *See Bamonte v. City of Mesa*, 598 F.3d 1217, 1225-26 (9th Cir. 2010) (holding officers' changing in and out of uniforms at work was not compensable because it was of "sole benefit to the employee"); *Rosano v. Twp. of Teaneck*, 2012 WL 13050594, at *10-11 (D.N.J. Dec. 28, 2012) (same). Although those cases were governed by the Portal-to-Portal Act, the courts' reasoning rested not on that statute but on the *Tennessee Coal* standard that this Court adopted in this case, which requires, among

5

other things, that the activity be primarily for the benefit of the employer. *See* MJOP Op. 8 (citing *Tenn. Coal Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)). Here, as in the cited cases, any additional time at the facility beyond what it would normally take to walk out was not "work" because it was entirely the choice of the employee whether to incur that additional time and Amazon does not in any way benefit from an employee bringing in or wearing something when Amazon, in fact, encouraged them not to do so.

Rather than cite caselaw, Plaintiff asserts, without support, that the personal choice to "bring[] a metal object into the warehouse" is somehow irrelevant because the act of bringing a personal item on the warehouse floor occurred *before*, instead of during, the employee's walk through security. *See* Opp. at 11-12 (arguing compensability of screening time "must be answered at the time th[at] activity is taking place"). But this is not the law. Rather, alleged "work" time is not compensable if it is the result of employee choice – even if the choice in question takes place *before* that purported "work" activity. *See Bamonte*, 598 F.3d at 1225-26 (officers' choice to not change into uniforms at home – a choice made *before* arriving at the workplace – nevertheless rendered time spent *at* the workplace changing into uniforms non-compensable).

The key question here is whether the activity at issue – spending time in security screening beyond regular walking time, as a result of choosing to bring

6

personal items on the warehouse floor – actually *is* work. And under this Court's test, numerous cases hold that activities resulting from personal choices that do not benefit the employer are not work.[3]

> 2. Plaintiff's unpleaded claim that time spent walking from the clock to security is compensable is wrong as a matter of law.

Given the undisputed facts, Plaintiff now pivots to argue that merely walking out without breaking stride is itself work. Plaintiff thus asserts an unpleaded claim to be compensated not just for any time spent undergoing security screening but also for all time between clocking out and the security screenings. Opp. at 6 n.4; Pl.'s Stmt. ¶8 (denying facts to extent does not include all time spent walking from clock through security); *cf.* Second Amended Complaint ¶¶40, 41 (limiting claims to time "to go through the security screening" and "spent in the screenings"). There is good reason that Plaintiff didn't make this allegation in her Complaint. It is unprecedented, and indeed inconsistent with Plaintiff's own authorities. Under *Anderson* and *Tennessee Coal*, which Plaintiff argues control this case, Opp. at 8, walking time after clocking out is not compensable.

As anticipated in Amazon's motion (at 16-17), Plaintiff overreads *Anderson*. Although she cites *Anderson* to insist that any time spent walking on Amazon's

---

[3] Plaintiff's cited cases on this point are inapposite. They address whether an employer had to pay for unauthorized overtime when the activity at issue counted as work. *See Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 286-88 (2d Cir. 2008); *Allen v. City of Chicago*, 865 F.3d 936, 943 (7th Cir. 2017).

7

premises counts as work, she has no real answer to Amazon's point that *Anderson*'s holding on walking time addressed only time spent walking on the premises *after* clocking in. *See* Mot. at 16 (citing *Anderson*, 328 U.S. at 691-92). *Anderson* expressly declined to offer guidance on activities before punch-in or after punch-out—like "time spent in waiting to punch the time clocks," *id.* at 691—and thus provides no guidance here on time spent walking out the building after clocking out.

Plaintiff is also incorrect about how *Anderson*'s discussion of the "necessities of the employer's business" principles apply here. Opp. at 10-11. Plaintiff suggests that the mere fact that walking through the metal detector was required by Amazon rules and served a business purpose transforms it into work – regardless of whether it required extra time. But that is not the law. Even in California, which applies a more capacious understanding of work based on employer control, Plaintiff's theory would fail. The California Supreme Court recently addressed employees who drove their own vehicles across the employer's property, who argued that this driving was work because it was subject to numerous employer-mandated rules to promote safety and other legitimate business goals. *Huerta v. CSI Elec. Contractors*, 544 P.3d 1118, 1131 (Cal. 2024). The court held that "[a]lthough these rules curbed [the plaintiff's] freedom of action," they did "not amount to a level of control sufficient to render the travel time compensable as 'hours worked.'" *Id*. The plaintiff's theory had "no limiting principle" and would have "invite[d] claims of unpaid wages from 'any

8

employee who uses a time clock' because '[e]mployees always spend some amount of time navigating towards a time clock or their workspace before a shift and away from the same area after a shift, in their cars on employer property or walking across employer hallways or sidewalks.'" *Id.* at 1132. "Because workplaces are regulated environments, adopting [the plaintiff's] position would mean that whenever an employee is traveling on an employer's premises, including before or after a work shift, the time is compensable as 'hours worked.'" *Id.* The California Supreme Court was "not aware of any authority that has construed employer control so expansively." *Id.*[4]

\*   \*   \*

The Court should enter summary judgment for Amazon because there is no dispute of material fact that security screenings occur without an employee breaking stride – unless the employee chooses to bring items to the facility floor – and so such screenings do not fall within the meaning of "work" under the NJWHL.

---

[4] Although *Huerta* held that time spent in vehicles at exit security was compensable, the screening there involved a security guard's inspecting "back seats, back[s] of trucks, and … trunks of cars" for "stolen items or endangered species" and "match[ing] the badge or badges presented by the driver to the individual or indivicudals in the vehicle" – a "procedure [that] prolonged the time required for workers to exit the Site beyond what would result from ordinary traffic congestion at the end of the workday." *Id.* at 1126. Here by contrast, any time beyond that which it would take to normally exit after punching out could be avoided through personal choices and was not required.

9

### B. Plaintiff is incorrect that the *de minimis* doctrine does not apply under New Jersey law.

#### 1. New Jersey law adheres to the common law *de minimis* doctrine.

Even if the time at issue here counted as work, the Court should still apply the common law principle *de minimis non curat lex* to enter summary judgment in Amazon's favor. The *de minimis* principle is a background legal rule well-established in New Jersey law at the time of the NJWHL's enactment and in the wage and hour context traces back to the *Anderson* decision on which Plaintiff herself relies. Mot. at 18-20.[5]

In its motion, Amazon explained that even though N.J.A.C. 12:56-5.2(a) uses the phrase "all," the relevant FLSA provision in effect when *Anderson* was decided also used the phrase "all." Mot. at 19. Plaintiff's only response (at 16) is to claim that the "all hours" terminology does not exist in the FLSA context. Not so. The FLSA overtime regulations use the phrase "all hours worked" at least 22 times across 17 different sections. *See* 29 CFR §§ 778.100, .103, .111(a), .112, .114(b) & (b)(1), .205, .221(b), .223(a), .310, .315, .318(c), .329, .402 (quoting the FLSA), .409,

---

[5] Plaintiff ignores Amazon's cases explaining the long roots of the *de minimis* doctrine in New Jersey common law (as well as other states) and does not explain why that common law doctrine would not apply to NJWHL claims. *See* Mot. at 18 n.9. Nor does Plaintiff cite any legislative or regulatory history (or public discourse) that would warrant such a departure from the federal law from which the NJWHL was modeled. Amazon has previously explained why the Pennsylvania and California cases she cites at 16-17 provide no guidance here. *See* Mot. at 21 n.10.

10

.500(d), .601(b) & (d), and .602(a). Given the long-established roots of the *de minimis* doctrine in New Jersey law and parallels to federal law, the only fair reading of N.J.A.C. 12:56-5.2(a) is one that views the common law *de minimis* doctrine as incorporated at the time of enactment. *See* Mot. at 20 (explaining why there was no need to adopt statutory de minimis rule).

Plaintiff is also incorrect that the purpose of the NJWHL so deviates from the FLSA to be inconsistent with the *de minimis* rule. Opp. at 19-21. The two statutes in fact *share* purpose. *Compare* 29 U.S.C. § 202 (expressing a policy of correcting and eliminating "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers"), *with* N.J.S.A. § 34:11-56a (NJWHL is designed "to safeguard [workers'] health, efficiency, and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to their health, efficiency and well-being"). The fact that FLSA and NJWHL include some different statutory and regulatory enactments (Opp. at 20-21), far from supporting Plaintiff's interpretation, supports Amazon's view that if the New Jersey legislature had intended to depart from the FLSA and its own common law principles, it would have done so expressly. And here, even if those statutes and regulations differed meaningfully in purpose, the *de minimis* rule also

11

derives from the New Jersey common law.[6] Given New Jersey's longstanding rule of interpretation that common law has to be expressly abrogated by a statute, *see Lamanna v. Kennedy*, 130 N.J.L. 223, 224 (Sup. Ct. 1943), the NJWHL and its regulations being silent about *de minimis* rule means the legislature left that common law rule undisturbed.

Plaintiff derives no support from *Hargrove v. Sleepy's, LLC*, 220 N.J. 289 (2015). The *Hargrove* court did not find that the New Jersey legislature intended to depart from the FLSA or its own common law to reject the *de minimis* rule's application when it enacted the NJWHL. *Hargrove* merely ruled, in the absence of clear statutory guidance as to the difference between an employee and independent contractor, that the NJWPL and NJWHL should be interpreted the same and that it would defer to the New Jersey Department of Labor's long-standing regulatory guidance as to the proper test. *Id.* at 306, 313-14. That is not like the scenario here – Plaintiff points to no longstanding (and long-unchallenged) regulatory interpretation rejecting the *de minimis* rule's application to the NJWHL. The common law test

---

[6] Plaintiff's argument about N.J.A.C. 12:56-5.5 (at 21) is a red herring. Amazon's argument is not that the NJWHL implicitly adopts an exception to the "all hours" language but that NJWHL was adopted against a common law background that already included a *de minimis* rule. Indeed, the more relevant regulation, which Plaintiff ignores, is N.J.A.C. 12:56-5.8 ("Use of time clocks"), which states that "[m]inor differences between the clock records and actual hours worked cannot ordinarily be avoided . . ." The regulatory acknowledgement of the challenges of total and complete precision in time recording reflects acceptance of the *de minimis* doctrine despite the regulation's other references to "all hours."

12

rejected in *Hargrove* was imported from the tort context, had never been adopted in the state, and was at odds with the longstanding state-recognized test, and introduced unpredictability in employee classification. *Id.* at 297, 315-16. Here, on the other hand, the *de minimis* rule is a long-standing background principle of the common law against which all legislative enactments are made (unless expressly exempted), and there is no long-standing NJ DOL interpretation of the relevant provisions rejecting the rule's application in the NJWHL context.

Finally, Plaintiff's discussion of *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220 (2014), is off point. *Sandifer* involved a specific statute which addressed activities that could only be described as "trifles," so the Supreme Court held it would be inappropriate to apply the *de minimis* rule to select among those trifles. *Id.* at 234. N.J.A.C. 12:56-5.2(a) is not a provision addressing trifle tasks. Even after *Sandifer*, Courts continue to apply the *de minimis* rule in wage-and-hour cases, including to reject state-law claims for *de minimis* amounts of time. *See, e.g.*, *Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 844-45 (7th Cir. 2014).

        2.    <u>The undisputed facts show the *de minimis* rule requires summary judgment for Amazon.</u>

Plaintiff fails to demonstrate any disputed fact to defeat application of the *de minimis* doctrine. *Genarie v. PRD Mgmt, Inc.*, 2006 WL 436733, at *13 (D.N.J. Feb. 17, 2006) (the employee bears the burden to "show that the amount of uncompensated hours the employee worked was not *de minimis*."). She does not

13

dispute that she walked to security in seconds and, except for "one or two" secondary screenings (of under ten minutes), she passed through security in seconds. Stmt. ¶8. This is not even close to the daily periods of ten minutes that courts routinely characterize as *de minimis*. *See Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) (collecting cases).

To get around this obvious conclusion, Plaintiff argues that this Court can look to the aggregate time of the class. Opp. at 27-29. But only Plaintiff's claims (not any putative class claims) are before this Court on summary judgment and Plaintiff cites no authority to suggest the Court should look to the alleged class claims in aggregate. Rather, the *de minimis* analysis is not aggregated across all plaintiffs or days – it looks to a single claimant's minutes-per-day. *See Corbin v. Time Warner Entertainment-Advance/Newhouse Partnership*, 821 F.3d 1069, 1079-82 (9th Cir. 2016).[7] Contrary to Plaintiff's suggestion, *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 374 (3d Cir. 2007), did not look at the alleged class's aggregate time.

Nor has Plaintiff directed this Court to any evidence that it is currently administratively feasible to record the time. She only proposes – without any

---

[7] Any other approach would "put[] the cart before the horse" because "[i]f a claim is legally insufficient due to *de minimis* damages, then aggregating that claim as a class should have no effect on the threshold question of the legal sufficiency of the claim." *Quality Mgmt. and Consulting Servs. v. SAR Orland Food Inc.*, 2012 WL 2128327, at *2 (N.D. Ill. June 11, 2012).

14

evidence of potential effects or feasibility – significant modifications such as moving the time clocks. Opp. at 27. This is far from a simple solution, as it could result in long waits and backups at security screening, or Amazon having to pay disparate compensation to its employees based not on their contributions but on their purely personal choices.

Finally, in the event this Court determines secondary screenings are work (which it should not), Plaintiff introduces no evidence that they occurred regularly. Opp. at 29. She underwent a secondary screening only one or two times in her eleven months of employment. Stmt. ¶¶ 1-3, 11.

Applying common sense to the undisputed facts, the *de minimis* doctrine is tailor-made for an activity that took, with only one or two exceptions, only seconds (and generally no more than walking out in the normal course) and for which there is no current system to record an appropriate amount of time. *Lindow*, 738 F.2d at 1062-64; *see also Genarie*, 2006 WL 436733, at *13.

## II. CONCLUSION

Plaintiff fails to show any material disputes of facts exist. Summary judgment should be granted for Amazon.

Dated: April 26, 2024                              Respectfully submitted,

                                                    MORGAN, LEWIS & BOCKIUS LLP

                                                    *s/ Joseph A. Nuccio*
                                                    Richard G. Rosenblatt
                                                    Joseph A. Nuccio
                                                    502 Carnegie Center
                                                    Princeton, New Jersey 08540
                                                    Telephone: (609) 919-6600
                                                    Facsimile: (609) 919-6701
                                                    richard.rosenblatt@morganlewis.com
                                                    joseph.nuccio@morganlewis.com
                                                    *Attorneys for Defendant*